VOLKAN TURGUT,
*on behalf of himself and others similarly situated*,

      Plaintiffs,

v.

HITACHI RAIL STS USA, INC.,

      Defendant.

Civ. A. No. 1:24-cv-10660-AK

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HITACHI RAIL'S MOTION TO DISMISS THE COMPLAINT

Defendant Hitachi Rail STS USA, Inc. ("Hitachi Rail") respectfully requests that this Court dismiss the class action Complaint filed by Plaintiff Volkan Turgut ("Turgut") on behalf of himself and others similarly situated. The Complaint's single cause of action—non-payment of wages pursuant to Mass. Gen. Laws chapter 149, section 148 (the Massachusetts "Wage Act")—fails to allege facts sufficient to support a claim that Hitachi Rail's payment of Turgut's wages was untimely. Dismissal is therefore appropriate under Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

Turgut's Complaint is based on a legally flawed premise: that a determination under the Wage Act as to whether wages earned are due within six days or within seven days from the end of the pay period depends on how many days an employee actually performed work in a particular week. Specifically, Turgut alleges that, because he only "works" five days per week and because most or all of Hitachi Rail's other employees do not "work" seven days a week, the six-day deadline automatically applies. But that is not the law. The Wage Act's requirements regarding

the timeliness of wage payments hinge on how many days an employee was *"employed"* in a week—not how many days an employee *"worked."* Mass. Gen. Laws ch. 149, § 148.

Despite this, the Complaint does not even allege that Turgut or others were "employed for five or six days in a calendar week," which is what the Wage Act requires for the six-day deadline to apply. Id. Instead, the Complaint necessarily asks this Court to find that "worked" and "employed" are one and the same for purposes of the statute. There is no basis for such a finding. As such, the Complaint fails to state a claim upon which relief can be granted.

While "employed" is not defined in the Wage Act and has not been specifically interpreted by the Massachusetts courts, the only reasonable interpretation is that an individual is "employed" each day they earn wages (including salary). First, if the legislature had wanted the controlling factor to be "days worked," rather than "days employed," the statute would say that. Indeed, the same section of the Wage Act defines a "casual" employee as one "who has *worked* for a period of less than five days." Id. (emphasis added). It is an established axiom of statutory interpretation that, if a statute uses different terms, it is presumed they have different meanings. Second, the entire focus of the Wage Act is on payment of *wages earned*. It is elementary that exempt, salaried employees earn compensation every day they are employed—this is so whether they work a full day, a partial day, or do not work at all. As such, a finding that an employee is "employed" each day they "earn wages" is not only logical but is consistent with the spirit and intent of the Wage Act. The converse—that one can earn wages on a day when they are not even "employed"—makes no sense at all. Third, interpreting "employed" to mean the same thing as "worked" would lead to an absurd and impractical result. Among other things, to understand their obligations under the Wage Act, employers would have to track their salaried employees on a daily basis to determine whether they worked (even for a minute) and then adjust their pay processes accordingly,

sometimes on a week-to-week basis depending on the number of days an employee worked. Nothing in the statute supports such an unreasonable result.

For these reasons, discussed further below, the only reasonable interpretation of the Wage Act is that exempt and salaried employees, including Turgut, earn wages and are thus "employed" seven days a week. As such, the whole foundation of the Complaint—that Turgut and the other putative class members were owed all wages earned within six days because they "worked" fewer than seven days—fails to state a claim upon which relief can be granted. Accordingly, the Complaint should be dismissed.

## II. RELEVANT BACKGROUND

### A. Procedural History.

This class action Complaint was filed in the Suffolk Superior Court of the Commonwealth of Massachusetts on February 20, 2024. See ECF 1-1, Complaint ("Compl."). Turgut, a Senior PTC System Signaling Engineer Manager for Hitachi Rail (id. at ¶ 17), alleges that he and similarly situated individuals were deprived timely payment of wages under the Massachusetts Wage Act. Id. at ¶ 43.[1] On March 18, 2024, Hitachi Rail removed this action to this Court. See ECF 1.

### B. Turgut Claims That Because He Only "Works" Five Days Per Week, He Is Owed All "Wages Earned" Within Six Days Of The End Of the Paid Period.

Turgut does not contend that he or others have been denied payment of wages earned by even a dollar. Rather, the crux of Turgut's Complaint is that, because he only "*works*" five days per week, he was owed wages "within *six days* of the closing of the payroll period in which such wages were earned." Compl. at ¶¶ 18, 21, 29 (emphasis added). Turgut further alleges that Hitachi Rail violated the Wage Act in paying "all the employees in Massachusetts later than within six

---

[1] Misnumbered as 2 in the Complaint.

days of the payroll period during which wages are earned…" <u>Id.</u> at ¶ 22. In support, Turgut alleges that "most, if not all of Hitachi's employees in Massachusetts ***work*** either five, or six days per week." <u>Id.</u> ¶ 24. (emphasis added). As such, Turgut's claim is entirely dependent on the misplaced and legally insufficient allegation that, because Turgut and others "worked" fewer than seven days per week, waged earned were due within six days of the end of each pay period. <u>Id.</u> at ¶¶ 23, 26-27, 43.

C. **<u>The Complaint Does Not Allege That Turgut And Others Were "Employed" For Five Or Six Days Per Calendar Week, Which Is Required Under The Wage Act To State A Claim For Failure To Pay Wages Earned Within Six Days Of The Termination Of The Pay Period.</u>**

The Complaint alleges that Turgut works as a Senior PTC System Signaling Engineer Manager at Hitachi Rail, that he works five days per week, and that he is paid bi-weekly. <u>Id.</u> at ¶¶ 17-19. From this, it can be fairly and reasonably inferred that Turgut is a salaried employee as defined in the Wage Act (defining a "salaried employee" as "any employee whose remuneration is on a weekly, bi-weekly, semi-monthly, monthly, or annual basis, even though deductions or increases may be made in a particular pay period").[2] The Complaint does not allege that Turgut or other Hitachi Rail employees were "employed" for five or six days per calendar week. Instead, as discussed above, Turgut alleges only that he and the putative class members did not "work" seven days per week. <u>Id.</u> The Complaint also does not state whether the putative class members were compensated on an hourly or salaried basis. <u>Id.</u>

---

[2] While Turgut alleges that he is a Senior Manager, he does not specifically plead his exemption status and method of earning wages (except to allege that he is paid bi-weekly), which are necessary elements of his claim. <u>See</u> <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988) (a plaintiff is "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."). Given the allegations here, it is reasonable to infer Turgut is an exempt employee paid a bi-weekly salary. <u>See</u> Compl. at ¶¶ 17, 19.

### III.     <u>STANDARD OF REVIEW</u>

#### A.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must set forth 'more than labels and conclusions.'" <u>ExteNet Sys., Inc. v. City of Cambridge</u>, 481 F. Supp. 3d 41, 49 (D. Mass. 2020) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of the complaint, an inquiring court must first separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." <u>Morales-Cruz v. University of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012) (citations omitted). The alleged facts must be sufficient to "state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. That means the allegations must "give rise to more than a mere possibility of liability." <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44-45 (1st Cir. 2012) (citations omitted); <u>see</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("while Federal Rule of Civil Procedure 8(a)(2) need not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

#### B.  <u>Consideration Of Undecided Issues Of State Law.</u>

"When considering a difficult state law question on which the highest court of the state has not spoken directly," a federal court sitting in diversity is free to make its own "best guess as to Massachusetts law." <u>Ken's Foods, Inc. v. Steadfast Ins. Co.</u>, 36 F. 4th 37, 41 (1st Cir. 2022) (citations omitted); <u>see also</u> <u>Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.</u>, 547 F.3d 48, 51 (1st Cir. 2008) ("[w]hen [the state's highest] court has not spoken directly to an issue, the federal court must make an informed prophecy as to the state court's likely stance"). In so doing, "the federal court may draw upon a variety of sources that may reasonably be thought to influence the state court's decisional calculus, including (1) analogous decisions of the state's highest court, (2)

5

decisions of the lower courts of that state, (3) precedents in other jurisdictions, (4) the collected wisdom found in learned treatises, and (5) any relevant policy rationales." Ken's Foods, 36 F. 4th at 41 (internal quotations and citations omitted); see also Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013) ("[t]he goal is to replicate, as well as possible, the decision that the state's highest court would be likely to reach.").

## IV. ARGUMENT

The Wage Act "was enacted primarily to prevent unreasonable detention of wages," Am. Mut. Liab. Ins. Co. v. Comm'r of Lab. & Indus., 340 Mass. 144, 147, (1959); see also Boston Police Patrolmen's Ass'n, Inc. v. Ciy of Boston, 435 Mass. 718, 720 (2002). Here, Turgut does not contend that Hitachi Rail failed to pay him or others all wages earned. Instead, he alleges that wages were untimely under the Wage Act because they were not paid within six days from the end of each pay period. In support, he alleges that the statute's seven-day deadline is inapplicable because he only "works" five days per week, and "most, if not all, of Hitachi's employees in Massachusetts do not work seven days a week." Compl. at ¶¶ 18, 23. This fails to state a valid claim as a matter of law.

The Wage Act makes clear that the question of whether a six-day deadline or a seven-day deadline applies is based ***not*** on how many days the employee actually performed work in a specific week, but how many days an employee was "employed." Mass. Gen. Laws ch. 149, § 148. Specifically, the statute provides, in pertinent part, that:

> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to ***within six days*** of the termination of the pay period during which the wages were earned ***if employed for five or six days*** in a calendar week, or to ***within seven days*** of the termination of the pay period during which the wages were earned ***if such employee is employed seven days*** in a calendar week…

Mass. Gen. Laws ch. 149, § 148 (emphasis added).[3]

As noted above, the term "employed" is not defined in the statute and it has not been specifically interpreted by the Massachusetts courts.[4] Nonetheless, logically and in line with the intent of the Wage Act, it should be interpreted to mean days when wages are earned. See Mass. Gen. Laws ch. 149, § 148; see also Salerno v. Baystate Ford, Inc., No. 14-8609-D, 2016 WL

---

[3] The Wage Act also states that, "in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee." Id. This language conflicts with the cited language, which explicitly states that a seven-day deadline applies to employees who are "employed seven days in a calendar week." A statute's language should be interpreted holistically, and "... should not be construed in ... such a way as to make a nullity of pertinent provisions." Manning v. Boston Redevelopment Authority, 400 Mass. 444, 453, 509 (1987) (citations omitted). "[T]he maxim of negative implication -- that the express inclusion of one thing implies the exclusion of another -- 'requires great caution in its application.'" Reuter v. City of Methuen, 489 Mass. 465, 474 (2022) (conducting statutory interpretation of Wage Act) (citations omitted). Indeed, Massachusetts courts have not taken this language to read the seven-day payment requirement out of the statute. See id. 489 Mass. at 468 (noting, "General Laws c. 149, § 148, provides that employers must pay their employees 'weekly or bi-weekly' within either six or seven days of the 'termination of the pay period during which the wages were earned.'"); Parris v. Sheriff of Suffolk Cnty., 93 Mass. App. Ct. 864, 864-65 (2018) (stating the Wage Act "generally requires that all public and private employers in the Commonwealth pay their employees' wages no more than seven days after the end of the pay period in which the wages were earned.").

[4] The lone, non-precedential, case discussing timely payment as to exempt employees is Dobin v. CIOview Corp. No. CIV.A. 2001-00108, 2003 WL 22454602, at *3 (Mass. Super. Oct. 29, 2003), abrogated by Reuter v. City of Methuen, 489 Mass. 465 (2022). In Dobin, the question before the Court was whether a salaried employee was an "employee" (and their monthly salary a "wage") under the Wage Act. The Massachusetts Superior Court held that even high-paid salaried employees are entitled to protection under the Wage Act ("... the Act specifically defines a 'salaried employee,' not in the context of excluding such persons from the Scope of the Act but in the context of including them. Moreover, by specifically noting that 'employees engaged in a bona fide executive, administrative or professional capacity … may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly,' the Act demonstrates that it recognizes that these high-ranking employees are protected under the Act."). Id. (internal citations omitted). The Court in Dobin then held that an agreement to defer a salaried employee's wages violated the Wage Act's prohibition on special contracts. Id. As part of this holding, the Dobin court stated the salaried employee, who had a three-day workweek, should have been paid within six days of the end of the pay period. Id. at *8. However, the court did not specifically interpret the meaning of the term "employed" for purposes of the Wage Act and was not asked to address the question of whether a six-day or seven-day deadline applied. Id.

7

513747, at \*2 (Mass. Super. Feb. 5, 2016) (noting, "[t]he statute thus provides in pertinent part that '[e]very person having employees in his service shall pay ... such employee the wages *earned* by him....'") (citing Mass. Gen. Laws ch. 149, § 148) (emphasis in original).

First, the plain language of the statute shows that "worked" and "employed" are different terms with different meanings. See, e.g., Water Dep't of Fairhaven v. Department of Envtl. Prot., 455 Mass. 740, 744 (2010) (a statute's plain language is the "principal source of insight into legislative intent") (citations omitted). The only instance in which the Wage Act conditions employers' payment obligations on the number of days an employee works is for "casual" employees. Id. ("or in the case of an employee who has *worked* for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period…") (emphasis added). Had the legislature intended to use days "worked" other than for casual employees, it would have done so. It did not. Instead, the statute provides that "days employed" is the controlling factor for application of the six-day deadline or the seven-day deadline. Interpreting two different terms in the same section of the same statute to mean the exact same thing would offend the well-established principle of common usage. See Tamulevich v. Robie, 426 Mass. 712, 713-14 (1998) ("[W]here the Legislature chose two completely different phrases in the two clauses, it must have intended different meanings.") (quoting Commonwealth v. Caracciola, 409 Mass. 648, 653 n. 8 (1991)); see also City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 789 (2019) (declining to "read into statute a provision which legislature did not see fit to put there"); Dartt v. Browning–Ferris Indus., Inc., 427 Mass. 1, 9, (1998) (court "will not add to a statute a word that the Legislature had the option to, but chose not to, include."); Loc. 589, Amalgamated Transit Union

v. Massachusetts Bay Transp. Auth., No. 042434A, 2006 WL 3201309, at *3 (Mass. Super. Aug. 16, 2006) (noting that legislature's choice to omit provision in Wage Act reflects its intent).

Second, even aside from the fact that the legislature chose to use the word "worked" in a different context than it did "employed," these terms naturally have different meanings. It is elementary that weekly wages must be "earned" in order to be due, irrespective of whether that payment is due within six or seven days. See Mass. Gen. Laws ch. 149, § 148; Malden Police Patrolman's Ass'n v. Malden, 92 Mass. App. Ct. 53, 64 (2017) ("[p]ursuant to the Wage Act, an employer shall pay wages to an employee within six or seven days of the termination of the pay period during which such wages were earned by the employee"). The Massachusetts Supreme Judicial Court explained in Awuah v. Coverall N. Am., Inc., that "[t]he word 'earn' is not statutorily defined, but its' plain and ordinary meaning is '[t]o acquire by labor, service, or performance,' or '[t]o do something that entitles one to a reward or result, whether it is received or not.'" 460 Mass. 484, 492 (2011) (citing Black's Law Dictionary 584 (9th ed. 2009)).[5]

Thus, in assessing how many days an employee was "employed" for purposes of the Wage Act, the focus should be on when wages were earned. With non-exempt employees compensated on an hourly basis, days spent actually working and days "employed" may commonly be the same because such employees are only compensated for work performed.[6] But that is wholly illogical

---

[5] Indeed, the Complaint is replete with allegations about payment of earned wages. See Compl. at ¶ 21 ("Hitachi [Rail] then pays Plaintiff later than within six days of the closing of any given payroll period during which wages are *earned* by Plaintiff"); ¶ 22 ("[u]pon information and belief, Hitachi [Rail] pays all the employees in Massachusetts later than within six days of the closing of the payroll period during which wages are *earned*…") (emphasis added).

[6] However, here too, the flaws in Turgut's Complaint are exposed. For example, does Turgut contend that the six-day deadline does not apply to hourly employees when they use paid time off because they do not "work" five or six days that week? Of course not. Rather, these employees are still "employed" on days they receive wages even though they do not actually work. See Mass.

with respect to exempt, salaried employees, who earn wages every day, regardless of how many hours they work in a particular day (or if they work at all) or whether they actually perform work five days or seven days in a given week.

For example, under the Fair Labor Standards Act's (29 U.S.C. § 203, et. seq.) ("FLSA") "salary basis requirement," "[a]n employee will be considered to be paid on a 'salary basis'…if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. Many categories of employees exempt from overtime or minimum wage requirements under either the Massachusetts Minimum Fair Wages law (Mass. Gen. Laws ch. 151, § 1A) or the FLSA are paid on a salaried basis. See 29 C.F.R. § 541.600 (requiring compensation on a salary or fee basis for administrative, executive and professional employees); 454 Mass. Code Regs. 27.03(3) ("[t]he terms 'bona fide executive, or administrative or professional person' in M.G.L. c. 151, § 1A(3), and 'professional service' in M.G.L. c. 151 § 2, shall have the same meaning as set forth in 29 CFR Part 541").[7] The salary basis requirement further articulates that "an exempt employee must receive the full salary for any week in which the employee performs any work *without regard to the number of days or hours worked*." 29 C.F.R. § 541.602(a)(1) (emphasis added). The inverse is also true: exempt employees paid on a salary basis are not entitled

Gen. Laws ch. 149, § 148 (defining "wages" to include "any holiday or vacation payments due an employee under an oral or written agreement").

[7] See also Tomaz v. MAX Ultimate Food, Inc., No. CV 19-10533-RGS, 2020 WL 5517458, at *3 (D. Mass. Sept. 14, 2020) ("[t]he Massachusetts state and federal courts recognize that the overtime provisions of the state and federal wage laws are "nearly identical…") (internal quotations and citations omitted); Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170, 732 (2000) (looking to FLSA as an "analogous" federal statute for guidance on Massachusetts minimum wage and overtime law).

to additional compensation even if they work beyond their usual work schedule. See, e.g., Furtado v. Republic Parking Sys., LLC, No. 19-cv-11481-DJC, 2020 WL 996849, at *3 (D. Mass. Mar. 2, 2020) (noting "comp time" provided for extra work is not a wage within the meaning of the Wage Act where employee was paid a salary for working flexible hours with flexible duties).

Accordingly, it follows that exempt, salaried employees "earn" wages every day they are employed, regardless of whether or how much they work on that particular day (or if they even work at all). See Awuah, 460 Mass. at 492; Furtado, 2020 WL 996849 at *3. For example, if two salaried employees are paid an identical amount, and one resigns on Friday and the other resigns on Sunday, the employee who resigned on Sunday will be entitled to more of his or her salary than the employee who resigned on Friday—regardless of whether he or she actually performed worked on Saturday or Sunday. See 29 C.F.R. § 541.602 ("An employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment.") For these reasons, interpreting "employed" to mean the same thing as "actually working" for salaried employees would be at odds with both the letter and spirit of the Massachusetts Wage Act. Rather, the statute should be read to equate "employed" with "wages earned." To hold otherwise would effectively mean that Turgut and others are entitled to wages earned for days on which they were not even employed. Such a reading would turn the statute on its head. In short, Turgut earned his wages all seven days of the week and was thus "entitled" to the wages each such day. See, e.g., Furtado, 2020 WL 996849 at *3; Salerno, 2016 WL 513747 at *2.

Third, interpreting the Wage Act to require employers to ascertain exactly which days in a particular week salaried employees "actually worked" would be impractical and nonsensical—

and such an interpretation would effectively upend the long-standing ways in which employers have regarded exempt employees.

When an employee is covered by the FLSA's overtime requirements, the employer is obligated to keep records tracking the hours that employee spent working. Su v. F.W. Webb Co., No. 20-CV-11450-AK, 2023 WL 4043771, at *7 (D. Mass. June 16, 2023), judgment entered, No. 1:20-CV-11450-AK, 2023 WL 6439451 (D. Mass. Aug. 30, 2023) (citing 29 C.F.R. § 516.2(a)). While Massachusetts law requires employers to keep a "true and accurate record…of the hours worked each day and each week by each employee" (Mass. Gen. Laws ch. 151, § 15), there is no distinct obligation to track the number of days per week an exempt employee works. It is thus elementary that employers do not typically track the precise number of days worked by exempt employees during a given week. See, e.g., Abshire v. County of Kern, 908 F.2d 483, 486 (9th Cir. 1990), superseded by regulation as stated in Yourman v. Dinkins, 826 F.Supp. 736, 744 (S.D.N.Y. 1993) (acknowledging in dicta that salaried employees are "compensated not for the amount of time spent on the job, but rather for the general value of services performed," and therefore "are thought not to punch a time clock.").

Accepting Turgut's theory that "days employed" is interchangeable with "days worked" would disrupt bedrock principles of employee classification and impose unreasonable requirements on Massachusetts employers to track all working time and activity of their exempt employees. First, it would require employers to incur the burden of tracking each minute of each day spent by every salaried employee in the Commonwealth. Even if the employer had a process and the resources to check email and computer activity for each of its salaried employees every day, there is simply no practical way to know if the employee performed other work not ascertainable through forensic means, such as reviewing a physical document, engaging in a work-

related conversation, meeting with actual or prospective clients, and so forth. Second, even if an employer could make such a determination, it cannot reasonably be argued that the employer should then be required to comply with either a six-day deadline or a seven-day deadline based on the results of its investigation of that particular employee for that particular week. Nothing in the Wage Act supports such an illogical result, and Turgut's Complaint must be dismissed with prejudice.

## V.  CONCLUSION

Turgut's claim relies on an unsupported and fatally deficient interpretation of the Massachusetts Wage Act, at odds with both the language and spirit of the statute and with fundamental axioms of statutory interpretation. In the final analysis, Wage Act should be interpreted such that one is "employed" each day they earn wages. As such, a Complaint premised on the allegation that an employee must actually "work" all seven days in a week for the seven-day pay period to apply in that particular week fails to state a claim upon which relief can be granted.

For the reasons set forth herein, Defendant Hitachi Rail STS USA, Inc. respectfully requests the Court grant its Motion to Dismiss the class action Complaint with prejudice.

Respectfully submitted,

HITACHI RAIL STS USA, INC.,

By its attorneys,

*/s/ Zinnia K. Khan*

Jeffrey S. Shapiro, BBO No. 712140
Zinnia K. Khan, BBO No. 698609
FISHER & PHILLIPS, LLP
200 State Street, 7th Floor
Boston, Massachusetts 02109
Tel: (617) 722-0044
Fax: (617) 532-5899
jsshapiro@fisherphillips.com
zkhan@fisherphillips.com

Dated: March 25, 2024

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was emailed and mailed to the following parties of

interest on  March 25, 2024:

| | |
|---|---|
| Ilir Kavaja, Esq. | Eric LeBlanc, Esq. |
| Kavaja Law, P.C. | Bennett & Belfort, P.C. |
| 92 State Street, 8th Floor | 24 Thorndike Street, Suite 300 |
| Boston, Massachusetts 02109 | Cambridge, Massachusetts 02141 |
| (617) 515-5545 | (617) 577-8800 |
| ilir@kavajalaw.com | eleblanc@bennettandbelfort.com |

*/s/ Zinnia K. Khan*

Zinnia K. Khan