UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VOLKAN TURGUT,<br>on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HITACHI RAIL STS USA, INC.,<br><br>Defendants | Civ. A. No. 1:24-cv-10660-AK |

**PLAINTIFF, VOLKAN TURGUT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

The Motion to Dismiss of Defendant, Hitachi Rail STS USA, Inc. ("Hitachi Rail") is fatally flawed. It asks this Court to ignore the plain language of M.G.L. c. 149, § 148, the Massachusetts Wage Act (the "Wage Act"). It also asks this Court to find some ambiguity in the statute that does not exist. It is patently clear that the Wage Act requires employers, such as Hitachi Rail, to pay their employees within six days of the closing of any pay period when an employee either: (1) works for five or six days per week, or (2) is paid a salary. Defendant's attempt to make this Court believe otherwise is first belied by the statute's clear language. It is also contrary to the Massachusetts Attorney General's own interpretation of the statute, and to numerous prior opinions that make clear that Hitachi Rail's argument is without basis and unsupportable by facts and law.[1]

[1] During the Local Rule 7.1 conference, counsel for Plaintiff informed counsel for Hitachi Rail of this overwhelming legal authority, but were rebuffed. When counsel for Plaintiff inquired as to whether Hitachi Rail's counsel had any legal authority for its position, Hitachi Rail's counsel said that this was not a settled issue, but that he had no such authority. As a result, counsel for Plaintiff served Hitachi Rail's counsel with a safe harbor letter pursuant to Fed.R.Civ.P. 11 a copy of which is attached hereto as Exhibit 1. Despite this, Hitachi Rail's counsel persists in making what essentially amount to frivolous arguments with no basis in law.

Indeed, the former Chief Justice of the Massachusetts Supreme Judicial Court, Judge Gants, when sitting as a Justice of the Massachusetts Superior Court, in the Business Litigation Session, aptly opined:

> An employer may make payment of wages prior to the time that they are required to be paid under the provisions of this section, and such wages together with any wages already earned and due under this section, if any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but **<u>in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.</u>** For the purposes of this section the words salaried employee shall mean any employee whose remuneration is on a weekly, bi-weekly, semi-monthly, monthly or annual basis, even though deductions or increases may be made in a particular pay period.
>
> G.L. c. 149, § 148. While the entire Wage Act is hardly a model of legislative draftsmanship, it is **<u>plain</u>** from this language that, while an employer may pay a **<u>salaried</u>** **<u>employee</u>** wages in advance, it may not delay payment "for more than six days from the termination of the pay period in which such wages were earned by the employee." *Id.*

*Dobin* v. *CIOview Corp.*, 16 Mass. L. Rep. 785 at *8-*9 (2003) (emphasis added). Hitachi Rail's argument, which is contrary Justice Gants' holding, is nonsensical. For these reasons, which are more fully analyzed below, Plaintiff, Volkan Turgut ("Turgut"), respectfully requests that this Court summarily deny Hitachi Rail's incredibly flawed Motion to Dismiss. Alternatively, and only if the Court is considering allowing Hitachi Rail's Motion to Dismiss, Mr. Turgut requests the opportunity to amend his Complaint to clarify any outstanding items this Court believes exists.

## I. <u>RELEVANT FACTUAL BACKGROUND</u>

Turgut has brought a single count Complaint on behalf of himself and those similarly situated to remedy Hitachi Rail's unmistakable violation of the Wage Act's timely pay requirements. See ECF 1-1, Complaint ("Compl."). Turgut's Complaint seeks redress for

violations of the Wage Act where Hitachi Rail failed to pay its employees within six (6) days of the close of Hitachi Rail's payroll periods. *Id*.

Hitachi Rail pays its employees, including Turgut, more than six (6) days from the close of its payroll period. *Id.* at ¶¶ 21-22. Hitachi Rail's employees are paid on either a salary basis or an hourly basis. Turgut worked five days per week for the Company.[2] *Id.* at ¶ 18. Turgut's claims seek recovery for all Hitachi Rail Massachusetts employees who were entitled to be paid their wages within six days of the close of the Company's pay period, whether they are hourly workers who "work" five or six days a week, or whether they are "employed" seven days a week and receive a salary. *See* Compl.

## II. <u>ARGUMENT</u>

### a. <u>Standard of Review.</u>

Generally, a court may dismiss a claim under Fed.R.Civ.P. 12(b)(6) only if it *clearly appears* that, on the facts alleged in the complaint, the plaintiff cannot recover on any viable theory. *See Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000). "A motion to dismiss tests the legal sufficiency of the complaint, not the plaintiff's likelihood of ultimate success." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Regarding motions to dismiss, the Supreme Court only requires the pleading of "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[2] Hitachi Rail's attempt to distinguish the definition of "worked" from that of "employed" is of no import in the instant matter. The Wage Act's requirement for payment within six days of the close of a pay period is the same for employees who "work" five or six days a week as it is for employees who are "employed" for seven days a week and receive a salary. *See* M.G.L. c. 149, § 148. Hitachi Rail's argument is that Turgut is "employed" for seven days a week and receives a salary as opposed to an hourly employee who works five or six days a week which again, is a distinction without a difference, pursuant to the Wage Act.

556 U.S. 662, 678 (2009). In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011).

**b. <u>The Wage Act and Its Interpretation.</u>**

Remedial statutes, such as Wage Act (and those statutes related thereto), must be liberally construed to achieve their desired purpose. *DePianti v. Jan-Pro Franchising International, Inc.*, 465 Mass. 607, 620 (2013) citing *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822 (1985). *See also Terra Nova Ins. Co. v. Fray-Witzer*, 449 Mass. 406, 420 (2007) (statute is remedial where it is "intended to address misdeeds suffered by individuals," rather than to punish public wrongs). Employment statutes, in particular, are to be liberally construed, "with some imagination of the purposes which lie behind them." *Id.* citing *Lehigh Valley Coal Co. v. Yensavage*, 218 F. 547, 553 (2d Cir. 1914), cert. denied, 235 U.S. 705 (1915). *See, e.g., Boston v. Commonwealth Employment Relations Bd.*, 453 Mass. 389, 391 (2009).

In addition to deserving a liberal construction, interpretations of the Wage Act must provide much deference to the Attorney General's interpretation of it because that office is the primary enforcer of the law. Indeed, the duty of statutory interpretation is for the courts, to be sure, but "[i]nsofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions." *Smith v. Winter Place LLC*, 447 Mass. 363, 367-368, (discussing Attorney General advisory interpreting G. L. c. 149, § 148A). *See Felix A. Marino Co. v. Commissioner of Labor & Indus.*, 426 Mass. 458, 460 (1998) (deferring to commissioner in interpreting ambiguous term in G. L. c. 149, § 26). Therefore, even if this Court believes a liberal construction of the Wage

Act still supports Hitachi Rail's argument, which it does not, this Court must also look to the Massachusetts Attorney General for guidance in interpreting its terms.

**c. <u>The Wage Act's Explicit Language Requires Employers to Pay Employees Who Work Five or Six Days a Week or Who Receive a Salary Within Six Days of the Close of a Pay Period.</u>**

In pertinent part, M.G.L. c. 149, § 148 reads as follows:

> [e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week ... further, that an employer may make payment of wages prior to the time that they are required to be paid under the provisions of this section, and such wages together with any wages already earned and due under this section, if any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.

M.G.L. c. 149, § 148. There is only one provision in the Wage Act that allows payment to be made more than six days after the close of a pay period. Certainly, the Wage Act allows payment "within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week, or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period." *See id*.

Based solely on the four corners of Turgut's Complaint, he worked five days per week. Whether this means he was a non-exempt hourly worker who was only "employed" for five days a week or an exempt salaried worker who was "employed" for seven days a week (but only worked five), which is the only other option Hitachi Rail seeks to have this Court consider, the result is the same. Specifically, Turgut's wages needed to be paid within six days of the close of

Hitachi Rail's pay period. This conclusion is based upon the direct language of the statute, which allows for a seven-day post pay period wage payment ***only for*** those employees who "work" one through four days a week or are "employed" seven days a week, but do not receive a salary. Neither scenario is present in Turgut's Complaint. Candidly, the fact that Hitachi Rail seeks to have this Court infer that Turgut was an exempt, salaried worker is inappropriate at this stage of the litigation. Further, Defendant's position fails even if the Court would allow such an inference in its favor.[3] This Court must now do what other Courts and the Massachusetts Attorney General has done, and hold that Hitachi Rail's position is baseless by denying its Motion to Dismiss.

### d. The Massachusetts Attorney General Has Made Clear that Hitachi Rail's Analysis is Flat Out Wrong.

Originally, the Wage Act empowered only government officials to bring civil or criminal proceedings for violations. Despite strict liability and the threat of fines, and later even imprisonment, the Legislature eventually decided, however, that government action alone was insufficient to enforce the Wage Act. In 1993, the Legislature enacted the private action provision of § 150, giving an employee the right to "institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits" for violations of § 148 and other labor laws. *Reuter v. City of Methuen*, 489 Mass. 465, 469 (internal citations omitted). *See also Lipsitt v. Plaud*, 466 Mass. 240, 246-247 (2013) (1993

---

[3] Hitachi Rail makes an argument that "interpreting the Wage Act to require employers to ascertain exactly which days in a particular week salaried employees "actually worked" would be impractical and nonsensical." This argument is confounding because M.G.L. c. 151, § 15 states as follows: "Every employer shall keep a true and accurate record of the name, address and occupation of each employee, of the amount paid each pay period to each employee, of the hours worked each day and each week by each employee, and such other information as the commissioner or the attorney general in their discretion shall deem material and necessary." *See also* 454 C.M.R. 27.07 (same). That Hitachi Rail, and its counsel, seem to believe this Massachusetts law does not apply to them is truly bizarre.

act transferred enforcement authority from Department of Labor and Industries to Attorney General, and "the Legislature contemporaneously created the private right of action as a means further to ensure rigorous enforcement of the Wage Act"). The Supreme Judicial Court went on to say "[g]overnment enforcement remains a vital part of the act and is now entrusted to the Attorney General under the first paragraph of G. L. c. 149, § 150. ... As we have recognized, '[t]he Attorney General's right to enforce G. L. c. 149 and the right of private citizens to enforce provisions of that chapter represent parallel and distinct enforcement mechanisms.'" *Reuter*, 466 Mass. at n. 5. Further in *Camara v. Attorney General*, 458 Mass. 756 (2011), the Supreme Judicial Court found "the Attorney General's reasonable interpretation of the Wage Act is entitled to deference." 458 Mass. at 759.

Because the Attorney General's interpretation of the Wage Act is to be given deference, Hitachi Rail's argument is truly absurd. Indeed, the Attorney General's website should have disavowed Hitachi Rail from even bringing its Motion to Dismiss because it does not make a distinction between "worked" and "employed" as Hitachi Rail insists must happen. To be sure, the Attorney General's website displays the following regarding timely wage payment:

| Number of Days Worked | Deadline to Pay |
|---|---|
| 5-6 days | 6 days after pay period ends |
| 1-4 days OR 7 days | 7 days after pay period ends |

https://www.mass.gov/guides/pay-and-recordkeeping#-payment-of-wages- (last visited April 5, 2024). Hitachi Rail spends a lot of ink attempting to create a controversy where none exists; indeed, both the Wage Act's language and the Attorney General make clear that employees who work five or six days a week are entitled to be paid within six days of the close of a pay period.

While the Attorney General's formulation of the Wage Act must be given deference, when coupled with the plain language of the Wage Act it becomes completely clear that Hitachi Rail's Motion to Dismiss flirts with frivolity and must be summarily denied.

**e. Court Decisions and Secondary Sources Further Illustrate that Hitachi Rail's Motion to Dismiss Must be Denied.**

Court decisions, Massachusetts Continuing Legal Education publications, and even publications from the employment defense bar make clear that Hitachi Rail's Motion to Dismiss has no basis in law. In *Dobin*, the Business Litigation Session of the Massachusetts Superior Court found it "plain" that employees who worked five or six days a week or received a salary were to be paid within six days of the close of any given pay period. *Dobin*, 16 Mass. L. Rep. 785 at *8-*9 (2003).

In its *Labor and Employment in Massachusetts* publication, Massachusetts Continuing Legal Education ("MCLE") writes : "[a]ll wages earned by employees working five or six days during a pay period shall be paid within six days of the termination of the pay period, or within seven days if the employee has a seven-day workweek. *1 Labor and Employment In Massachusetts § 2-7* (2023). In another of its publications, MCLE goes on to write "[f]or salaried employees, the Wage Act requires payment of 'any wages already earned and due' within six days of the termination of the pay period in which such wages were earned." *Massachusetts Employment Law § 14.4.2.*

Finally, in a publication made by Seyfarth Shaw, one of the largest employer side employment firms in the world, the firm writes: "For both exempt and non-exempt employees, Massachusetts law requires employees to be paid their wages—including overtime—within six days of the pay period in which the wages were earned. Thus, if a pay period ends on a Friday, employees must receive all wages earned during that pay period, including overtime, by the

following Thursday. While the statute does provide for payment of wages within seven days under certain circumstances, those circumstances are rare and may in fact present problems for the employer under other Massachusetts laws." *Mass-Peculiarities – An Employer's Guide to Wage and Hour Law in the Bay State*, Seyfarth Shaw, 2022 Edition, at pp. 39-40, https://www.content.seyfarth.com/publications/Mass-Peculiarities-2022 (last visited April 5, 2024).

As is clear from these various sources, Hitachi Rail's argument has no basis in law. In fact, Hitachi Rail has tried to read an ambiguity into the Wage Act where one clearly does not exist. Here, Turgut alleges he worked five days a week. That allegation, which must be presumed true for purposes of a Motion to Dismiss, makes clear that Turgut's wages needed to be paid within six days of the close of Hitachi Rails pay period.

The frivolity of Hitachi's legal position is further highlighted because Hitachi knows, or should know, that Plaintiff only worked five days per week. It has pay and time records to substantiate this. It has the offer letter it gave to Plaintiff when it hired him, outlining his expected work-week to be five days. It also has a recent communication to Plaintiff, confirming Plaintiff's expected work week to be five days. Yet, Hitachi shamelessly advances its legal position.

Nonetheless, even if this Court were to give Hitachi Rail's implication--that Turgut was an exempt, salaried employee--credence (which it should not), Defendant would fare no better because every bit of legal authority, including the statute's language, the Attorney General's interpretation, Massachusetts' lower courts, and various secondary sources, including those drafted by the employment defense bar, finds that even exempt, salaried employees are entitled to be paid their wages within six days of the close of a pay period. In sum, Hitachi Rail asks this

Court to ignore all legal authority available to it and instead choose to interpret a statute contrary to its "plain" language and contrary to every other source that has decided, or interpreted it. This Court must not give in to Hitachi Rail's bad faith attempt at restricting the Wage Act, where neither the legislature, nor the Massachusetts state courts, have authorized any such restriction.

## III. CONCLUSION

Hitachi Rail's Motion to Dismiss is devoid of any true basis in law. At every turn, the Company tries to make a clever argument, yet in doing so it asks this Court to make inferences in its favor and avoid following clearly established black letter law. As such, Turgut respectfully requests that this Honorable Court deny Hitachi Rail's Motion to Dismiss. Alternatively, Turgut requests this Court allow him to leave to amend his Complaint in the event this Court is inclined to grant Hitachi Rail's Motion to Dismiss.

Respectfully submitted, Plaintiffs,
Volkan Turgut, individually, on behalf
Himself and of all other similarly situated,

By His Attorneys,

*/s/ Eric R. LeBlanc*
Eric R. LeBlanc (BBO# 666786)
eleblanc@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800

*/s/ Ilir Kavaja*
Ilir Kavaja, (BBO# 682574)
Kavaja Law, P.C.
92 State Street, 8th Floor
Boston, MA 02109
(617) 515-5545
ilir@kavajalaw.com

**CERTIFICATE OF SERVICE**

I, Eric R. LeBlanc, hereby certify that on this 8th day of April 2024, the foregoing document was filed electronically through the ECF system, is available for viewing, and downloading from the ECF system and will be sent electronically to all counsel of record as registered participants identified on the Notice of Electronic Filing.

*/s/ Eric R. LeBlanc*

Eric R. LeBlanc