## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| VOLKAN TURGUT,<br>*on behalf of himself and others similarly situated,*<br><br>          Plaintiff,<br><br>v.<br><br>HITACHI RAIL STS USA, INC.,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 24-CV-10660-AK<br>)<br>)<br>)<br>)<br>)<br>) |

---

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**ANGEL KELLEY, D.J.**

      This case comes before this Court to answer a seemingly simple question: does the difference of a single day matter under the Wage Act?  Volkan Turgut ("Plaintiff" or "Turgut"), on behalf of himself and others similarly situated, purports that the Wage Act demands payment within six days after the termination of the pay period.  Hitachi Rail STS USA, Inc. ("Defendant" or "Hitachi") contends that the Wage Act allows employers to pay its employees within seven days after the termination of the pay period.  This appears to be a matter of first impression.  Defendant presents its own interpretation of the Wage Act and moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Dkt. 7].  For the following reasons, Defendant's Motion to Dismiss is **DENIED**.

### I.      BACKGROUND

      The facts of this case are based on the allegations in the Complaint, which the Court must take as true for the purpose of resolving Defendant's motion to dismiss.  Plaintiff is a senior

engineer manager at Hitachi.  [Dkt. 1-1 at 3].  Plaintiff works five days a week and is paid every

other week.  [Id.].  Plaintiff's payroll period is 14 days.  [Dkt. 1-1 ¶ 20].  Hitachi does not pay

Plaintiff within six days of the close of any given pay period.[1]  [Dkt. 1-1 ¶ 21].  Hitachi paid all

employees in Massachusetts "later than within six days of the closing of the payroll period" and

has done so since at least February 17, 2021.  [Dkt. 1-1 ¶ 22].  Most Hitachi employees in

Massachusetts are not expected to and do not in fact work seven days per week.  [Dkt. 1-1 ¶ 23].

Most Hitachi employees in Massachusetts work either five or six days per week.  [Dkt. 1-1 ¶ 24].

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and

actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court

must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d

100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the complaint to

distinguish factual allegations from conclusory legal statements.  See id.  Factual allegations

must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not

disregard properly pleaded factual allegations even if actual proof of those facts is improbable.

Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quotation omitted).

Second, the Court must determine whether the factual allegations present a "reasonable inference

that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46

(1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a

---

[1] At the motion hearing, Plaintiff's counsel clarified that Plaintiff gets paid seven days after the pay period.

"plausible entitlement to relief."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

Plaintiff purports to represent a class consisting of Hitachi employees who received W-2 wages from Hitachi from February 17, 2021 and who did not receive their wages in a timely manner under the Wage Act.  [Dkt. 1-1 at 5].  The case was initially filed in the Massachusetts Superior Court on February 20, 2024.  [Dkt. 1-1 at 2].  The case was removed to this Court on March 18, 2024.  [Dkt. 1 at 1].

## III.    DISCUSSION

Plaintiff's claim is based on the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 ("the Wage Act").  The Wage Act was enacted in 1886 "to prevent the unreasonable detention of wages."  Lipsitt v. Plaud, 994 N.E.2d 777, 783 (Mass. 2013) (quoting Melia v. Zenhire, Inc., 967 N.E.2d 580, 587 (Mass. 2012) (internal quotations omitted)).  Plaintiff's argument, in summary, is that Defendant violated the Wage Act by withholding employees' wages for longer than six days.  Defendant argues that the statute allows payments within seven days after the termination of the pay period for employees who earn wages all seven days.

The question at the center of Hitachi's motion to dismiss is ultimately one of statutory interpretation.  As is the case with any interpretation issue, this Court must first determine whether the language in the Wage Act has a "plain and unambiguous meaning with regard to the particular dispute in the case." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (citation and internal quotation marks omitted).  If this Court can ascertain the plain meaning of the statutory text, it need not proceed any further.  However, if the statute is ambiguous, a court may employ the canons of construction to assist in discerning the meaning of the statute.  See Littlefield v. Mashpee, 951 F.3d 30, 40 (1st Cir. 2020) ("[C]anons apply only in cases of textual

ambiguity.").  If the text is ambiguous and the canons of construction fail to resolve the issue, the Court can turn to legislative history to resolve the ambiguities.  See Perez-Olivo v. Chavez, 394 F.3d 45, 49-50 (1st Cir. 2005) (determining that consulting legislative history was appropriate after determining statute was ambiguous).  After employing the primary tools of statutory construction, the Court has concluded that Defendant's interpretation of the Wage Act is untenable.

    **A.**    **The Plain Language of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148**

As the late Justice Ralph Gants put it, the Wage Act is "hardly a model of legislative draftsmanship."  Dobin v. CIOview Corp., No. CIV.A. 2001-00108, 2003 WL 22454602, at *3 (Mass. Super. Oct. 29, 2003), abrogated by Reuter v. City of Methuen, 184 N.E.3d 772 (Mass. 2022).  The first sentence alone sits at a remarkable 593 words.[2]  It makes sense, then, that the plain language of the statute is not so easily inferred.  Other courts agree.  Courts have been called on to examine what "employee;"[3] "employer;"[4] "wages;"[5] and "awards"[6] mean under the Wage Act.  Now, this Court is tasked with interpreting the Wage Act to determine when employees must be paid.  The Wage Act has two parts that are relevant to the issue before this Court.  The first part of the statute mentions five, six, and seven days:

> Every person having employees in his service shall pay weekly or bi-weekly each
> such employee the wages earned by him to within six days of the termination of
> the pay period during which the ***wages were earned if employed for five or six***

---

[2] The statute, as a whole, has only 17 sentences across 1,270 words.

[3] See Kohli v. Res Eng'g, Inc., No. 00-02458, 2000 WL 1876605, at *2 (Mass. Super. Dec. 19, 2000).

[4] See Cook v. Patient Edu, LLC, 989 N.E.2d 847 (Mass. 2013).

[5] See Bos. Police Patrolmen's Ass'n, Inc. v. City of Bos., 761 N.E.2d 479 (Mass. 2002).

[6] See Reuter v. City of Methuen, 184 N.E.3d 772 (Mass. 2022).

***days in a calendar week, or to within seven days of the termination of the pay
period*** during which the wages were earned if such employee is employed seven
days in a calendar week, or in the case of an employee who has worked for a
period of less than five days, hereinafter called a casual employee, shall, within
seven days after the termination of such period . . . (emphasis added).

The following provision, which was added in 1960 (hereinafter "the 1960 amendment"), only
mentions six days:

. . . and provided, further, that an employer may make payment of wages prior to
the time that they are required to be paid under the provisions of this section, and
such wages together with any wages already earned and due under this section, if
any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but
***in no event shall wages remain unpaid by an employer for more than six days
from the termination of the pay period in which such wages were earned*** by the
employee. (emphasis added).

Defendant argues that the first part of the Wage Act makes a distinction between "worked" and

"employed." [Dkt. 8 at 1-2]. Specifically, Defendant argues that "the question of whether a six-

day deadline or a seven-day deadline applies is based not on how many days the employee

actually performed work in a specific week, but how many days an employee was 'employed.'"

[Dkt. 8 at 6]. Defendant understands "employed" as "each day they earn wages (including

salary)." [Id. at 2]. Plaintiff, however, argues that the 1960 amendment makes it clear that the

Wage Act "allows for a seven-day post pay period wage payment only for those employees who

'work' one through four days a week or are 'employed' seven days a week, but do not receive a

salary." [Dkt. 10 at 6]. The Wage Act does not define "employed," nor does it explain the

difference between "days worked" and "days employed." This Court determines that the text is

ambiguous and amenable to either party's interpretations. A worker can "work" five days in one

week but be "employed" all seven days as a salaried employee. On the other hand, a worker can

work all seven days but not be employed as a salaried employee (e.g., an hourly worker). It is

unclear from a plain reading of the statute whether these two employees would be treated

differently under the Wage Act.  Therefore, the analysis can go beyond the statutory text to understand its meaning.  See Perez-Olivo, 394 F.3d at 49 (concluding it is appropriate to examine external sources when the actual language of a statute is not clear).

**B.    Canons of Construction**

Courts may employ canons of statutory construction to understand ambiguous statutes. See Mundell v. Acadia Hosp. Corp., 92 F.4th 1, 12 (1st Cir. 2024).  The canon against surplusage is instructional as it urges this Court to give effect to every word and provision in the Act.  City Elec. Supply Co. v. Arch Ins. Co., 119 N.E.3d 735, 741 (Mass. 2019) (quoting Marx v. General Revenue Corp., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.")).

Moreover, the harmonious-reading canon indicates that the provisions of a text should be interpreted in a way that renders them compatible and not contradictory.  See Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm'n, 475 N.E.2d 1201, 1205 (Mass. 1985) ("When the meaning of a statute is brought into question, a court properly should read other sections and should construe them together . . . so as to constitute a harmonious whole consistent with the legislative purpose.") (internal citations omitted).  Courts presume, under the cardinal principle of statutory construction, that words in a statute are chosen carefully and when the legislature uses "one set of words in one paragraph of a statute but different words in a different part of the same statutory paragraph," they are assumed to carry different meanings.  Purvenas-Hayes v. Saltz, Mongeluzzi & Bedensky, P.C., 707 F.Supp.3d 472, 474 (E.D. Pa. 2023).  Lastly, the Supreme Court reasoned remedial statutes, such as the Wage Act, should be liberally construed under the remedial canon of construction.  Peyton v. Rowe, 391 U.S. 54, 65 (1968) (["T]his approach to the statute is consistent with the canon of construction that remedial statutes should

be liberally construed . . . because it also eliminates the inconsistencies between purpose and practice[.]"); see also Littlefield, 951 F.3d at 40.

Defendant asks this Court to wade in muddy waters. Specifically, Defendant asks this this Court to completely disregard the 1960 amendment. Moreover, Defendant asks this Court to conclude that "employed" means "salaried" and includes every day wages are earned. Using the the general/specific canon, Defendant argues that "[w]hen a general statutory provision and a specific statutory provision conflict, the specific provision governs." Paret-Ruiz v. United States, 943 F. Supp. 2d 285, 290 (D.P.R. 2013) (citing U.S. v. Bormes, 568 U.S. 6, 12 (2012)). Defendant contends that the first part of the Wage Act is the specific provision and the 1960 amendment is the general, conflicting provision. Thus, according to the Defendant, the first provision should govern.

This Court cannot read words into a statute to arrive at a desired, unsupported interpretation. See Fourstar v. Garden City Grp., Inc., 875 F.3d 1147, 1152 (D.C. Cir. 2017) ("It is not a judge's job to add or otherwise re-mold statutory text to try to meet a statute's perceived policy objectives. Instead we must apply the statute as written."). Nowhere in the statute's 593-word sentence is there language that suggests "employed" means "salaried" and includes every day wages are earned. Using the canons of statutory construction leads this Court to conclude that the Wage Act's timely payment requirements based on "wages earned" is the more general provision since it does not distinguish salaried from hourly employees. Moreover, this Court does not agree the provisions are clearly conflicting. In other words, this Court concludes that the Massachusetts legislature intended both parts of the Wage Act to be in effect. The first part of the Wage Act does not specify whether it applies to salaried or hourly workers. The 1960 amendment also refers to "wages earned" but is preceded and followed by a discussion on

"salaried employee." A reasonable interpretation using the canons of construction indicates that the first part of the statute is the general provision while the 1960 amendment is the more specific provision since it specifically discusses and defines "salaried employee." Reading the statute in this manner allows for a consistent reading of both parts (Compare "shall pay . . . wages earned by him to within six days of the termination of the pay period" with "in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.").

Accordingly, since this Court does not accept that the Massachusetts legislature intended for sections of the Wage Act to be inconsistent, the canons of construction do not support Defendant's position. The canons do not completely resolve the ambiguity, however, since it is unclear why there is a provision that allows for payments within seven days and to whom it applies.

## C.    Legislative History

Finding that the canons of construction do not conclusively resolve the ambiguity in the statute, this Court scrutinizes historic and external sources to understand the legislative intent. See Nat'l Fed'n of the Blind v. Scribd Inc., 97 F.Supp.3d 565, 573 (D. Vt. 2015); see also Sheehan v. Weaver, 7 N.E.3d 459, 463 (Mass. 2014) (stating that courts may "enlist the aid of other reliable guideposts" such as the statute's progression through the legislative body). In 1958, then-Attorney General George Fingold said the Wage Act "was born of the oppressive and irresponsible conduct of some employers." Letter from George Fingold to Commissioner of Labor and Industries (May 15, 1958), 1958 Att'y Gen. Ann. Rep. 12, at 72-73. The statute was designed to provide protections for employees by requiring the prompt payment of wages.[7] How

---

[7] Mark F. Murphy & Michael P. Murphy, Wage Act Claims Recent Developments in Massachusetts, Boston B.J., May/June 2004, at 19.

it executed its purpose, however, has not been an easy task. The Wage Act was far from complete when it was first enacted in 1869. In fact, it has been amended over 30 times from when it was first enacted in 1869 to its last amendment in 2008.[8] The following is a list of significant amendments to the Wage Act:

- St.1955, c. 506, approved June 28, 1955, in the first paragraph, substituted "if employed for five or six days in the week," for "if employed for six days in the week" and "five days, hereinafter called" for "six days, hereinafter called", and inserted "; and provided, further, that employees engaged in a bona fide executive, administrative or professional capacity as determined by the commissioner may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly".

- St.1960, c. 416, approved May 23, 1960, in the first paragraph, added "; and provided, further, that an employer may make payment of wages prior to the time that they are required to be paid under the provisions of this section, and such wages together with any wages already earned and due under this section, if any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the work week in which such wages were earned by the employee", and added the second sentence.

- St.1971, c. 387, approved June 10, 1971, in the first paragraph, in the first sentence, inserted "and employees whose salaries are regularly paid on a weekly basis or at a weekly rate for a work week of substantially the same number of hours from week to week".

- St.1992, c. 133, § 502, approved July 20, 1992, and by § 599 made effective as of July 1, 1992, in the first paragraph, in the first sentence, inserted "or bi-weekly", substituted "termination of the pay period during which the wages were earned" for "date of said payment" in two places and "a calendar week" for "the week" in two places, and inserted "such employee is".

- Section 503 of St.1992, c. 133 , in the first paragraph, in the first sentence, substituted "termination of the pay period" for "termination of the work week".

- St.2008, c. 532 , approved Jan. 15, 2009, effective April 15, 2009, inserted the second paragraph: "Compensation paid to public and non-public school teachers shall be deemed

---

[8] The following is a list of all the amendments to the Wage Act: Amended by St.1932, c. 101, § 1; St.1935, c. 350; St.1936, c. 160; St.1943, c. 378; St.1943, c. 467; St.1943, c. 563; St.1946, c. 414; St.1951, c. 28; St.1955, c. 506; St.1956, c. 259; St.1960, c. 416; St.1966, c. 319; St.1970, c. 760, § 12; St.1971, c. 387; St.1971, c. 590; St.1977, c. 664; St.1979, c. 633; St.1987, c. 559, § 29; St.1990, c. 162, § 1; St.1991, c. 138, § 331; St.1992, c. 133, §§ 502 to 504; St.1993, c. 110, § 181; St.1996, c. 151, §§ 426, 427; St.1997, c. 164, § 117; St.1998, c. 236, § 10; St.2008, c. 532, eff. April 15, 2009.

> to be fully earned at the end of the school year, and proportionately earned during the school year; provided, however, that payment of such compensation may be deferred to the extent that equal payments may be established for a 12 month period including amounts payable in July and August subsequent to the end of the school year."

The Court presents the long (but not exhaustive) list of amendments not to belabor a point – it does so to show the history of iterations and improvements the legislature was committed to in attempting to perfect this legislation. One can call it a quagmire, or one can call it a masterpiece. But one would be remiss to consider this legislative handiwork unworthy of careful consideration. The many amendments attempt to inspire a reading that closely parallels the Wage Act's intent. This is supported by the fact that this is a strict liability statute.[9] Not only can the attorney general and the Massachusetts Department of Labor and Industries bring civil actions, but so can employees. Any employer who is found to have violated any provision of the Wage Act will be ordered to pay treble damages. It is through the Wage Act's many amendments, which marshaled in the private right of action and the stiff penalty of treble damages, that the Wage Act's purpose becomes pellucid.

### D.    Court Decisions and Secondary Sources

The Court finds that the cases the parties rely on are inapposite to the case at bar. However, it will take the opportunity to reason why this is an issue of first impression. A seminal case on the matter is <u>Am. Mut. Liab. Ins. Co. v. Comm'r of Lab. & Indus.</u>, which provides the language of intent which many cases have adopted. 163 N.E.2d 19, 21 (Mass. 1959) ("The legislation in its early form was enacted primarily to *prevent unreasonable detention of wages*.") (emphasis added). This case, however, was decided in 1959, one year before the 1960 amendment. Reliance on it is misplaced since it did not examine the specific provision for

---

[9] Or, as another has put it, a "state statute with teeth." Rebekah D. Provost, <u>Punishing and Deterring the Unknowing: Mandatory Treble Damages Under the Massachusetts Wage Act</u>, 18 Suffolk J. Trial & App. Advoc. 305 (2013).

salaried employees. <u>Dobin</u> is another case which seems initially promising but cannot save the day. In the 2003 opinion, Judge Gants said, "Under the Wage Act, [the Plaintiff] was required to be paid her monthly wage no more than six days after the termination of her monthly pay period." <u>Dobin</u>, 2003 WL 22454602, at *3, <u>abrogated by</u> <u>Reuter</u>, 184 N.E.3d 772. However, <u>Dobin</u> lacks force here for a number of reasons. First, the 2003 <u>Dobin</u> Court held that an agreement to defer a salaried employee's wages violated the Wage Act. <u>Id.</u> at *6. This holding runs contrary to the 2009 amendment, which allows compensation to be deferred for teachers. Second, the <u>Dobin</u> plaintiff only worked three days, and, according to the plain reading of the Wage Act, should have been paid no more than seven days, not six. <u>Id.</u> at *1. Third, and most importantly, <u>Dobin</u>'s discussion of the number of days plaintiff worked was dicta. <u>Id.</u> The case's holding was whether the plaintiff was *considered an employee* under the Act. <u>Id.</u> at *3-4.

Defendant cites to a number of cases to bolster its interpretation of the statute. See <u>Parris v. Sheriff of Suffolk Cnty.</u>, 110 N.E.3d 457, 459 (Mass. App. Ct. 2018) ("The Wage Act, G. L. c. 149, §§ 148 and 150, generally requires that all public and private employers in the Commonwealth pay their employees' wages no more than seven days after the end of the pay period in which the wages were earned."); <u>see also</u> <u>Bos. Police Patrolmen's Ass'n, Inc. v. City of Bos.</u>, No. CIV.A. 96-6222E, 1999 WL 1260164, at *6 (Mass. Super. Nov. 16, 1999), aff'd, 435 Mass. 718, 761 N.E.2d 479 (2002). However, these attempts are selective readings of the statute.

Neither Plaintiff nor Defendant cite to a case that confronts the nuance between the two relevant provisions of the statute, nor explains why the six-day versus seven-day requirement applies.

Additionally, Plaintiff highlights the Massachusetts Attorney General's website, which displays the following table regarding timely wage payments:

| Number of Days Worked | Deadline to Pay |
|---|---|
| 5-6 days | 6 days after pay period ends |
| 1-4 days OR 7 days | 7 days after pay period ends |

Pay and recordkeeping, Massachusetts Attorney General, https://www.mass.gov/guides/pay-and-recordkeeping#-payment-of-wages- (last visited Feb. 26, 2025).  The Plaintiff is correct in stating that the Attorney General's interpretation of the Wage Act should be given deference. [See Dkt. 10 at 7]; see also Camara v. Att'y Gen., 941 N.E.2d 1118, 1120 (Mass. 2011). However, courts are not beholden to blind deference.  See Maine People's All. And Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 295 (1st Cir. 2006) ("[W]e do not think that 'some deference' means either total obeisance or blind allegiance."); see also Citizens Sav. Bank v. Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985) ("The court recognizes that the deference due to an agency's interpretation of its governing statute and regulations is far from blind allegiance.  A reviewing court should not 'slip into a judicial inertia' or mindlessly 'rubberstamp' the agency. The true measure of the deference due depends on the persuasive power of the interpretation, given the totality of the attendant circumstances."); DiMasi v. Sec'y of Commonwealth, 199

N.E.3d 1274, 1280 (Mass. 2023) ("An incorrect interpretation of a statute by an administrative agency . . . is not entitled to deference.") (quotation omitted).

Right above the table used by the Attorney General is the following sentence: "Hourly workers must be paid every week or every other week (bi-weekly). The deadline to pay depends on how many days an employee worked during one calendar week." Pay and recordkeeping, supra. The focus on hourly workers suggests that this table describes hourly workers, not salaried workers who receive their compensation despite the number of hours they work. Thus, Plaintiff's reliance on this table, while persuasive, appears misplaced because it does not appear to address salaried employees.

The Court finds, once again, the words of then-Attorney General George Fingold instructive. In a 1956 letter to Ernest Johnson, the Commission of Labor and Industries, he states:

> You inquire whether or not a Sunday is to be counted in the six-day period prescribed by the statute; if so, as you point out, such employers are not complying with the legislative mandate . . . Said § 148 as amended, provides for a six-day wage-payment period for persons employed for five or six days a week, and a seven-day period for seven-day employees. If Sundays were to be excluded from the computation of the six-day period, the practical effect would be to extend that period, as to five- and six-day employees, to seven days. It was the clear and obvious intent of the Legislature to differentiate between seven-day employees and those regularly employed for a lesser period, and the exclusion of Sundays from the computation of the six-day period specified in § 148 would frustrate that purpose. Accordingly, I advise you that a Sunday is to be counted in computing the six-day period prescribed by § 148.

Letter from George Fingold to Commissioner of Labor and Industries (Jan. 19, 1956), 1958 Att'y Gen. Ann. Rep. 12, at 64. While this Court must ultimately interpret ambiguous statutes, "an administrative agency's interpretation of a statute within its charge is accorded weight and deference," especially when the agency's interpretation is reasonable. Peterborough Oil Co.,

LLC v. Dep't of Env't Prot., 50 N.E.3d 827, 832 (Mass. 2016).  The 1956 letter from then-Attorney General George Fingold does not interpret the Wage Act directly, but it provides context to discussions happening in the backdrop of the statute's evolvement.  Fingold urged the Commissioner to include Sunday in the six-day computation so as to not frustrate the purpose of the statute.  He reasoned that excluding Sunday would, in effect, extend all periods to seven days.  Since the attorney general was charged with enforcement, this Court gives weight to the attorney general's interpretation that it was the legislature's intent "to differentiate between seven-day employees and those regularly employed for a lesser period."  Id.  This Court elects a similar reading here.  A reading that gives "worked" and "employed" distinct meanings would not only cut against the purpose of the statute, but it would also, in effect, render the 1960 amendment hollow.

This begs the question: who does the seven-day provision apply to?  Considering the legislative history, guidance from past and current attorneys general, and a reading of the statute as a whole, it appears to the Court that the provision applies only to hourly workers who work all seven days.  It is not clear whether Plaintiff is an hourly or salaried employee.  Either way, Defendant's motion must be denied since the Complaint alleges that Plaintiff works only five days, requiring payment to be made within six days under the Wage Act.

Defendant argues that this reading indicates "salaried employees are entitled to greater protection under the Wage Act than hourly employees in that the seven-day deadline may *only* apply to hourly employees.  Such an interpretation is contrary to both the text and spirit of the statute."  [Dkt. 13 at 5].  This Court disagrees with Defendant.  The spirit of the statute is constrained by the text.  Mattocks v. Lovering, 3 F. 212, 213 (C.C.D. Mass. 1880).  The text of the statute allows a seven-day payment deadline for workers who work less than 5 days.  ("[I]n

the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of the pay period, pay the wages earned by such casual employee during such period[.]").  The legislature clearly wanted workers who did not work five or six days a week to be paid within seven days.  This Court is not permitted to second guess the legislature's decision to vary payment deadlines based on the number of days worked.

## IV.    CONCLUSION

The parties in this case urged this Court to grapple with a seemingly harmless question: does one day make a difference?  Perhaps to many, the answer is no.  However, to some, the difference could mean a day earlier parents can purchase groceries; or a student's ability to pay rent on time; or the faster a patient can pay for a medical procedure.  This Court answers the question posed to it in the affirmative: a day matters for the many people in this Commonwealth who live paycheck to paycheck.[10]  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's Complaint.

Nonetheless, the Court applauds Defendant's briefing on the matter.  Its efforts were certainly valiant.  As a matter of first impression, this Court welcomes the opportunity to review, question, clarify, and apply the laws that protect the people of the Commonwealth.


**SO ORDERED.**

Dated: February 27, 2025                                              /s/ Angel Kelley
                                                                                          Hon. Angel Kelley
                                                                                          United States District Judge

---

[10] The Court notes that Massachusetts is not alone in this view.  Both Vermont and Arizona have similar payment schedules.  See 21 VT Stats § 342 (stating any employer shall pay the wages earned by each employee within six days); Ariz. Rev. Stat. § 23-351 (stating all wages shall be delivered to employee within five days).

15