UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VOLKAN TURGUT,<br>*on behalf of himself and all others similarly situated,*<br><br>　　　*Plaintiffs,*<br><br>v.<br><br>HITACHI RAIL STS USA, INC.,<br><br>　　　*Defendant* | C.A. No. 1:24-cv-10660-AK |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

Respectfully Submitted,
Plaintiffs, Volkan Turgut, individually, and
on behalf of Himself, and others similarly situated,

By his attorneys,

*/s/ Eric R. LeBlanc*
Eric R. LeBlanc BBO# 666786
William E. Petrone, BBO# 711524
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800
eleblanc@bennettandbelfort.com
wpetrone@bennettandbelfort.com


*/s/ Ilir Kavaja*
Ilir Kavaja, BBO No. 682574
Kavaja Law, P.C.
92 State Street, 8th Floor
Boston, MA 02109
(617) 515-5545
ilir@kavajalaw.com

1

Wednesday, March 6, 2024

## Pay Date Moving to Thursday



### Hitachi Rail Employees To Receive Pay Checks One Day Earlier

Beginning tomorrow, March 7, the pay dates for all Hitachi Rail employees in the U.S. and Canada will occur on Thursdays, giving employees a head start on weekend plans.

Despite clearly informing <u>all its employees</u> in the above email on March 6, 2024 that they would be paid "one day earlier… on Thursdays"[1], Defendant Hitachi Rail STS USA, Inc. ("Hitachi") now asks this Court to find that its employees were receiving their pay on Thursdays all along. Hitachi's implausible premise collapses under its own weight when the Court focuses on the fact that Hitachi specifically instructed its payroll processor to instruct banks to settle its payroll with its employees on Friday (day 7 after the close of its payroll period) up until the beginning of March 2024. This Court has already held, in this case, that a seventh-day pay schedule (like Hitachi's in this matter) violates the mandate of the Massachusetts Wage Act ("Wage Act"). *Turgut v. Hitachi Rail STS USA, Inc.*, 768 F. Supp. 3d 200, 211 (D. Mass. 2025). Throughout the relevant time period, between February 2021 and March 2024, Hitachi paid all of its Massachusetts employees on the seventh day (Friday) after the end of each pay period.

Plaintiff Volkan Turgut seeks certification of the Late Pay Class, a class of 43 Massachusetts employees of Hitachi who were paid under the same biweekly payroll schedule,

---

[1] Image and quote from <u>Pay Announcement</u>, attached as **Exhibit 1**, at Turgut 000246-47.

through the same payroll platform, on the same Friday pay dates, seven days after the close of the same Saturday-to-Friday pay periods.

For each of 76 regular biweekly pay periods between February 17, 2021, and March 7, 2024, Hitachi set the pay date for its Massachusetts employees on the Friday following the close of the pay period. Hitachi processed payroll for its Massachusetts employees through a single ADP company code and, as Hitachi's Rule 30(b)(6) witness put it, treated employees "exactly the same." Hitachi's own payroll records identify 43 Massachusetts employees, 76 late regular pay periods, and 1,667 separate employee-pay-period violations.

Class certification turns on proof, and the proof is common. This is one employer, one payroll practice, one statutory question, one class-wide answer. Federal Rule of Civil Procedure 23 is satisfied on all six requirements. Numerosity is satisfied because the class includes 43 employees. Commonality is satisfied because the same employer-set pay schedule supplies the same answer for every class member. Typicality is satisfied because Mr. Turgut's claim arises from the same pay schedule under the same legal theory. Adequacy is satisfied because Mr. Turgut has no conflict with the class and is represented by experienced employment-class counsel. Predominance is satisfied because liability turns on Hitachi's uniform class-wide wage payment schedule, not on individualized banking choices. Superiority is satisfied because 43 parallel wage suits over the same payroll practice would waste judicial and party resources. The Wage Act's enforcement scheme favors collective resolution of common violations. Therefore, this Court should certify the Late Pay Class.

## I.      FACTUAL BACKGROUND

### A.   Hitachi Used One Payroll Practice for the Massachusetts Class.

Plaintiff Volkan Turgut is a former employee of Defendant Hitachi Rail. *See* Deposition of Volkan Turgut, 76:8-78:16 ("Turgut Depo."), attached as **Exhibit 2**. Mr. Turgut began

working for Hitachi in January 2023 as a Senior PTC System Signaling Engineer Manager with an annual base salary of $175,000 per year. *See* Turgut Offer Letter at 4, attached as **Exhibit 3**. Mr. Turgut's employment with Hitachi ended on or about April 16, 2024. *See* Turgut Notes at Turgut000167, attached as **Exhibit 4**.

Between February 17, 2021, and March 7, 2024, Hitachi employed 44 Massachusetts employees, including Mr. Turgut. *See* Deposition of Hitachi 30(b)(6) Witness Michelle Falce ("Falce Depo.") 18:18-19:24, attached as **Exhibit 5**; *see* 2021 Pay Summary, attached as **Exhibit 6**; 2022 Pay Summary, attached as **Exhibit 7**; 2023 Pay Summary, attached as **Exhibit 8**; 2024 Pay Summary, attached as **Exhibit 9**[2]; Class Period Pay Summary, attached as **Exhibit 10**. Of those forty-four Massachusetts employees, forty-three had at least one of their paychecks paid more than six days after the end of the pay period in which the wages were earned. *See* Turgut Pay Stubs, attached as **Exhibit 11**; Deposition of ADP 30(b)(6) Representative Edgardo Morales ("Morales Depo."), 35:1-37:15, attached as **Exhibit 12**.

During this period, Hitachi used a regular biweekly payroll cycle with a Saturday-to-Friday pay period and a Friday pay date seven days after the close of the pay period. Deposition of Hitachi 30(b)(6) Witness Kimberly Aurin-Davies, ("Aurin-Davies Depo."), 41:4-43:12, 45:17-46:20, attached as **Exhibit 13**. Across 76 regular biweekly pay periods, that practice produced 1,667 separate employee-pay-period violations of the Wage Act's six-day requirement. *See* 2021 Pay Summary; 2022 Pay Summary; 2023 Pay Summary; 2024 Pay Summary; Eric LeBlanc Declaration ("LeBlanc Decl.") ¶ 9.

Hitachi hired Automatic Data Processing, Inc. ("ADP") to process its payroll for all employees. *See* Hitachi's Second Supplemental Answers to Interrogatories ("Hitachi Answers to Ints.") at Response and Supp. Response No. 2, attached as **Exhibit 14**. Hitachi's ADP company

---

[2] Irrelevant portions of the 2021-2024 Pay Summaries have been removed for ease of presentation.

code was 6JC. <u>Morales Depo.</u> at 16:13-17:6. ADP's payroll process for that company code was uniform, and there was nothing unique about the ADP payroll process for Hitachi's Massachusetts employees. <u>Morales Depo.</u> at 80:7-18. Hitachi's Rule 30(b)(6) payroll designee Kimberly Aurin-Davies likewise confirmed that no Hitachi employees went through a different payroll process and that all employees were treated "exactly the same." <u>Aurin-Davies Depo.</u> 84:22-85:3. Hitachi controlled the pay periods and pay dates used in that payroll process. <u>Morales Depo.</u> at 17:17-19:24, 24:5-18, 29:14-30:16. ADP did not decide Hitachi's pay periods, pay dates, or pay frequency. <u>Morales Depo.</u> at 17:11-19, 17:23-18:17, 19:11-24.

ADP advises its clients to submit all of its payroll information for a given pay period at least forty-eight hours prior to the designated pay date. <u>Morales Depo.</u> at 29:19-31:2, 73:13-75:15. The pay date is the date that Hitachi has instructed ADP to make its employees' funds available in their accounts; no earlier, no later. <u>Morales Depo.</u> at 22:12-24:18, 92:13-93:10. ADP sent receiving banks instructions identifying the pay date as the *Hitachi instructed* date on which wages were to be made available to employee accounts. <u>Morales Depo.</u> at 22:12-25:5, 76:24-77:13. Hitachi did not instruct ADP to send funds to any employee earlier than the Friday pay date Hitachi had selected. <u>Morales Depo.</u> at 92:13-93:10. ADP distributes Hitachi's funds to its employees via a reverse-wire process, initiating the transfer of money from Hitachi's account to ADP's account and confirming receipt of Hitachi's money before sending pay to employees' banks. <u>Morales Depo.</u> at 27:12-28:24.

For example, the April 29-May 12, 2023 pay period illustrates the practice.[3] <u>Morales Depo.</u> at 31:14-39:11; <u>Turgut Pay Stubs</u> at HRSTS002480. For that pay period, Hitachi set a pay date of May 19, 2023, seven days after the close of the pay period. <u>Morales Depo.</u> at 31:11-20,

---

[3] This process was the same for all pay periods within the class period, and applied in the same way to all Massachusetts Hitachi employees.

34:16-35:22. Hitachi submitted its payroll information to ADP on May 16, 2023. <u>Morales Depo.</u> at 53:10-57:14, 93:11-95:22; ADP Statistical Summary ("<u>Stat Summary</u>"), attached as **Exhibit 15**. ADP then transmitted a "tape" to the banks on May 17, which indicated the employees' pay information to the banks. <u>Morales Depo.</u> at 53:10-57:14, 93:11-95:22. Mr. Turgut's May 19, 2023, earnings statement therefore identified Hitachi as the employer, Mr. Turgut as the employee, the pay period as April 29 through May 12, 2023, the pay date as May 19, 2023, and net pay of $4,474.21 deposited to an account ending in 6370. <u>Morales Depo.</u> at 31:11-20, 31:5-39:14; Deposition of Charles Schwab 30(b)(6) Witness Griselda Haller ("<u>Haller Depo.</u>"), at 18:19-20:14, attached as **Exhibit 16**.

B.   <u>Hitachi Changed the Pay Date for Its Entire Workforce at Once.</u>

In March 2024, Hitachi moved its pay date one day earlier. The March 6, 2024, internal communication stated that "beginning tomorrow, March 7, the pay date for all Hitachi Rail employees in the U.S. ... will occur on Thursdays." <u>Pay Announcement</u> at Turgut 000246-47. The change moved the pay date from the seventh day after the close of the pay period to the sixth (i.e. from Friday to Thursday). It applied to the entire Hitachi workforce, on a date Hitachi selected and communicated in a single announcement. <u>Aurin-Davies Depo.</u> at 42:22-45:1, 93:21-98:10.

C.   <u>The Banking Evidence Does Not Convert This Payroll Case Into Individual Banking Cases.</u>

Some banks offer their clients early pay programs ("Early Pay"). [4] *See* <u>Wells Fargo Policy</u>, attached as **Exhibit 17** at WF000001; <u>Citizens Bank Paid Early Release</u>, attached as **Exhibit 18** at CBNA000257; Deposition of Citizens Bank 30(b)(6) Witness Stephen Devine ("<u>Devine Depo.</u>") at 8:23-10:6, attached as **Exhibit 19**. Early Pay applies to regularly-scheduled

---

[4] Mr. Turgut's bank, Charles Schwab bank, does not offer any form of an "early pay" program, thus all of Mr. Turgut's paychecks prior to March 7, 2024, were settled in his account on day 7 (i.e. Friday). Haller Depo. 23:20-23.

direct deposits. Wells Fargo Policy at WF000001; Citizens Bank Paid Early Release at CBNA000257; Devine Depo. at 8:23-10:6. When a bank receives confirmation from a payroll processor, like ADP, that an employee's funds are on their way to the bank (i.e. when ADP sends the tape to the bank), the bank will release its own funds in the amount of the direct deposit to the employee, one to two days before the pay date. *See* Wells Fargo Policy at WF000001; Devine Depo. at 8:23-10:6, 44:13-45:6. Then when the bank receives the employer's funds on the pay date, the bank takes those funds for its repayment. Wells Fargo Policy at WF000001, WF000013; Devine Depo. at 10:16-14:10; Aurin-Davies Depo. at 85:4–86:2; Morales Depo. at 78:5–15, 91:14–92:12.

Crucially, these Early Pay funds are not the employee's to keep: the bank can take them back. Banks reserve the right to take the amount paid early back from the employee if the employer does not transmit the employee's pay to the bank. Wells Fargo advises its customers that, "[i]f we've made funds available early and the payor reverses or requests a return of the deposit, or the funds are otherwise uncollected by the Bank, you understand and agree that we may debit your account up to the amount of the deposit that was previously made available — even if you have already withdrawn the funds or it creates an overdraft on your account. In this instance, you are responsible for any fees assessed —including those charged by merchants or third parties — as a result of the overdraft." Wells Fargo Policy at WF000012-13. Citizens Bank informs its customers that it may provisionally credit customers' accounts with respect to an incoming ACH credit, "subject to the receipt of final settlement for such ACH credit through such automated clearing house . . . if [Citizen's Bank does] not receive final settlement, [customers] are . . . notified and agree that [Citizen's Bank is] entitled to a refund of the amount provisionally credited to [the customer] in connection with such ACH Credit, and the party making payment to [the customer] via such ACH Credit .. . **shall not be deemed to have paid**

**[the customer] in the amount of such ACH Credit.** Excerpts from <u>Citizens' Bank Policy</u>, attached hereto as **Exhibit 20** at CBNA000006; <u>Devine Depo.</u> at 15:5-20.

## II. LEGAL STANDARD

Courts exercise "broad discretion" in determining whether to grant class certification. *Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 365 (D. Mass. 2009). While Rule 23 requires a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), the First Circuit applies that standard with a liberal thumb on the scale in favor of certification, *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). To obtain certification, Mr. Turgut must only show that the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3) are satisfied. *Prinzo v. Hannaford Bros. Co.*, 343 F.R.D. 250, 251 (D. Mass. 2023) (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)). While this analysis may overlap with the merits of the underlying claim, the inquiry must only extend to what is necessary to determine whether Rule 23 has been satisfied. *Constantine v. Nat'l Grid USA Serv. Co.,* 2026 WL 478181 at *2, 2026 U.S. Dist. LEXIS 35004 at *4-5 (D. Mass. Feb 20, 2026) (Kelley, D.J.), (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66, (2013)). The Court may consider merits questions only to the extent necessary to decide whether Rule 23 is satisfied. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013); *Constantine,* 2026 WL 478181, at *2.

## III. LEGAL ARGUMENT

### A. The Late Pay Class Satisfies All Four Requirements of Rule 23(a).

Rule 23(a) requires a putative class to show that: (1) the class is so numerous that joinder of all members is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and

adequately protect the interests of the class ("adequacy"). *Smilow*, 323 F.3d at 38 (citing Fed. R. Civ. P. 23(a)). Because Hitachi paid every Massachusetts employee under a single, uniform pay practice, the questions that govern certification are common to the class and answered by Hitachi's own conduct, not by anything any individual employee did.

### 1. The Late Pay Class Meets the Requirement for Numerosity.

The Late Pay Class is sufficiently numerous such that joinder is impractical. Numerosity is "not a difficult burden to satisfy." *McAdams v. Massachusetts Mut. Life Ins. Co.*, 2002 WL 1067449 at *3 (D. Mass. May 15, 2002), *aff'd*, 391 F.3d 287 (1st Cir. 2004) (internal citation omitted). The threshold for establishing numerosity is "low," *Constantine*, 2026 WL 478181, at *2, and is generally met where the proposed class exceeds 40 members. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010). The proposed class consists of 43 Massachusetts employees identified by Hitachi's own payroll records. *See* 2021 Pay Summary; 2022 Pay Summary; 2023 Pay Summary; 2024 Pay Summary; Class Period Pay Summary; Falce Depo. at 18:18-19:24. That easily clears the numerosity threshold.

### 2. The Late Pay Class Meets the Requirement for Commonality.

Whether Hitachi's seventh-day Friday pay date violated the Wage Act's six-day requirement is one legal question with one class-wide answer, dictated by Hitachi's own conduct. The threshold for commonality under Rule 23(a)(2) is not high. *Constantine*, 2026 WL 478181, at *2 (citing *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010)). While there must be at least one common issue of fact or law that shapes the class such that the resolution affects all or a substantial number of the class members, a plaintiff need not show that every fact and legal issue is shared by each class member. *Id* (citing *In Re. Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005)). Commonality requires

9

the identification of an issue that by its nature is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The First Circuit has confirmed that "identification of an unofficial yet well-defined practice or set of practices that is consistently and uniformly applied" satisfies commonality. *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 29 (1st Cir. 2019). "Even a single common question will do." *Wal-Mart*, 564 U.S. at 359.

Courts, especially in this Circuit, routinely hold that class adjudication under Rule 23 is the appropriate means to resolve the dispute where employees challenge a company-wide policy of their employer. *See Overka v. American Airlines*, 265 F.R.D. 14, 18 (D. Mass. 2010) (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)) ("Commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."). Numerous courts have affirmed that class certification is appropriate in wage-and-hour cases where the case presents a common question. *See Ruiz v. NEI Gen. Contracting, Inc.*, 719 F. Supp. 3d 139, 157-58 (D. Mass. 2024) (certifying Wage Act class encompassing both late-paid and unpaid workers where "both late and missed payments raise the same common legal question under the Massachusetts Wage Act, which can be resolved with one common answer regarding the Contractors' practice or policy around payments," and individualized damages "will be easily calculable based on timesheets and paychecks"); *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 179-82 (D. Mass. 2012) (certifying Wage Act class where employer maintained "a uniform policy to use a wage system that either was itself, or that caused, wage violations," because such allegations that the policy "facially violated state law" require "little individual inquiry," and "wage claims are especially suited to class litigation, perhaps 'the most perfect questions for class treatment'" (citation omitted).

10

The central legal question is whether Defendant paid its employees later than the Wage Act allows. The answer turns on a single principle: payment is not complete until the *employee has control over the funds*. Construing § 148, the *Clermont* court held that the statutory command to pay "requires the employer to *transfer control over the funds to the employee*" by the date payment is due, because "[p]ayment is . . . *incomplete until the recipient of the funds has some control over the funds*." *Clermont v. Monster Worldwide, Inc.*, 102 F. Supp. 3d 353, 356 (D. Mass. 2015) (emphasis added). That control-based rule derives from general principles of Massachusetts payment law, not from anything unique to the discharge context: payment "occurs when funds are 'tendered and accepted,'" *id.* (quoting *Goldman v. Peterson*, 1997 Mass. App. Div. 189, 1997 WL 724662 (1997)), and a payment is made only when it is both funded and "delivered to the payee," such that the recipient may actually draw on it. *Id.* at 356-57 (quoting *First Nat'l Ins. Co. v. Commonwealth*, 391 Mass. 321, 461 N.E.2d 789, 792-93 (1984)). Mere transmission is not enough. *Clermont* held the employer violated the Act where it initiated a direct deposit on the day payment was due knowing the employee *could not access the funds* until the next day, a practice the court likened to placing payment in overnight mail: dispatched on time, but not within the employee's control until too late. *Id.* at 357.[5]

That principle controls here and disposes of any suggestion that Defendant paid on time merely because funds may have reached the bank within six days. Whatever the bank received and when, Defendant instructed that the funds be released to employees only on the seventh day, and the bank could not release them earlier. Employees therefore had no control over their wages

---

[5] Indeed, *Clermont* confirms that even funds nominally delivered on time are not "paid" if the employee lacks control over them: a post-dated check handed to an employee on the date payment was due was "tardy under the Act" because the employee, "though in possession of the [check], did not have control over the funds." *Clermont*, 102 F. Supp. 3d at 356 (citing *Dobin v. CIOview Corp.*, 2003 WL 22454602, at *8 (Mass. Super. Oct. 29, 2003)).

until day seven. Under *Clermont*, payment was not complete until that day, and a seventh-day completion of payment violates the six-day requirement.

This Court has already construed § 148, as the law of this case, to require payment within six days of the close of the pay period for employees who work five or six days in a calendar week. *Turgut*, 768 F. Supp. 3d at 210-11. Hitachi's Massachusetts employees were identified through ADP "worked in state" reporting, and Hitachi's 30(b)(6) witness was not aware of any Massachusetts employees who worked seven days per week (Aurin-Davies Depo. 87:12–17); therefore, the six-day wage-payment requirement governs the putative class. Defendant's uniform practice of withholding control over wages until the seventh day fails to satisfy its Wage Act obligations.

The controlling facts are common to the entire Late Pay Class. Hitachi alone selected the pay periods. Hitachi alone selected the pay dates. ADP played no role in either choice. Morales Depo. at 17:11-19. Hitachi processed all of its Massachusetts employees' payrolls through a single ADP company code, 6JC, under a single configuration that ADP applied uniformly. Morales Depo. at 80:7-18. As Hitachi's Rule 30(b)(6) witness confirmed, every Hitachi employee was treated "exactly the same." Aurin-Davies Depo. at 84:22-85:3. For each of 76 biweekly pay periods between February 19, 2021, and March 1, 2024, Hitachi designated the same Friday pay date for every Massachusetts employee, seven days after the close of the same Saturday-to-Friday pay period. Turgut Pay Stubs; Morales Depo. at 35:1-37:15. For all relevant pay periods, the employees' pay was settled in their bank accounts on the listed pay date (selected solely by Hitachi) – the seventh day after the end of the pay period in which the wages were earned. Morales Depo. at 92:13-93:10; Haller Depo. at 11:25-13:20, 16:6-18:9, 38:5-9; Devine Depo. at 16:2-17:24, 22:3-21, 44:13-45:6, 51:21-52:5. All factual and legal questions that determine Defendant's liability can, and will, be answered on a class-wide basis.

3. *The Late Pay Class Meets the Requirement for Typicality.*

Mr. Turgut was paid by Hitachi on the same Friday pay date that applied to every Massachusetts employee and brings the same legal theory the class brings. Rule 23(a)(3) provides that class certification is appropriate where the claims of the representative plaintiffs are typical of the claims of the class as a whole. Typicality is "not highly demanding because the claims only need to share the same essential characteristics and need not be identical." *Payne*, 216 F.R.D. at 26 (internal quotation marks and citation omitted). "For purposes of demonstrating typicality, [a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 69 (internal quotation marks and citation omitted). The named plaintiff need only demonstrate that his "injuries arise from the same events or course of conduct as do the injuries of the class" and that his "claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008); *accord Constantine*, 2026 WL 478181, at *3.

Mr. Turgut's claim arises from the same uniform employer practice that produced every class member's claim. Hitachi instructed ADP to pay him on the same Friday pay date as every Massachusetts class member, seven days after the close of the same Saturday-to-Friday pay period, throughout his employment within the class period. Aurin-Davies Depo. at 84:22-85:3; Turgut Pay Stubs; Morales Depo. at 35:1-37:15. His legal theory is identical to the class's: that Hitachi's seventh-day pay date violated the Wage Act's six-day requirement. M.G.L. c. 149, § 148; *Turgut*, 768 F. Supp. 3d at 211. His May 19, 2023, paystub and corresponding Schwab deposit record illustrate the same employer practice every class member experienced. Morales Depo. at 31:11-20, 38:24-39:4; Haller Depo. at 18:19-22:6; Turgut Pay Stubs at HRSTS002480; May 19 Bank Statement, attached as **Exhibit 21** at Turgut000037. There are no distinctions

between the named Plaintiff and the Late Pay Class, since all pay is handled for all class members by the Defendant's uniform policy and practice of instructing wage payment to its employees on Friday.

### 4. The Late Pay Class Meets the Requirement for Adequacy.

Mr. Turgut has no conflict with the class and is represented by experienced employment-class counsel. "The '[t]wo basic guidelines for meeting the adequacy of representation standard under Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation." *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). Only conflicts that are "fundamental to the suit and go to the heart of the litigation" defeat adequacy. *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 346 (1st Cir. 2022).

First, there is no potential conflict of legal interests between the named Plaintiff and the proposed class members since they are challenging a practice uniformly applied to all class members. The late-pay portion of the Wage Act is a strict-liability statute; the key question of this case is when Hitachi paid its employees. M.G.L. c. 149, § 148. There is no requirement for intent on the part of the employer. *Id.* The Late Pay Class's legal claim does not require anything more of Mr. Turgut personally than to have been paid late by Hitachi. M.G.L. c. 149, § 148.

Plaintiff's counsel, attorneys Ilir Kavaja and Eric LeBlanc focus their practices on plaintiffs' employment law, including Massachusetts Wage Act litigation and wage class actions. LeBlanc Decl. ¶¶ 3-4; Ilir Kavaja Declaration ("Kavaja Decl.") ¶¶ 4-7. They have devoted, and will continue to devote, significant resources to this action on behalf of the class. LeBlanc Decl. ¶ 6; Kavaja Decl. ¶ 8. The Court should appoint them as class counsel under Rule 23(g). Fed. R. Civ. P. 23(g)(1).

14

B.      <u>The Late Pay Class Meets the Requirement for a Class Action under Fed. R. Civ. P. 23(b)(3).</u>

1.      *Class Issues Predominate Over Individual Issues in this Matter.*

The dispositive question in this case, whether Hitachi's seventh-day Friday pay date violated the Wage Act, is common to every class member and turns on Hitachi's uniform employer conduct. Predominance is satisfied upon showing that a sufficient constellation of common issues binds class members together. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). The requirement is "merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39 citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3rd Cir. 1998). Rule 23(b)(3) does not require a plaintiff to prove that each element of [the] claim is susceptible to class-wide proof. *Constantine*, 2026 U.S. Dist. LEXIS 35004 at *10 *quoting Amgen*, 568 U.S. at 469 (citation modified). Nonetheless, courts "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (citing *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* quoting *Tyson*, 577 U.S. at 453.

Common questions regarding liability plainly predominate in this case for the same reasons that the proposed class satisfies Rule 23(a)'s commonality requirement. The factual question of when Hitachi paid class members is answered identically for every class member by Hitachi's own records: Hitachi designated a Friday pay date seven days after the close of each Saturday-to-Friday pay period, for each of 76 biweekly pay periods, for 43 Massachusetts employees, under a single ADP company-code configuration. <u>2021 Pay Summary</u>; <u>2022 Pay</u>

Summary; 2023 Pay Summary; 2024 Pay Summary; Aurin-Davies Depo. at 84:22-85:3; Morales Depo. at 35:1-37:15. There are no individualized affirmative defenses or factual issues that threaten to overwhelm resolution of the straightforward liability questions. Defendant does not, and under the law of the case cannot, allege that it was somehow exempt from the Massachusetts requirement to pay class members within six days of the end of the pay period. *See Turgut*, 768 F. Supp. 3d at 211.

Finally, individualized issues related to damages do not defeat predominance. Courts have repeatedly held that "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow*, 323 F.3d at 40. Though the salaries of class members differ, Hitachi possesses records of each individual's monthly pay. *See, e.g.*, 2021 Pay Summary. Assuming it is determined that Hitachi's uniform pay practices violated the Wage Act, Defendant's payroll records can show what each class member was paid and it is simply a ministerial function to review the comprehensive pay records to determine the extent of each class members' damages owed for each month. Though calculating the precise amount of damages will require some individualized inquiry, "this task also does not stand in the way of class certification." *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 291 (D. Mass. 2015).

### 2.    *Early Pay Does Not Defeat Either Commonality or Predominance.*

Hitachi has indicated an intent to dispute the predominance of collective issues in this case on the basis of the existence of Early Pay at some banks. However, this issue does not bear upon the certification of the proposed class. While some class members did receive Early Pay from their banks, **Hitachi did not pay any of its employees via Early Pay**.

16

Payment by direct deposit under the wage act requires tender of funds by the employer and *control over those funds* by the employee in the employee's bank account. *Clermont*, 102 F. Supp. 3d at 356-357 (D. Mass. 2015) (citing *Goldman v. Peterson*, 1997 Mass. App. Div. 189 (1997)). The evidence in this case is clear that Hitachi tendered its funds to its employees on Fridays, the seventh day after the end of the pay period, and that its employees controlled such funds on Fridays, the seventh day after the end of the pay period. Morales Depo. at 56:15-57:14; Haller Depo. at 35:12-38:9; Devine Depo. at 8:23-14:14 22:7-21.

A receiving bank's discretionary, provisional decision to front its own money before final settlement does not transform Hitachi's uniform payroll decision into 43 individualized payment practices. And predominance is not defeated by "affirmative defenses peculiar to some individual class members." *Tyson Foods*, 577 U.S. at 453; *Smilow*, 323 F.3d at 39. The First Circuit has repeatedly upheld certification even where some class members were arguably not injured by the challenged conduct, so long as "prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19-20 (1st Cir. 2015). Multiple such mechanisms exist if needed, including class-member affidavits, post-liability decertification, and special-master damages determinations. *Constantine*, 2026 WL 478181, at *4-5.

Hitachi's predominance argument requires conflating two separate transactions and ignoring Massachusetts binding precedent. The first transaction is an Early Pay Transaction, where a bank transfers its own funds to a Hitachi employee one to two days before the second transaction, the Hitachi Wage Transaction, occurs. In the Hitachi Wage Transaction, wages originating from Hitachi make their way to the employees' banks over the course of several days and eventually settle in the employees' bank accounts in accordance with the settlement instructions provided by Hitachi. Morales Depo. at 92:13–93:10; Devine Depo. at 8:23–10:6.

17

Until the date on which Hitachi's self-imposed fund settlement instructions allow, any money put into employees' accounts *is the bank's money being provisionally paid* pending settlement of the Hitachi funds. Devine Depo. at 15:5-20.

The Uniform Commercial Code establishes the nature of these transactions. The UCC governs check collection, a statutory framework designed to implement, among other things, a national, uniform system of check collection. G. L. c. 106, § 1-102(2); *see Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 370 (2009). Any credit extended by a collecting bank before the item has been paid is provisional. G. L. c. 106, § 4-201. The Supreme Judicial Court has addressed this framework directly: "A provisional credit is not an advance payment of the presented check; rather, it is similar to a loan." *Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 374 (2009) (citing *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 94 F.3d 996, 1004 (5th Cir. 1996) (provisional credit is effectively loan)); *see also In re Frigitemp Corp.*, 34 B.R. 1000, 1015 (S.D.N.Y. 1983) (beyond rights of loan, provisional credit "gives the bank the rights of a holder in due course of the negotiable instrument"). The UCC confirms this: "before the time that a settlement given by a collecting bank for an item is or becomes final . . . any settlement given for the item is provisional." G. L. c. 106, § 4-201. Just as Wells Fargo and Citizens Bank state in their policies, the UCC gives banks "the right to charge back any value that is not paid in settlement." G. L. c. 106, § 4-214; *Gossels*, 453 Mass. at 374.

Wages are defined as "money to which the employee has an absolute and vested right; it is his property . . . not subject to any limitation, contingency, or delay." *Boston Police Patrolmen's Ass'n v. City of Boston*, 1999 Mass. Super. LEXIS 434, at *16 (quoting *Campbell v. Boston*, 290 Mass. 427, 430 (1935)) (internal quotations omitted). Consistent with that definition, wages are not "paid" under the Act unless they are delivered finally and unconditionally, free and clear of any condition or right of recovery. *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484,

18

497 n.22 (2011) (emphasis added); *Fraelick v. PerkettPR, Inc.*, 83 Mass. App. Ct. 698, 707 (2013) (quoting *Awuah,* 460 Mass. at 497 n.22). A payment that is provisional, reversible, or contingent on later settlement satisfies neither requirement. The Early Pay Transaction fails that standard on every element. It is the bank's money, not Hitachi's money. It is advanced before the Hitachi Wage Transaction has settled on day seven and it is legally subject to chargeback under G. L. c. 106, § 4-214.

Because Early Pay does not involve payment under the Wage Act, Early Pay has no bearing on Hitachi's liability for paying its employees late under the Wage Act. *See* M.G.L. c. 149, § 148. Moreover, because the Wage Act does not require any showing of actual damages on the part of the late-paid employees, Early Pay also has no bearing on the amount of damages to which any member of the Late Pay Class is entitled. *Id.* at 150. [6] Finally, because "the obligation to pay…earned wages rests with [the employer], not third parties," any argument by Hitachi that the banks provisional payment is a substitute for their own payment fails spectacularly. *See Awuah*, 460 Mass. at 492. Accordingly, Early Pay programs do not defeat the common questions of fact and law shared by the Late Pay Class that make this case appropriate for resolution via class action.

3.   *A Class Is Superior to Other Methods For Fairly And Efficiently Adjudicating This Controversy.*

Class adjudication of 43 Massachusetts employees' claims arising from a single uniform employer practice is superior to 43 individual suits. The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or

---

[6] If the Court were to determine, *arguendo*, that Early Pay was a payment under the Wage Act, even then Early Pay would only affect the amount of damages due to the class members who received it, but not their membership in the class.

bringing about other undesirable results. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal citations omitted). Superiority is satisfied here.

First, the case challenges a uniform employer practice that affected every class member identically. From the standpoint of judicial economy, a single class adjudication is plainly superior to 43 individual proceedings turning on the same Hitachi pay date, the same statutory provision, and the same legal standard already set by this Court. Hitachi's payroll records permit a single, mechanical damages determination for the entire class. Manageability is not in doubt.

Second, the practical realities of pursuing wage litigation against a current or former employer favor class adjudication. Risk of reprisal by an employer is well recognized as weighing in favor of class certification in wage cases. *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 351 (N.D. Ill. 2001) (Fear of employer retaliation is "a very important concern" because the "nature of the economic dependency involved in the employment relationship is inherently inhibiting"); *Vargas v. Spirit Delivery & Distribution Servs., Inc.*, 245 F. Supp. 3d 268, 289 (D. Mass. 2017) (giving "some weight to [Plaintiff's] assertion that in the employment context, individual's decline to bring suit because of the fear of retaliation."); *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 406 (D. Mass. 2017) ("The plaintiffs are correct that efficiency and the policy considerations unique to the employment context make class adjudication superior."); *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 167 (D. Mass. 2019). Class members have the opportunity for relief while being represented by a class representative who is no longer employed by Hitachi and is himself in no danger of retaliation.

Third, class members who did not work for Hitachi for very long, or who did not work for Hitachi for long after the statute of limitations period, may have a relatively small individual recovery. So, they would have insufficient incentive or resources to bring an action on their own behalf. In such circumstances, a class is clearly superior to depriving numerous individuals of their day in court.

That the Wage Act provides for treble damages is not an obstacle to resolving claims under the Wage Act by class action. The Wage Act itself considers the possibility of class actions. *Gammella v. P.F. Chang's China Bistro*, 482 Mass. 1, 9 (2019) ("[B]oth [Mass. Gen. L. ch.] 149, § 150, and [Mass. Gen. L. ch.] 151, § 20, allow an aggrieved employee to bring suit against his or her employer 'on his own behalf, or for himself and for others similarly situated.'"). "To find that treble damages per se prohibit class certification would pit the Wage Act against itself." *Constantine*, 2026 WL 478181, at *6. A class action is the superior method for resolving the claims of 43 Hitachi employees subjected to one uniform pay practice.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Volkan Turgut respectfully requests that this Court grant his Motion for Class Certification, certify the Late Pay Class (specifically, all Massachusetts Hitachi employees who received W-2 wages from Hitachi from February 17, 2021 through March 7, 2024 who were not paid their wages within six days of the closing of the payroll period during which such wages were earned), appoint Mr. Turgut as class representative, and appoint Ilir Kavaja, Esq. and Eric LeBlanc, Esq. as class counsel under Rule 23(g).

Respectfully Submitted,
Plaintiffs, Volkan Turgut, individually, and
on behalf of Himself, and others similarly situated,

By his attorneys,

*/s/ Eric R. LeBlanc*
Eric R. LeBlanc BBO# 666786
William E. Petrone, BBO# 711524
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800
eleblanc@bennettandbelfort.com
wpetrone@bennettandbelfort.com


*/s/ Ilir Kavaja*
Ilir Kavaja, BBO No. 682574
Kavaja Law, P.C.
92 State Street, 8th Floor
Boston, MA 02109
(617) 515-5545
ilir@kavajalaw.com

22

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I, Eric R. LeBlanc, certify that prior to filing this motion I conferred with counsel for Defendant, on May 12th, 2026, at 11:00 A.M., in a good-faith attempt to narrow and resolve the issues addressed herein.

*/s/ Eric R. LeBlanc*
Eric R. LeBlanc

## CERTIFICATE OF SERVICE

I, Eric R. LeBlanc, hereby certify that on this 12th day of June 2026, the foregoing document was filed electronically through the ECF system, is available for viewing, and downloading from the ECF system and will be sent electronically to all counsel of record as registered participants identified on the Notice of Electronic Filing.

*/s/ Eric R. LeBlanc*
Eric R. LeBlanc

23