UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VOLKAN TURGUT, *on behalf of himself
and others similarly situated*,

        Plaintiff,

v.

HITACHI RAIL STS USA, INC.,

        Defendant.

Civil Action No.: 1:24-cv-10660-AK

ORAL ARGUMENT REQUESTED

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HITACHI RAIL STS USA, INC.'S MOTION FOR SUMMARY JUDGMENT**

1041164

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................3

    A.   Plaintiff Alleges He Was Paid on the "Pay Date" Listed on His Paystubs..............3

    B.   Charles Schwab Received and Posted Hitachi Rail Wages Before the "Pay Date" ...................................................................................................................4

        1.   Hitachi Rail's Payroll Process ....................................................................4

        2.   Charles Schwab Received and Posted Plaintiff's Hitachi Rail Wages Before the "Pay Date." ...............................................................5

    C.   Plaintiff Had No Issues Paying His Living Expenses Based on the Timing of His Hitachi Rail Wages. ..................................................................................8

III. LEGAL STANDARDS ........................................................................................9

    A.   Summary Judgment .........................................................................................9

    B.   Wage Act ........................................................................................................9

IV.  ARGUMENT........................................................................................................10

    A.   Plaintiff's Wage Act Claim Fails As a Matter of Law..........................................10

        1.   Plaintiff's Wage Act claim fails because the undisputed evidence shows he had some control over his wages within six days following the close of a pay period..............................................................10

        2.   Plaintiff's Wage Act claim also fails under his erroneous theory that payment only occurs when wages are posted to his account. .............12

        3.   Plaintiff's bank statements do not show when Hitachi Rail funds were received and posted to his account....................................................13

    B.   Any Damages Awarded Would Violate Hitachi Rail's Substantive Due Process Rights....................................................................................................14

V.   CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................9

*Clermont v. Monster Worldwide, Inc.*,
  102 F. Supp. 3d 353 (D. Mass. 2015) ............................................................9, 10, 12

*DePoutot v. Raffaelly*,
  424 F.3d 112 (1st Cir. 2005)...................................................................................9

*First Nat'l Ins. Co. v. Com.*,
  391 Mass. 321 (1984) .............................................................................................12

*Fontaine v. Philip Morris USA Inc.*,
  497 Mass. 436 (2026) .............................................................................................13

*George v. Nat'l Water Main Cleaning Co.*,
  477 Mass. 371 (2017) .............................................................................................14

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)...............................................................................................13

*Reuter v. City of Methuen*,
  489 Mass. 465 (2022) .............................................................................................14

*Sony BMG Music Ent. v. Tenenbaum*,
  719 F.3d 67 (1st Cir. 2013)....................................................................................14

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
  251 U.S. 63 (1919)..................................................................................................15

*Tranfaglia v. City*,
  2025 WL 1147513 (Mass. Sup. Ct. Mar. 10, 2025)......................................9, 11, 12

**Statutes**

Mass. Gen. Laws ch. 149, § 148 .......................................................................................9

Defendant, Hitachi Rail STS USA, Inc., ("Hitachi Rail") respectfully submits this memorandum in support of its motion for summary judgment under Fed. R. Civ. P. 56 and L.R. 56.1.

## I.
## <u>INTRODUCTION</u>

Plaintiff's claim under the Massachusetts Wage Act ("Wage Act") fails as a matter of law because Hitachi Rail paid him within six days of the termination of any pay period during which he earned wages.  Hitachi Rail initially moved to dismiss Plaintiff's Complaint arguing because Plaintiff was a salaried employee, Hitachi Rail was required to pay him within seven days of the termination of a pay period.  (Doc. No. 7).  The Court denied Hitachi Rail's motion, determining the seven-day period only applies to hourly workers who worked seven days a week, and that under the allegations in Plaintiff's Complaint, payment was required within six days.  (Doc. No. 17 at 14).  While Hitachi Rail respectfully disagrees with the Court's ruling, Plaintiff's claim nonetheless fails as a matter of law because the record establishes Hitachi Rail paid Plaintiff within six days under the Wage Act.

Specifically, Plaintiff contends his monthly bank statements show Hitachi Rail paid his wages on the same date as the "Pay Date" listed on his paystubs, which was seven days after the close of a pay period.  But discovery from Plaintiff's bank, Charles Schwab ("Schwab"), shows Hitachi Rail wages were received by Schwab and posted to Plaintiff's bank account *before* the "Pay Date."  There is no question, therefore, that control over Hitachi Rail wages transferred to Plaintiff by the sixth day and payment was timely under the Wage Act.  The fact that Schwab posted Plaintiff's wages into his account before the "Pay Date" satisfies even Plaintiff's erroneous theory that payment occurs only when wages are posted.  *See infra* Section VI.A.2.

Notably, Schwab also confirmed the monthly bank statements on which Plaintiff relies do not show when the bank received and posted Plaintiff's wages; internal Schwab documents provide this information.[1]  With Plaintiff having no credible evidence showing transfer of control over wages on the "Pay Date" and hard data from Schwab showing receipt and posting of wages before the "Pay Date," there is no genuine issue of material fact on liability.  Hitachi Rail timely paid Plaintiff and is entitled to judgment as a matter of law.

Furthermore, Plaintiff admits he had no issue paying his living expenses and presented no evidence of actual injury.  Therefore, even if Plaintiff could prove that Hitachi Rail violated the Wage Act, awarding statutory damages would violate Hitachi Rail's substantive due process rights as a matter of law.  The purpose of the Wage Act's statutory treble damages is to compensate workers for their inability to timely pay living expenses, such as housing, transportation, food, clothing, tuition, medical expenses, utilities, or credit card bills.  Here, Plaintiff has stipulated he did not fail to timely pay these or any other expenses based on the timing of his wages from Hitachi Rail.  Awarding Plaintiff statutory treble damages would therefore violate Hitachi Rail's substantive due process rights, because such an award would amount to an unjustifiable windfall that serves no purpose under the Wage Act.

---

[1]    Plaintiff argued such internal documents were irrelevant in his failed protective order motion concerning the subpoena Hitachi Rail issued to Schwab.  (Doc. No. 58 at 7–8) (arguing documents showing how Schwab processes deposits, availability policies, and posting procedures were irrelevant).

## II.
## BACKGROUND

**A.    Plaintiff Alleges He Was Paid on the "Pay Date" Listed on His Paystubs.**

In his Complaint, Plaintiff alleged Hitachi Rail violated the Wage Act because it did not pay him within six days after the close of a pay period. (Doc. No. 1-1, ¶ 21). Specifically, Plaintiff contends from February 2023 through February 2024, each Hitachi Rail pay period closed on a Friday, but he was paid seven days later, on the following Friday. SUF ¶ 1, Ex. 1 (Pl. Resp. to Int. 1). The only evidence Plaintiff relies on to support his contention he was paid late are: (i) paystubs identifying a "Pay Date" and (ii) bank statements that indicate a date in which wages were "posted." *See id.* ¶ 2, Ex. 1 (Pl. Resp. to Int. 4). Plaintiff's paystubs include an "Earnings Statement" that shows a breakdown of Plaintiff's earned wages and deductions for a given pay period. *See* Ex. 2 (Turgut 000008). The top right corner of Plaintiff's paystubs include three dates: the beginning date of a pay period; the ending date of a pay period; and a "Pay Date":

## Earnings   Statement

| | |
|---|---|
| Period  Beginning: | 04/29/2023 |
| Period  Ending: | 05/12/2023 |
| Pay  Date: | 05/19/2023 |

SUF ¶ 3, Ex. 2 (Turgut 000008). This particular paystub is for the pay period beginning on April 29, 2023 and ending on Friday, May 12, 2023. Ex. 2 (Turgut 000008). The "Pay Date" was the following Friday, May 19, 2023. *Id.* Plaintiff claims he was paid on the "Pay Date" because that date corresponds to the posted date on his Schwab monthly bank statement. SUF ¶ 4, Ex. 2 (Turgut 000008), Ex. 3 (Turgut 000037). For example, for the May 19, 2023 "Pay Date" shown above, Plaintiff produced a bank statement with the following excerpt:

1041164                                      3

```
05/19   Electronic Deposit
        HITACHI RAIL S.T DIRECT DEP 230519~ Tran: ACHDD
```

*See* Ex. 3 (Turgut 000037).  As discussed below, *infra* Section I.B.3, while Plaintiff bases his claim on paystubs and bank statements, he does not base it on Schwab's internal records, which track the date and time the bank received and posted Hitachi Rail wages to Plaintiff's account. SUF ¶ 22, Ex. 4 (Haller Dep. Tr. 30:6–31:25, 32:6–13).  According to Schwab, the bank statements Plaintiff relies on do not provide this information.  *Id*. ¶ 23, Ex. 4 (Haller Dep. Tr. 32:16–20).

**B.**     **Charles Schwab Received and Posted Hitachi Rail Wages Before the "Pay Date"**

      **1.**     **Hitachi Rail's Payroll Process**

Hitachi Rail has the same payroll process for all 1,200 employees in the United States, and pays virtually all of them, including Plaintiff during his employment, via direct deposit. SUF ¶ 5, Ex. 5 (Morales Dep. Tr. 35:24–36:19), Ex. 6 (Aurin-Davies Dep. Tr. 58:8–12).  To assist with processing payroll, Hitachi Rail uses the services of Automatic Data Processing ("ADP").  *Id*. ¶ 6, Ex. 5 (Morales Dep. Tr. 13:1–13), Ex. 6 (Aurin-Davies Dep. Tr. 60:20–22). From February 2023 through February 2024, when Plaintiff alleges he was paid late, each pay period closed on a Friday.[2]  SUF ¶ 7, Ex. 7 (Aurin-Davies Decl. ¶ 5), Ex. 6 (Aurin-Davies Dep. 113:5–8).  The next business day, a Monday, Hitachi Rail's HR staff started processing payroll by reviewing employees' payroll-related data for accuracy and made any necessary adjustments. *Id*. ¶ 8, Ex. 6 (Aurin-Davies Dep. Tr. 52:19–53:5).

---

[2]     Starting in March 2024, Hitachi Rail moved the "Pay Date" to Thursdays.  Ex. 6, Aurin-Davies Dep. Tr. 42:22–43:9, 114:8–12.  Plaintiff does not allege a violation of the Wage Act starting in March 2024 through the end of his employment in April 2024.  SUF ¶ 1, Ex. 1 (Pl. Resp. to Int. 1); Ex. 10 Turgut Dep. Tr. 83:9–11.

The following day, a Tuesday, Hitachi Rail submitted this payroll information to ADP for further processing. *Id.* ¶ 9, Ex. 6 (Aurin-Davies Dep. Tr. 53:19–24), Ex. 7 (Aurin-Davies Decl. ¶ 6). After receiving the payroll information from Hitachi Rail, ADP initiated and confirmed receipt of a reverse wire, and then sent out what it called "tapes" to employee bank accounts. *Id.* ¶ 10, Ex. 5 (Morales Dep. Tr. 86:10–18). The reverse wire was a transfer of payroll funds from Hitachi Rail to ADP. SUF ¶ 11, Ex. 5 (Morales Dep. Tr. 27:23–28:24). The day after the wire was confirmed, ADP sent money to employees' banks, through the "tapes," which included information like employees' bank account numbers and the amount of employees' wages. *Id.* ¶ 12, Ex. 5 (Morales Dep. Tr. 28:7–13, 84:22–85:15). The process of initiating and confirming the reverse wire and sending out the "tapes" could take up to 48 hours from the day Hitachi Rail submitted payroll to ADP (*i.e.*, Tuesday). *Id.* ¶ 13, Ex. 5 (Morales Dep. Tr. 80:19–83:9).

According to ADP, once the "tapes" were sent out, it was up to the employees' banks to determine when they made wages available to employees, and ADP was aware banks could make funds available before the "Pay Date." *Id.* ¶ 14, Ex. 5 (Morales Dep. Tr. 23:20–24:4, 77:10–24, 90:5–14). Hitachi Rail never instructed ADP to preclude banks from making wages available to employees before the "Pay Date." *Id.* ¶ 15, Ex. 5 (Morales Dep. Tr. 78:12–15).

2.    **Charles Schwab Received and Posted Plaintiff's Hitachi Rail Wages Before the "Pay Date."**

Schwab testified it would look to its internal records to determine when Plaintiff's Hitachi Rail direct deposits were received and posted to his account. *Id.* ¶ 21, Ex. 4 (Haller Dep. Tr. 32:6–13, 24:11–18). These records are called "transaction details" and show the date and time when the bank received funds from Hitachi Rail and when Schwab posted the funds to Plaintiff's account. *Id.* ¶ 22, Ex. 4 (Haller Dep. Tr. 26:11–27:3, 27:25–29:11, 30:6–31:16, 32:6–13).

In this case, Schwab only produced internal records concerning Hitachi Rail direct deposits to Plaintiff from March 2024 and April 2024, which was the last month Plaintiff was employed at Hitachi Rail.  Ex. 10, Turgut Dep. Tr. 83:9–11.  According to Schwab's outside counsel, these internal transaction details are only kept for two years.  Ex. 11, HRSTS002801–02, C. Hatfield Ltr. to S. Kundu (stating records showing when Schwab received and posted direct deposits "are only available for two years, so there are no transaction detail documents for transactions prior to March 2024").[3]

The internal transaction details Schwab produced, combined with its corporate testimony, show that Schwab received and posted Plaintiff's Hitachi Rail wages before the "Pay Date" listed on his paystubs.  For example, for the pay period that ended on Friday, March 15, 2024, the "Pay Date" listed on the paystub was the following Thursday[4], March 21, 2024.  SUF ¶¶ 24, Ex. 8 (ADP_00000507).  Hitachi Rail submitted payroll information to ADP two days before, on Tuesday, March 19, 2024.  *Id*. ¶ 25, Ex. 8 (ADP_00000507) (identifying "Current Date" as "03/19/2024"), Ex. 5 (Morales Dep. Tr. 83:4–9) (testifying "Current Date" is when Hitachi Rail submits payroll to ADP); *see also* SUF ¶¶ 16-17.

According to a Schwab internal transaction detail, on the following day, Wednesday, March 20, 2024, at 2:42 a.m. Eastern time, Schwab received Plaintiff's Hitachi Rail wages.  SUF ¶ 26, Ex. 4 (Haller Dep. Tr. 26:11–27:20), Ex. 12 (SCHW_000001).  Another transaction detail showed that on March 20, 2024, at 21:58 (*i.e.*, 9:58 p.m.) Eastern time, Schwab posted the wages

---

[3]  Although Hitachi Rail subpoenaed Schwab in late December 2025, and requested responsive documents be produced on January 19, 2026 (*see* Doc. No. 58 at 3), meaning that internal documents pre-March 2024 might have been produced, Plaintiff moved for a protective order on the subpoena arguing these documents were irrelevant.  *See* (Doc. No. 58 at 7–8).  Plaintiff's failed motion delayed Schwab's production.

[4]  *See supra* note 2.

to Plaintiff's account. *Id.* ¶ 27, Ex. 4 (Haller Dep. Tr. 27:25–29:11), Ex. 13 (SCHW_000002). Although this transaction detail showed "03/21/2024" as the posting date, Schwab's corporate witness—a senior manager of the Banking Operations department who has worked at Schwab for 17 years—testified that because the 9:58 p.m. posting time was so late in the day, it was clear the posting to Plaintiff's account happened on March 20, not March 21. *Id.* ¶ 28, Ex. 4 (Haller Dep. Tr. 7:25-8:5, 34:15–24). This is because Schwab's system "batches" around 8:00 p.m. Eastern time, after which it rolls the system date to the next day. *Id.* ¶ 29, Ex. 4 (Haller Dep. Tr. 28:6–29:15). Thus, at 9:58 p.m. on March 20, when the posting to Plaintiff's account occurred, the system date had already rolled over to March 21. *Id.* ¶ 30, Ex. 4 (Haller Dep. Tr. 28:6–29:15). Nevertheless, the posting did in fact occur on Wednesday, March 20—one day before the March 21 "Pay Date." *Id.* Schwab testified it is a common occurrence for deposits to be posted to an account late in the evening when the system date had already rolled over to the next day. *Id.* ¶ 31, Ex. 4 (Haller Dep. Tr. 31:11–25).

Thus, despite Plaintiff's bank statement showing "03/21" as the posted date (Ex. N, Turgut 000092), testimony and internal documents from Plaintiff's bank prove that wages paid by Hitachi Rail were actually available for withdrawal on March 20—a day before the "Pay Date." SUF ¶ 32, Ex. 4 (Haller Dep. Tr. 27:25–29:11), Ex. 13 (SCHW_000002), Ex. N (Turgut 000092). Schwab also testified the bank statements do not show the date and time when it received and posted Hitachi Rail funds; only the internal transaction details contain this information. *Id.* ¶¶ 22, 23, Ex. 4 (Haller Dep. Tr. 30:6–31:16, 32:16–20).

The internal transaction details Schwab produced for a Hitachi Rail direct deposit in April 2024 also showed posting of Plaintiff's wages before the "Pay Date." That pay period closed on Friday, March 29, 2024 and the "Pay Date" was Thursday, April 4, 2024. *Id* ¶ 33, Ex.

9 (ADP_00000516).  Hitachi Rail submitted payroll on April 2, 2024.  *Id.*; *see also* SUF ¶¶ 16, 18.  Schwab received the funds for this transaction on Wednesday, April 3, 2024 at 2:44 a.m. Eastern time.  *Id.* ¶ 34, Ex. 4 (Haller Dep. Tr. 29:19–30:15), Ex. 15 (SCHW_000003).  And Schwab posted the funds to Plaintiff's account late on April 3 at 21:52 (*i.e.*, 9:52 p.m.) Eastern time.  *Id.* ¶ 35, Ex. 4 (Haller Dep. Tr. 30:16–31:16), Ex. 16 (SCHW_000004).  Though the funds were posted to Plaintiff's account on April 3, his bank statement showed the rolled-over system date of April 4.  *Id.* ¶ 36, Ex. 17 (Turgut 000098).  None of the internal transaction details Schwab produced show the bank received Hitachi Rail wages or posted them to Plaintiff's account on or after a "Pay Date."  SUF ¶ 37, Exs. 12, 13, 15, 16 (SCHW_000001–4).

**C.**     **<u>Plaintiff Had No Issues Paying His Living Expenses Based on the Timing of His Hitachi Rail Wages.</u>**

In his responses to Hitachi Rail's requests for admissions, Plaintiff admitted that he did not fail to timely pay for his housing, transportation, food, clothing, tuition, medical expenses, utility bills, or credit card bills because of the timing of any wages paid to him by Hitachi Rail. SUF ¶¶ 40–47, Ex. 19 (Pl. Resp. RFA Nos. 3–10).  Plaintiff also stipulated:

> Plaintiff did not fail to timely pay for housing (including rent or mortgage), transportation, food, clothing, tuition, medical expenses, utilities, credit card bills, or any other expenses as a result of the timing of wages paid to him by Hitachi Rail.

*Id.* ¶ 48, Ex. 20 (Apr. 6, 2026 Joint Statement of Stipulated Facts at ¶ 1).  Consistent with his admissions and stipulation, Plaintiff testified he did not know whether Hitachi Rail even owed him any additional money.  SUF ¶ 49, Ex. 10 (Turgut Dep. Tr. 60:11–25; *see also id*. at 19:9–14; 24:23–25:10).

1041164                                               8

## III.
## LEGAL STANDARDS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  "A party seeking to establish a genuine issue of material fact must offer more than

'effusive rhetoric and optimistic surmise.'  Rather, the party must demonstrate, through

submissions of evidentiary quality, that a trialworthy issue persists.  Factual specificity is

required; a conglomeration of 'conclusory allegations, improbable inferences, and unsupported

speculation' is insufficient to discharge the nonmovant's burden."  *DePoutot v. Raffaelly*, 424

F.3d 112, 117 (1st Cir. 2005) (citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249–50 (1986) (evidence should be "significantly probative," not "merely colorable").

### B.    Wage Act

In its Order on Defendant's Motion to Dismiss, the Court determined that for salaried

employees, like Plaintiff when he was employed at Hitachi Rail, payment must be made within

six days after the termination of a pay period during which wages are earned.  (Doc. No. 17 at

14) (finding that payment within seven days after the termination of the pay period "applies only

to hourly workers who work all seven days."); *see* Mass. Gen. Laws ch. 149, § 148.  "[P]ayment

is complete under the Wage Act when the 'recipient of the funds has some control over the

funds.'"  (Doc. No. 65 at 4) (quoting *Clermont v. Monster Worldwide, Inc.*, 102 F. Supp. 3d 353,

356 (D. Mass. 2015)).  Massachusetts courts consider the timing of the electronic transfer

process relevant in determining when an employee received some control of his or her wages.

*See, e.g.*, *Tranfaglia v. City*, 2025 WL 1147513, *3 (Mass. Sup. Ct. Mar. 10, 2025) (granting

employer summary judgment on Wage Act claim because the employer transmitted funds that

were received by the plaintiff's bank the day before the plaintiff's termination); *Clermont*, 102 F. Supp. 3d at 357 n.1 (noting, in finding employer had violated the Wage Act, that the employer "ha[d] not contended that discovery would reveal information regarding the electronic transfer that would render it equivalent to a check, i.e., that upon initiation of the transfer, that somehow Plaintiff obtained some control over the funds prior to receipt of the funds the next day").

## IV.
## ARGUMENT

**A.     Plaintiff's Wage Act Claim Fails As a Matter of Law.**

    **1.     Plaintiff's Wage Act claim fails because the undisputed evidence shows he had some control over his wages within six days following the close of a pay period.**

Hitachi Rail is entitled to judgment as of a matter of law on Plaintiff's Wage Act claim because Plaintiff was paid within six days following the close of a pay period.  Plaintiff's theory of liability is grounded on a belief that he was paid on the "Pay Date" listed on his paystubs and in his monthly bank statements, which was seven days after the close of a pay period.  *See* SUF ¶¶ 1–2, Ex. 1 (Pl. Resp. to Int. 1, 4).  But the only transaction-level records Schwab had from Plaintiff's tenure at Hitachi Rail demonstrate Schwab received funds from Hitachi Rail the day *before* the date listed on Plaintiff's paystub.

For example, for the pay period ending on Friday, March 15, 2024, Schwab received funds from Hitachi Rail on Wednesday, March 20, 2024 which was before the March 21, 2024 "Pay Date."  *See* SUF ¶¶ 24–26, 28, Ex. 12 (SCHW_000001), Ex. 4 (Haller Dep. 26:11–27:20, 34:4–24), Ex. 8 (ADP_00000507), Ex. 5 (Morales Dep. Tr. 83:4–9).  Likewise, for the pay period ending on Friday, March 29, 2024, Schwab received funds from Hitachi Rail on Wednesday April 3, 2024, which was before the April 4, 2024 "Pay Date."  *Id.* ¶¶33–34, Ex. 15 (SCHW_000003), Ex. 4 (Haller Dep. 29:19-30:15), Ex. 9 (ADP_00000516).  Even though

Plaintiff does not allege a violation during March and April 2024,[5] the evidence from Schwab

nonetheless illustrates Plaintiff's core theory—that he was not paid until the "Pay Date"—is

wrong.  Indeed, the internal transaction detail documents demonstrate Schwab received

Plaintiff's Hitachi Rail wages **before** the "Pay Date," and it is these documents, not the monthly

bank statements or paystubs Plaintiff relies on, that show when the bank received Hitachi Rail

funds.  *Id.* ¶ 22–23 (Haller Dep. Tr. 26:11–27:3, 27:25–29:11, 30:6–31:16, 32:6–13, 32:16–20).

Moreover, evidence from Hitachi Rail and ADP further establish that a transfer of control

over funds passed from Hitachi Rail to Plaintiff before the "Pay Date."  For Plaintiff's March

and April 2024 direct deposits, when the "Pay Date" was a Thursday, Hitachi Rail submitted

payroll to ADP on a Tuesday—the same day of the week it submitted payroll during the

February 2023 through February 2024 timeframe when Plaintiff alleges a violation and the "Pay

Date" was a Friday.  SUF ¶¶ 9, 25, 33, Ex. 8 (ADP_00000507), Ex. 9 (ADP_00000516), Ex. 7

(Aurin-Davies Decl. ¶ 6).  With a Tuesday submission, Schwab received Hitachi Rail's funds the

following day, Wednesday.  SUF ¶¶ 26, 34, Ex. 12 (SCHW_000001), Ex. 15 (SCHW_000003),

Ex. 4 (Haller Dep. 26:11–27:10, 29:19–30:15).  Thus, whether the "Pay Date" was a Thursday or

Friday, the record establishes Schwab received Hitachi Rail funds before the "Pay Date."

Because Hitachi Rail transmitted the funds to Plaintiff's bank before the "Pay Date," and

thus no later than the sixth day following a pay period, there is no Wage Act violation as a matter

of law.  *Tranfaglia* is instructive.  There, the employer transmitted funds that were received by

the plaintiff's bank the day before the plaintiff's termination.  *Tranfaglia*, 2025 WL 1147513, *1.

Though the plaintiff did not have access to the funds until the day after his termination, the court

still granted summary judgment for the employer, finding the defendant had "fulfilled its

---

[5]    *See supra* note 2.

obligations" under the Wage Act "by transmitting the funds to Tranfaglia's Santander account prior to termination." *Id.* at *3. So too here. Hitachi Rail fulfilled its obligations under the Wage Act by transferring funds to Schwab before the "Pay Date."

### 2. Plaintiff's Wage Act claim also fails under his erroneous theory that payment only occurs when wages are posted to his account.

Even if the Court were to find Schwab's receipt of Hitachi Rail funds insufficient to show some transfer of control from Hitachi Rail to Plaintiff (it should not), Hitachi Rail is still entitled to summary judgment under Plaintiff's theory that he is not paid under the Wage Act until his wages are posted to his account. *See* Ex. 10 Turgut Dep. Tr. 51:1–19; 57:18–60:2; Ex. 3, Turgut 000037. According to Plaintiff, only when Hitachi Rail funds are posted, can he withdraw or otherwise use this money; therefore, the time of posting is when some control over Hitachi Rail wages has passed to him. *Id*. As explained below, this theory is contrary to precedent; but, regardless, undisputed material facts in the record demonstrate Schwab posted Plaintiff's wages to his account before the "Pay Date."

In determining when payment occurs under the Wage Act for electronic transfers such as direct deposits, courts have looked to the Massachusetts Supreme Judicial Court's ("SJC") ruling on when payment occurs by check. *Clermont*, 102 F. Supp. 3d at 356. The SJC ruled that with a check, payment is made "when the check is 'drawn on an account with sufficient funds to cover' [it]…and is *delivered* to the payee." *Id*. (emphasis in original) (quoting *First Nat'l Ins. Co. v. Com.*, 391 Mass. 321, 326–27 (1984)). When a check is delivered, its funds cannot be withdrawn until the check is subsequently deposited and cleared by a financial institution. Thus, the SJC's ruling that payment by check is complete when it is delivered, necessarily means the ability to withdraw funds is not a requirement for payment under the Wage Act. Plaintiff's argument that payment under the Wage Act does not occur until his wages post (at which point

he can withdraw or move them), is therefore contrary to the SJC's ruling regarding control of funds under the Wage Act, and this Court should reject it.

Nevertheless, undisputed material facts in the record demonstrate Schwab posted Plaintiff's Hitachi Rail wages before the "Pay Date." Testimony and internal transaction details from Schwab establish the bank posted Hitachi Rail wages to Plaintiff's account one day before the date listed on Plaintiff's bank statements, which was also one day before the "Pay Date" listed on Plaintiff's paystubs. SUF ¶ 27, Ex. 4 (Haller Dep. Tr. 27:25–29:11), Ex. 13 (SCHW_000002); *Id.* ¶ 35, Ex. 4 (Haller Dep. Tr. 30:16–31:16), Ex. 15 (SCHW_000004). Plaintiff therefore cannot establish a Wage Act violation even under his erroneous theory that payment does not occur until funds post to his account.

### 3.    Plaintiff's bank statements do not show when Hitachi Rail funds were received and posted to his account.

Plaintiff has no credible evidence he was paid on the "Pay Date" because his bank statements from Schwab do not show the date and time when Schwab received or posted Hitachi Rail wages to his account. In this civil case, Plaintiff must prove a Wage Act violation by a preponderance of the evidence. *Fontaine v. Philip Morris USA Inc.*, 497 Mass. 436, 457 (2026) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983)). Plaintiff cannot meet this burden because according to Schwab, the bank statements on which Plaintiff relies do not show the date and time when it received and posted Hitachi Rail funds—the internal transaction details provide this information. SUF ¶¶ 22–23, Ex. 4 (Haller Dep. Tr. 26:11–27:3, 27:25–29:11, 30:6–31:16, 32:6–13, 32:16–20). Critically, none of the transaction details show Schwab received funds from Hitachi Rail or posted them to Plaintiff's account ***on*** the "Pay Date." Rather, all of the transaction details Schwab produced showed these activities occurred ***before*** the "Pay Date." SUF ¶ 37, Exs. 12, 13, 16, 17 (SCHW_000001–04); Ex. 4 (Haller Dep. Tr. 26:11–27:10, 27:25–

29:11, 30:6–31:16, 34:4–24).  Without any credible evidence to support his claim, Plaintiff

cannot meet his burden of showing a Wage Act violation by a preponderance of the evidence.

Therefore, Hitachi Rail is entitled to summary judgment in its favor as a matter of law as to

Plaintiff's Wage Act claim.

**B.      Any Damages Awarded Would Violate Hitachi Rail's Substantive Due Process**
**Rights.**

Even if Plaintiff could prove Hitachi Rail violated the Wage Act, Plaintiff has failed to

demonstrate any injury or harm due to Hitachi Rail's conduct.  Any award of statutory damages

would therefore violate Hitachi Rail's substantive due process rights.  Absent harm, statutory

damages in this case would serve no remedial purpose under the Wage Act.  Here, Plaintiff seeks

"statutory liquidated treble damages."  Ex. 1 (Pl. Resp. Int. 8).  To determine whether awarding

statutory damages would violate Hitachi Rail's substantive due process rights, the Court must

examine the purpose of these damages under the Wage Act.  *Sony BMG Music Ent. v.*

*Tenenbaum*, 719 F.3d 67, 71 (1st Cir. 2013).

The Wage Act's statutory damages recognize that a late-paid worker can face

consequences "so detrimental to maintenance of the minimum standard of living necessary for

health, efficiency and general well-being of workers…that [treble] payment must be made in the

event of delay in order to insure restoration of the worker to that minimum standard of well-

being."  *Reuter v. City of Methuen*, 489 Mass. 465, 470 (2022) (quoting *George v. Nat'l Water*

*Main Cleaning Co.*, 477 Mass. 371, 376 (2017)).  These liquidated damages, which are difficult

to quantify with precision, include "housing, transportation, food and clothing, tuition, and

medical expenses."  *George*, 477 Mass. at 380.

Here, Plaintiff admitted he did not fail to timely pay for his housing, transportation, food,

clothing, tuition, medical expenses, utility bills, or credit card bills because of the timing of any

wages paid to him by Hitachi Rail.  SUF ¶¶ 40–47, Ex. 19 (Pl. Resp. RFA Nos. 3–10).  Plaintiff doubled-down on these facts by stipulating:

> Plaintiff did not fail to timely pay for housing (including rent or mortgage), transportation, food, clothing, tuition, medical expenses, utilities, credit card bills, or any other expenses as a result of the timing of wages paid to him by Hitachi Rail.

*Id*. ¶ 48 (Apr. 6, 2026 Joint Statement of Stipulated Facts at ¶ 1).  Given that Plaintiff has no credible evidence to prove Hitachi Rail failed to provide wages to Plaintiff within six days of the closing of the relevant pay periods, this is an unsurprising admission.  Even so, it is undisputed that Plaintiff suffered none of the harms for which statutory liquidated damages were intended to compensate.  Here, there is no difficulty quantifying damages with precision: there are none.  As such, trebling Plaintiff's wages as statutory damages would violate Hitachi Rail's substantive due process rights because the award would not serve the intended purpose of the Wage Act and therefore would be "so severe and oppressive as to be wholly disproportioned to the offense, and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919).

## V.
## CONCLUSION

For the reasons set forth above, Hitachi Rail respectfully requests the Court grant its summary judgment motion of no liability and no damages as to Plaintiff's Wage Act claim.

Dated:  June 15, 2026

Respectfully submitted,


/s/ Sudip Kundu

Sudip Kundu *(admitted pro hac vice)*
Grace E. Schmidt *(admitted pro hac vice)*
**DTO LAW**
307 5th Avenue, 12th Floor
New York, New York 10016
Telephone: (646) 995-5400
Facsimile:  (213) 335-7802
Email: skundu@dtolaw.com
Email: gschmidt@dtolaw.com

Christopher A. Callanan (BBO# 630649)
**CALLANAN LAW LLP**
6 Liberty Square #2812
Boston, MA 02109
(617) 330-7575
E-mail: ccallanan@callanan-law.com

Attorneys for Defendant
HITACHI RAIL STS USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 15, 2026.


/s/ Sudip Kundu

Sudip Kundu

1041164                                        16