UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VOLKAN TURGUT, *on behalf of himself and others similarly situated*,

    Plaintiff,

v.

HITACHI RAIL STS USA, INC.,

    Defendant.

Civil Action No.: 1:24-cv-10660-AK

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HITACHI RAIL STS USA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND.....................................................................................................2

    A.    Plaintiff Alleges He and the Putative Class Were Paid on the "Pay Date" Listed on Employee Paystubs ..............................................................................2

    B.    Hitachi Rail's Payroll Process ...................................................................3

    C.    Charles Schwab Received and Posted Plaintiff's Hitachi Rail Wages Before the "Pay Date."........................................................................................4

    D.    Determining When a Putative Class Member's Bank Received and Posted Hitachi Rail Wages Depends on the Bank, Not Hitachi Rail ...................................6

III.    LEGAL STANDARDS .........................................................................................7

    A.    Class Certification........................................................................................7

    B.    The Wage Act ..............................................................................................8

IV.    ARGUMENT .........................................................................................................9

    A.    Plaintiff Does Not Satisfy the Requirements of Rule 23(a)....................................9

        1.    Plaintiff does not identify common answers apt to drive resolution of this litigation ..................................................................................9

        2.    Plaintiff cannot adequately represent the class .........................................11

        3.    Plaintiff's Wage Act claim is atypical ......................................................14

        4.    Plaintiff has not shown joinder is impracticable and therefore has not satisfied Rule 23(a)'s numerosity requirement ...................................14

    B.    Plaintiff Does Not Satisfy the Requirements of Rule 23(b)(3)..............................15

        1.    Individualized issues predominate..........................................................15

            (a)    When each putative class member was paid under the Wage Act is an individual question ...............................................15

            (b)    Plaintiff's arguments on early pay policies again ignore the record ...............................................................................................17

            (c)    Plaintiff relies on inapposite case law............................................18

        2.    A class action is not superior ...................................................................19

V.    CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................................7, 8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................15, 19

*Anderson v. Weinert Enters., Inc.*,
986 F.3d 773 (7th Cir. 2021) ..................................................................................14, 15

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985)....................................................................................14, 15

*Awuah v. Coverall N. Am., Inc.*,
460 Mass. 484 (2011) ....................................................................................................18

*Boston Police Patrolmen's Ass'n, Inc. v. City of Boston*,
1999 WL 1260164 (Mass. Super. Ct. 1999) .................................................................18

*Clermont v. Monster Worldwide, Inc.*,
102 F. Supp. 3d 353 (D. Mass. 2015) .......................................................................8, 10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...........................................................................................................7

*First Nat'l Ins. Co. v. Com.*,
391 Mass. 321 (1984) ....................................................................................................10

*Foley v. Buckley's Great Steaks, Inc.*,
2015 WL 1578881 (D.N.H. Apr. 9, 2015).....................................................................13

*Fraelick v. PerkettPR, Inc.*,
989 N.E.2d 517 (Mass. App. Ct. 2013) .........................................................................18

*In re Frigitemp Corp.*,
34 B.R. 1000 (S.D.N.Y. 1983).......................................................................................18

*Gintis v. Bouchard Transp. Co., Inc.*,
596 F.3d 64 (1st Cir. 2010).............................................................................................19

*Gossels v. Fleet Nat'l Bank*,
453 Mass. 366 (2009) ....................................................................................................18

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ...................................................................................12

*In re LIBOR-Based Fin. Instrs. Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)........................................................................19

*Louglin v. Vi-Jon, LLC*,
728 F. Supp. 3d 163 (D. Mass. 2024) ........................................................................12

*Lyon v. Caterpillar, Inc.*,
194 F.R.D. 206 (E.D. Pa. 2000)..................................................................................20

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (1997)....................................................................................................19

*Martins v. Vermont Mut. Ins. Co.*,
662 F. Supp. 3d 55 (D. Mass. 2023) ..........................................................................12

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015).............................................................................................8

*Ocampo v. GC Servs. Ltd. P'ship*
(N.D. Ill. Nov. 28, 2018).............................................................................................14

*Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*,
407 F. Supp. 3d 59 (D. Mass. 2019) ..........................................................................20

*Raposo v. Garelick Farms., LLC*,
293 F.R.D. 52 (D. Mass. 2013)................................................................................9, 11

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003)...........................................................................................8

*Tardiff v. County of Knox*,
246 F.R.D. 66 (D. Maine 2007)...................................................................................13

*Tranfaglia v. City*,
2025 WL 1147513 (Mass. Super. Ct. Mar. 10, 2025) .............................................8, 10

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................................................................................................8, 9

**Statutes**

Mass. Gen. Laws ch. 149, § 148........................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Defendant, Hitachi Rail STS USA, Inc., ("Hitachi Rail") respectfully submits this memorandum in opposition to Plaintiff's motion for class certification (Doc. Nos. 77–78).

## I.
## INTRODUCTION

Plaintiff's motion should be denied because his core argument, that Hitachi Rail instructed wages to "be released to employees only on the seventh day, and the bank[s] could not release them earlier," is unsupported, misleading, and directly contrary to the factual record. (Doc. No. 78 at 11.) Hitachi Rail and its payroll processor, Automatic Data Processing ("ADP"), confirmed no such instruction existed. Additionally, testimony and internal transaction details from Plaintiff's bank, Charles Schwab ("Schwab") (a bank with no early pay policy), confirmed he was paid within six days. (Doc. Nos. 79–81.) Internal reports and testimony from another class member's bank showed payment of Hitachi Rail wages by the fifth day.

Further, despite learning the paystubs and bank statements on which Plaintiff relies were not proper indicators of when wages were made available to him or other class members, Plaintiff tries to circumvent these inconvenient facts by ignoring them. But they are a material part of the record, and foreclose Plaintiff's class certification theory. Plaintiff cannot reconcile his argument that the entire putative class was paid no earlier than the "Pay Date" (i.e., on the seventh day) (Doc. No. 78 at 5, 11–12), when the record shows the opposite. Further, according to banks that have been deposed, determining when Hitachi Rail funds were received and posted to class members' accounts requires review of internal banking transaction documents. *See infra* Sections II.C. & II.D. (*See also* Doc. No. 81 at 8–11.) Individual banks, not Hitachi Rail, therefore, hold the answer to the question of when a class member was paid under the Wage Act. With the entire putative class receiving their respective Hitachi Rail wages at 18 different financial institutions, the

1

painstaking process of seeking each institution's internal transaction documents and testimony to determine payment timing makes class certification inappropriate.

Furthermore, in arguing he would be an adequate class representative, Plaintiff ignores that at his deposition, he knew nothing about his Wage Act claim, including whether Hitachi Rail had done anything wrong or whether it even owed him any money.  Additionally, Plaintiff's inability to testify as to the duties and responsibilities of a class representative or how frequently he was in contact with his lawyers further make clear that his counsel have been driving this lawsuit.  Under these circumstances, Plaintiff cannot be an adequate class representative.

For these and additional reasons described below, Hitachi Rail respectfully requests that the Court deny Plaintiff's motion for class certification.

**II.**
**BACKGROUND**

A.    **Plaintiff Alleges He and the Putative Class Were Paid on the "Pay Date" Listed on Employee Paystubs.**

Plaintiff alleges Hitachi Rail violated the Wage Act because from February 2021 through February 2024, Hitachi Rail's pay periods ended on Fridays and the "Pay Date" listed on employees' paystubs was the following Friday.[1]  (Doc. No. 78 at 3.)  Hitachi Rail's paystubs include an "Earnings Statement" that shows a breakdown of earned wages and deductions for a given pay period.  *See, e.g.*, Ex. 22 (Turgut 000008).  The top right corner of the paystubs include three dates: the beginning date of a pay period; the ending date of a pay period; and a "Pay Date."  *Id*.

Plaintiff claims he was paid on the "Pay Date" because that date corresponds to the posted date on his Schwab monthly bank statement.  *Id*.; Ex. 23 (Turgut 000037).  As discussed below,

---

[1] Plaintiff mistakenly includes March 7, 2024 as a "Pay Date" that fell on a Friday.  (*See* Doc. No. 78 at 3.)  While March 7, 2024 was a "Pay Date," it fell on a Thursday, not Friday.

*infra* Section II.C and in Defendant's Motion for Summary Judgment (Doc. Nos. 79–81), while Plaintiff bases his individual claim on paystubs and bank statements, he does not base it on Schwab's internal records, which track the date and time the bank received and posted Hitachi Rail wages to Plaintiff's account. Ex. 24 (Haller Dep. 30:6–31:25, 32:6–20).

Regarding the putative class members, Plaintiff asks this Court to assume they were paid late because the "Pay Date" on their respective paystubs was seven days after the close of a pay period. (Doc. No 78 at 3.) Plaintiff maintains this despite being paid before the "Pay Date" himself.

**B.      Hitachi Rail's Payroll Process.**

Hitachi Rail has the same payroll process for all 1,200 employees in the United States, and pays virtually all of them, including Plaintiff during his employment, via direct deposit. Ex. 25 (Morales Dep. 35:24–36:19); Ex. 26 (Aurin-Davies Dep. 58:8–12). To assist with processing payroll, Hitachi Rail uses ADP's services. Ex. 25 (Morales Dep. 13:1–13); Ex. 26 (Aurin-Davies Dep. 60:20–22). From February 2021 through February 2024, when Plaintiff alleges he and the putative class was paid late, each pay period closed on a Friday.[2] Ex. 27 (Aurin-Davies Decl. ¶ 5); Ex. 26 (Aurin-Davies Dep. 113:5–8). The next business day, a Monday, Hitachi Rail's HR staff started processing payroll by reviewing employees' payroll-related data for accuracy and made any necessary adjustments. Ex. 26 (Aurin-Davies Dep. 52:19–53:5).

The following day, a Tuesday, Hitachi Rail submitted this payroll information to ADP for further processing. Ex. 26 (Aurin-Davies Dep. 53:19–24); Ex. 27 (Aurin-Davies Decl. ¶ 6). After receiving payroll information, ADP initiated and confirmed receipt of a reverse wire, and then sent out what it called "tapes" to employee bank accounts. Ex. 25 (Morales Dep. 86:10–18). The

---

[2]    Starting in March 2024, Hitachi Rail moved the "Pay Date" to Thursdays. Ex. 26 (Aurin-Davies Dep. 42:22–43:9, 114:8–12).

3

reverse wire was a transfer of payroll funds from Hitachi Rail to ADP. *Id.* at 27:23–28:24. The day after the wire was confirmed, ADP sent money to employees' banks, through the "tapes," which included information like employees' bank account numbers and the amount of employees' wages. *Id.* at 28:7–13, 84:22–85:15. The process of initiating and confirming the reverse wire and sending out the "tapes" could take up to 48 hours from the day Hitachi Rail submitted payroll to ADP (*i.e.*, Tuesday). *Id.* at 80:19–83:9.

According to ADP, once the "tapes" were sent out, it was up to the employees' banks to determine when they made wages available to employees, and ADP was aware banks could make funds available before the "Pay Date." *Id.* at 23:20–24:4, 77:10–24, 90:5–14. Hitachi Rail never instructed ADP to preclude banks from making wages available to employees before the "Pay Date." *Id.* at 78:12–15.

**C.**    **<u>Charles Schwab Received and Posted Plaintiff's Hitachi Rail Wages Before the "Pay Date."</u>**

Schwab testified it would look to its internal records, called "transaction details," to determine when Plaintiff's Hitachi Rail direct deposits were received and posted to his account. Ex. 24 (Haller Dep. 24:11–18, 26:11–27:3, 27:25–29:11, 30:6–31:16, 32:6–13).

In this case, Schwab only produced internal records concerning Hitachi Rail direct deposits to Plaintiff from March 2024 and April 2024, which was the end of Plaintiff's employment at Hitachi Rail. Ex. 28 (Turgut Dep. 83:9–11). According to Schwab's outside counsel, these internal transaction details are only kept for two years. Ex. 29 (HRSTS002801–02).[3]

---

[3]  Although Hitachi Rail subpoenaed Schwab in late December 2025, and requested responsive documents be produced on January 19, 2026 (*see* Doc. No. 58 at 3), meaning that internal documents pre-March 2024 might have been produced, Plaintiff moved for a protective order on the subpoena arguing these documents were irrelevant. (*See id.* at 7–8.) Plaintiff's failed motion delayed Schwab's production.

The internal transaction details Schwab produced, combined with its corporate testimony, show that Schwab received and posted Plaintiff's Hitachi Rail wages before the "Pay Date" listed on his paystubs. For example, for the pay period that ended on Friday, March 15, 2024, the "Pay Date" listed on the paystub was the following Thursday[4], March 21, 2024. Ex. 30 (ADP_00000507). Hitachi Rail submitted payroll information to ADP two days before, on Tuesday, March 19, 2024. *Id*. (identifying "Current Date" as "03/19/2024"); Ex. 25 (Morales Dep. 83:4–9) (testifying "Current Date" is when Hitachi Rail submits payroll to ADP). (*See also* Doc. No. 80 ¶¶ 16–17.)

According to a Schwab internal transaction detail, on the following day, Wednesday, March 20, 2024, at 2:42 a.m. Eastern time, Schwab received Plaintiff's Hitachi Rail wages. Ex. 24 (Haller Dep. 26:11–27:20); Ex. 31 (SCHW_000001). Another transaction detail showed that on March 20, 2024, at 21:58 (*i.e.*, 9:58 p.m.) Eastern time, Schwab posted the wages to Plaintiff's account. Ex. 24 (Haller Dep. 27:25–29:11); Ex. 32 (SCHW_000002). Although this transaction detail showed "03/21/2024" as the posting date, Schwab's corporate witness—a senior manager of the Banking Operations department who has worked at Schwab for 17 years—testified that because the 9:58 p.m. posting time was so late in the day, it was clear the posting to Plaintiff's account happened on March 20, not March 21. Ex. 24 (Haller Dep. 7:25–8:5, 34:15–24). This is because Schwab's system "batches" around 8:00 p.m. Eastern time, after which it rolls the system date to the next day. *Id.* at 28:6–29:15. Thus, at 9:58 p.m. on March 20, when the posting to Plaintiff's account occurred, the system date had already rolled over to March 21. *Id.* Nevertheless, the posting did in fact occur on Wednesday, March 20—one day before the March 21 "Pay Date." *Id.* Schwab testified it is a common occurrence for deposits to be posted to an

---

[4]    *See supra* note 2.

account late in the evening when the system date had already rolled over to the next day.  *Id.* at 31:11–25.

Thus, despite Plaintiff's bank statement showing "03/21" as the posted date (Ex. 33, Turgut 000092), testimony and internal documents from Plaintiff's bank prove that wages paid by Hitachi Rail were actually available for withdrawal on March 20—a day before the "Pay Date."  Ex. 24 (Haller Dep. 27:25–29:11); Ex. 32 (SCHW_000002).  Schwab also testified the bank statements do not show the date and time when it received and posted Hitachi Rail funds; only the internal transaction details contain this information.  Ex. 24 (Haller Dep. 30:6–31:16, 32:16–20).

The internal transaction details Schwab produced for a Hitachi Rail direct deposit in April 2024 also showed Plaintiff's wages were posted before the "Pay Date."  That pay period closed on Friday, March 29, 2024, and the "Pay Date" was Thursday, April 4, 2024.  Ex. 34 (ADP_00000516).  Hitachi Rail submitted payroll on April 2, 2024.  *Id.*  Schwab received the funds for this transaction on Wednesday, April 3, 2024, at 2:44 a.m. Eastern time.  Ex. 24 (Haller Dep. 29:19–30:15); Ex. 35 (SCHW_000003).  And Schwab posted the funds to Plaintiff's account late on April 3 at 21:52 (*i.e.*, 9:52 p.m.) Eastern time.  Ex. 24 (Haller Dep. 30:16–31:16); Ex. 36 (SCHW_000004).  Though the funds were posted to Plaintiff's account on April 3, his bank statement showed the rolled-over system date of April 4.  Ex. 37 (Turgut 000098).  None of the internal transaction details Schwab produced show the bank received Hitachi Rail wages or posted them to Plaintiff's account on or after a "Pay Date."  Exs. 31, 32, 35, 36 (SCHW_000001–4).

**D.**    **Determining When a Putative Class Member's Bank Received and Posted Hitachi Rail Wages Depends on the Bank, Not Hitachi Rail.**

Contrary to Plaintiff's assertion, the "Pay Date" is not the earliest date a bank could make Hitachi Rail funds available to employees; it is actually the last possible date.  Ex. 26 (Aurin-Davies Dep. 47:4–7).  In this sense, the "Pay Date" is like a deadline.  Ex. 25 (Morales Dep. 79:20–

80:2).  And, again, contrary to Plaintiff's unsupported assertion, Hitachi Rail did not tell ADP to preclude banks from making wages available before the "Pay Date."  *Id.* at 78:12–15.

Both Hitachi Rail and ADP also testified that banks could—and did—make Hitachi Rail wages available to employees before the "Pay Date."  Ex. 26 (Aurin-Davies Dep. 65:4–19); Ex. 25 (Morales Dep. 23:20–24:4, 77:1–78:24).  To figure out when banks made Hitachi Rail wages available to employees, each bank would need to be asked for this information.  Ex. 25 (Morales Dep. 79:1–14).

Another bank with a putative class member, Citizens Bank ("Citizens"), also looked to its internal reports in determining when the bank made Hitachi Rail wages available to the class member.  Ex. 38 (Devine Dep. 8:11–22, 32:1–33:9).  Based on a review of those reports, Citizens concluded it made Hitachi Rail funds available to the class member on Wednesdays, two days before the "Pay Date," under an early pay policy called "Paid Early."  *Id.* at 8:23–9:8, 36:4–20.

Class members being paid before the "Pay Date" were not limited to just those who banked at institutions with an early pay policy.  Schwab, for example, has no early pay policy (Ex. 24 (Haller Dep. 23:22–23)), yet it received and posted Plaintiff's wages before the "Pay Date."  *See supra* Section II.C.  The putative class banked at 18 different financial institutions, which included banks and credit unions.  Ex. 27 (Aurin-Davies Decl. ¶ 8).

## III.
## LEGAL STANDARDS

### A.    Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up).  Accordingly, Rule 23 does not "establish an entitlement to class proceedings," but rather "imposes stringent requirements for certification that in practice exclude most claims."  *Am.*

7

*Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).[5]  Plaintiff must prove by a preponderance of the evidence that his proposed class satisfies Rule 23.  *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015).  Plaintiff must show his proposed class meets Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy—and that the proposed class can also be maintained under one of Rule 23(b)'s subsections.  This Court must conduct a "rigorous analysis" to determine whether Plaintiff has met his burden, which often "entail[s] some overlap with the merits[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

B.    **The Wage Act**

In its Order on Defendant's Motion to Dismiss, the Court determined that for salaried employees, like Plaintiff when he was employed by Hitachi Rail, payment must be made within six days after the termination of a pay period during which wages are earned.  (Doc. No. 17 at 14) (finding that payment within seven days after the termination of the pay period "applies only to hourly workers who work all seven days"); *see* Mass. Gen. Laws ch. 149, § 148.  "[P]ayment is complete under the Wage Act when the 'recipient of the funds has some control over the funds.'" (Doc. No. 65 at 4 (quoting *Clermont v. Monster Worldwide, Inc.*, 102 F. Supp. 3d 353, 356 (D. Mass. 2015))).  Massachusetts courts consider the timing of the electronic transfer process relevant in determining when an employee received some control of his or her wages.  *See, e.g.*, *Tranfaglia v. City*, 2025 WL 1147513, *3 (Mass. Super. Ct. Mar. 10, 2025) (granting employer summary judgment on Wage Act claim because the employer transmitted funds that were received by the plaintiff's bank the day before the plaintiff's termination).

---

[5] Plaintiff states the First Circuit applies Rule 23, "with a liberal thumb on the scale in favor of certification." (Doc. No. 78 at 8 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)).  This embellishment is wrong.  Not only does *Smilow* pre-date the Supreme Court's *Am. Express Co.* decision by ten years, *Smilow* does not interpret Rule 23 as favoring certification. *See Smilow*, 323 F.3d at 38.

**IV.**
**ARGUMENT**

**A.**     **Plaintiff Does Not Satisfy the Requirements of Rule 23(a).**

Under Rule 23(a), Plaintiff must show that questions of law or fact are common, that Plaintiff is a typical and adequate class representative, and that joinder is impracticable. *See* Fed. R. Civ. P. 23(a). Plaintiff failed to do so.

> **1.     Plaintiff does not identify common answers apt to drive resolution of this litigation.**

Plaintiff cannot establish "commonality" because the answer to Plaintiff's question whether Hitachi Rail "paid its employees later than the Wage Act allows" (Doc. No. 78 at 11), does not have a common answer and instead requires discovery from each of the 18 financial institutions at which the putative class received their respective wages. For commonality, "what matters . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (cleaned up). Accordingly, the commonality requirement is only met "where the questions that go to the heart of the elements of the cause of action will each be answered either 'yes' or 'no' for the entire class and the answers will not vary by individual class member." *Raposo v. Garelick Farms., LLC*, 293 F.R.D. 52, 55 (D. Mass. 2013) (cleaned up). Here, Plaintiff argues there is a common answer to whether Hitachi Rail paid employees late, and the answer is "yes." (Doc. No. 78 at 11–12.) But testimony and internal documents from Schwab and Citizens establish putative class members had access to wages within six days. *See supra* Sections II.C. & II.D. For these members, the answer is "no." This fact alone shows no commonality.

Moreover, Plaintiff's belief there is a common answer as to whether class members were paid late is grounded on the baseless assertion that Hitachi Rail instructed wages to "be released

9

to employees only on the seventh day, and the bank[s] could not release them earlier." (Doc No. 78 at 11.) This is incorrect. Both Hitachi Rail and ADP confirmed there was no such instruction, and testified banks could and did make Hitachi Rail wages available to employees before the "Pay Date." Ex. 26 (Aurin-Davies Dep. 47:4–7, 65:4–19); Ex. 25 (Morales Dep. 23:20–24:4, 77:1–78:24). Plaintiff cannot point to any document or communication in the record articulating this purported instruction that banks could not release funds to employees before the seventh day.

Additionally, Plaintiff's position on when payment occurs under the Wage Act also rests on an incorrect interpretation of the statute. According to Plaintiff, payment is complete when funds are posted to an employee's account, such that he/she can withdraw the money. (Doc. No. 78 at 11.) Payment under the Wage Act, however, occurs once there is some transfer of control over the funds to the employee, **not** when funds are able to be withdrawn.[6] (Doc. No. 65 at 4); *Clermont*, 102 F. Supp. 3d 356 & 357 n.1. Here, Hitachi Rail disposed of its obligations under the Wage Act once the individual employees' banks received the "tapes" from ADP. *See Tranfaglia*, 2025 WL 1147513, *3; Doc. No. 81 at 12–13. And there is no dispute that ADP sent the "tapes" to Hitachi Rail's employees' banks within six days of the close of each pay period at issue in this case. Ex. 25 (Morales Dep. 28:7–13, 84:22–85:15).

Regardless, even if the Court were to find transfer of control under the Wage Act only occurs once an employee has the ability to access and spend his wages, the question of when funds post is not susceptible to a common answer, and instead raises highly specific, individualized inquiries. *See, e.g.*, Ex. 25 (Morales Dep. 79:5–19 (". . . Q. And then similarly for other banks,

---

[6] Plaintiff incorrectly argues payment is complete when funds are delivered to the payee "such that the recipient may actually draw on it," citing *Clermont* and *First Nat'l Ins. Co. v. Com.*, 391 Mass. 321, 326–27 (1984). (Doc. No. 78 at 11.) This is yet another example of Plaintiff embellishing case law. Neither *Clermont* nor *First Nat'l* condition payment on the ability to withdraw funds. (*See* Doc. No. 81 at 12–13.)

like JP Morgan Chase, Wells Fargo, TD Bank, you'd have to ask the bank when they made funds available to Hitachi Rail employees, right? A. Yes.")); *see also* Ex. 24 (Haller Dep. 30:6–31:25, 32:6–13); Ex. 38 (Devine Dep. 8:11–22, 32:1–33:9, 43:1–44:12).

Indeed, the record, developed through document and deposition discovery from third party banks, demonstrates the wages of at least some employees, including Plaintiff, were made available to employees' bank accounts before the "Pay Date"—and thus before the seventh day, even under Plaintiff's erroneous Wage Act interpretation. For example, the internal transaction details Schwab produced and the testimony of Schwab's corporate witness demonstrate Hitachi Rail wages were posted to Plaintiff's bank account and available for withdrawal the day before the "Pay Date" listed on his paystubs *and* his bank statements. *See supra* Section II.C. (*See also* Doc. No. 81 at 8–11.) And Citizens' corporate witness testified, after reviewing internal bank reports, Hitachi Rail wages were posted to a putative class member's Citizens bank account on Wednesdays when the "Pay Date" was Friday—a full two days before the "Pay Date" listed on the paystub. *See. e.g.*, Ex. 38 (Devine Dep. 36:9–17, 37:13–17, 39:13–18, 51:7–20).

The Schwab and Citizens evidence directly disproves Plaintiff's unsupported contention that Hitachi Rail mandated that "banks could not release [the funds] earlier" than the seventh day. (Doc. No. 78 at 11.) *See also* Ex. 25 (Morales Dep. 78:12–15) ("Q. As far as you know, did Hitachi Rail ever tell ADP to not allow banks to make wages available to employees before the pay date? A. No."). Because at least Citizens and Schwab bank records show those banks posted funds to employee accounts before the "Pay Date," the question whether Hitachi Rail "paid its employees later than the Wage Act allows"—is incapable of class-wide resolution. *Raposo*, 293 F.R.D. at 55.

### 2. Plaintiff cannot adequately represent the class.

Rule 23(a)(4) requires class representatives and class counsel to "fairly and adequately protect the interests of the class." Plaintiff is unable to do so here. As a threshold matter, Plaintiff

11

is not an adequate class representative because he has no Wage Act claim as a matter of law.  (*See* Doc. No. 81 at 13–17.)  *See Martins v. Vermont Mut. Ins. Co.*, 662 F. Supp. 3d 55, 66 (D. Mass. 2023), *aff'd*, 92 F.4th 325 (1st Cir. 2024) ("[P]laintiff is not an adequate representative of the class because his only remaining claim necessarily fails as a matter of law").  As explained above and in Hitachi Rail's summary judgment motion, because Schwab received and posted Plaintiff's wages to his account by the sixth day, Hitachi Rail cannot be held liable under the Wage Act.  (*See* Doc. No. 81 at 13–17.)

Setting aside the merits of Plaintiff's individual Wage Act claim, Plaintiff's deposition highlights he cannot be entrusted to advocate on behalf of the class or protect the class against class counsel's interests because he has virtually no knowledge of and involvement in this case. *See Louglin v. Vi-Jon, LLC*, 728 F. Supp. 3d 163, 186 (D. Mass. 2024) (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987)) (noting class certification has been denied "where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.").  Critically, Plaintiff knew ***nothing*** about the basics of his sole cause of action, including what Hitachi Rail allegedly did wrong and whether he thinks Hitachi Rail even owes him anything.  *See, e.g.*, Ex. 28 (Turgut Dep. 60:21–25) ("[Q]: Do you think Hitachi Rail still owes you money? . . . THE WITNESS:·I can't recall."); *id.* at 34:14–25 ("Q: What do you believe Hitachi Rail did wrong? . . . THE WITNESS:·That would reveal attorney-client details, so I -- I can't answer that question."); *id.* at 35:2–11 ("[Q]: [J]ust so the record's clear, you have no information outside of what the attorneys told you in terms of what Hitachi Rail did wrong; is that correct? . . . THE WITNESS:·I'm not sure.").  Plaintiff's failure to know the very basics of his Wage Act claim renders him unfit to be a class representative.

As another example, before Plaintiff initiated this lawsuit, Plaintiff's counsel filed a complaint with the Massachusetts Attorney General's Office. *See* Ex. 39 (Turgut 000242–45). In that complaint, Plaintiff stated he was owed $370,000. *Id*. at Turgut 000243. At his deposition, however, when asked why he was owed that amount, Plaintiff's counsel answered, "[d]o not answer that question, as I filled that form." Ex. 28 (Turgut Dep. 24:23–25:4). And indeed, Plaintiff testified, "I'm not sure" when asked whether he was owed $370,000. *Id*. at 25:9–10.

Plaintiff also has not shown he understands what it means to be a class representative or that he has been actively involved in the case. *See, e.g.*, *id.* at 65:14–67:1 ("Q: What's your understanding of your duties as a class representative? . . . THE WITNESS:·I can't answer that . . . [Q]: So just based on the instructions from your lawyer, it's true that you can't tell me what your understanding is of your duties as a class representative; is that right? . . . A: Because it falls under the attorney discussions, I can't."); *id.* at 75:5–14 ("[Q] Why do you think you can represent the class? . . . THE WITNESS:· The knowledge comes from the attorney, so I'm unable to answer."); *id.* at 72:13–18 ("[Q] How often do you communicate with your attorneys about this case? . . . THE WITNESS:· I'm not sure.").[7] Plaintiff's deposition makes clear he does not know the basics of his claim, what it means to be a class representative, and is not actively involved. As such, Plaintiff cannot satisfy adequacy. *See Foley v. Buckley's Great Steaks, Inc.*, 2015 WL 1578881, at *5–6 (D.N.H. Apr. 9, 2015) (finding no adequacy when plaintiff's "working

---

[7] Counsel's instruction to Plaintiff not to answer questions regarding his understanding of the duties of a class representative and his level of involvement on privilege grounds (*see, e.g.,* Ex. 28 (Turgt Dep. 65:14–67:1, 75:5–14) was improper. *See, e.g.*, *Tardiff v. County of Knox*, 246 F.R.D. 66, 81 (D. Maine 2007) (holding counsel improperly instructed his client not to answer questions like "What did you understand the class action lawsuit to be?" and "Did you think you had any obligations as a class representative?" because "the attorney-client privilege does not bar such questions"). Regardless, because Plaintiff could not demonstrate he understands what being a class representative entails, he is unfit to serve as a class representative.

knowledge of her cause of action was limited at best" and she was not "a particularly active participant in her case"); *Ocampo v. GC Servs. Ltd. P'ship*, \*9–10 (N.D. Ill. Nov. 28, 2018) (finding no adequacy because plaintiff lacked "a fundamental understanding of the class action process and his responsibilities as a class representative" and "did not understand the legal basis of his claim").

### 3.     Plaintiff's Wage Act claim is atypical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "As discussed above *supra* Section II.C., Plaintiff's claim is not typical because Schwab received and made his wages available before the "Pay Date." Plaintiff's claim cannot be typical of a class that purportedly was paid on the seventh day following a pay period, when he was paid within six days.

### 4.     Plaintiff has not shown joinder is impracticable and therefore has not satisfied Rule 23(a)'s numerosity requirement.

Under Rule 23(a), a plaintiff must demonstrate the proposed class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021); *see also id.* at 778 ("[A] putative class of over 40 is not inevitably endowed with numerosity status.  The obligation imposed by Rule 23(a) remains: a plaintiff seeking to certify a class must show that joinder would be impracticable.").  "Joinder is considered more practicable when all members of the class are from the same geographic area" and "where class members can be easily identified." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir. 1985).  For example, in *Andrews*, the First Circuit affirmed the district court's determination the putative class was not sufficiently numerous, notwithstanding it had 49 members, because the members of the subclass came from the same

14

geographic area (southeastern Massachusetts) "and, therefore, could join or be joined in a suit of named parties." *Id.* at 132; *see also Anderson*, 986 F.3d at 777 (affirming district court's holding plaintiff failed to show it would be impracticable to join 37 class members where "all but two of the class members lived within a 50-mile radius of the courthouse" where plaintiff filed suit and plaintiff presented no evidence joinder would be impracticable).

The Court should do the same here. Although the proposed class consists of 43 putative class members, they are (or were at the time of their employment with Hitachi Rail) working in connection with a project for Massachusetts Bay Transportation Authority (MBTA), and therefore were located in the Greater Boston area. Ex. 27 (Aurin-Davies Decl. ¶ 7). Like *Andrews*, the Court should find Plaintiff has not shown joinder is impracticable, and thus failed to fulfill Rule 23(a)'s numerosity requirement. *Andrews*, 780 F.2d at 131.

**B.**     **Plaintiff Does Not Satisfy the Requirements of Rule 23(b)(3).**

    **1.**     **Individualized issues predominate.**

        **(a)**     **When each putative class member was paid under the Wage Act is an individual question.**

Because determining when each putative class member was paid under the Wage Act necessarily involves discovery from his/her bank, individual questions predominate. Thus, Plaintiff cannot satisfy Rule 23(b)(3)'s "stringent" predominance requirement, which "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [of] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted).

15

According to Plaintiff, common questions predominate because the "question of when Hitachi paid class members is answered identically for every class member by Hitachi's own records." (Doc. No. 78 at 15.)  This is yet another instance where Plaintiff fails to address the overwhelming evidence that contradicts his position.  The answer to when each putative class member was paid under the Wage Act will depend on evidence from each member's bank.  For example, Hitachi Rail testified that it does not control the timing of funds from ADP to employees and did not tell ADP to preclude banks from making wages available to employees before the "Pay Date."  Ex. 26 (Aurin-Davies Dep. 65:4–8); Ex. 25 (Morales Dep. 78:12–15).  Hitachi Rail and ADP testified that when funds are made available to employees depends on the individual banks, with the "Pay Date" being the last possible date banks could make funds available.  Ex. 26 (Aurin-Davies Dep. 47:4–7); Ex. 25 (Morales Dep. 79:20–80:2).  Further, Hitachi Rail and ADP testified that banks could and did make Hitachi Rail wages available to employees before the "Pay Date."  Ex. 26 (Aurin-Davies Dep. 65:4–19); Ex. 25 (Morales Dep. 23:20–24:4, 77:1–78:24).  Lastly, to figure out when banks made Hitachi Rail wages available to employees, ADP testified each bank would need to be asked for this information.  Ex. 25 (Morales Dep. 79:1–14).

This evidence defeats Plaintiff's predominance argument because it establishes that (i) Hitachi Rail did not instruct payment under the Wage Act to occur only on the "Pay Date," and (ii) individual banks would know when payment occurred.  Discovery from Schwab and Citizens corroborates this conclusion.  For example, prior to obtaining discovery from Schwab, Plaintiff assumed he was paid on the "Pay Date" because that date corresponded to the "posted date" on his Schwab monthly bank statement.  *See, e.g.*, Ex. 22 (Turgut 000008); Ex. 23 (Turgut 000037).  But when Schwab was subpoenaed, it produced internal transaction details showing Plaintiff's Hitachi Rail wages were received and posted before the "Pay Date."  Exs. 31, 32, 35, 36 (SCHW_000001–

16

04); Ex. 24 (Haller Dep. 26:11–27:10, 27:25–29:11, 30:6–31:16, 34:4–24). Schwab also testified the bank statements Plaintiff relies on do not provide the date and time when the bank received and posted funds from Hitachi Rail to Plaintiff's account. Ex. 24 (Haller Dep. 32:16–20, 37:6–21). Again, Plaintiff intentionally omitted this information.

This evidence from Schwab demonstrates internal documents from a bank—not evidence from Hitachi Rail, or even Plaintiff—can answer when a putative member received wages under the Wage Act. Citizens similarly testified that it needed to review internal reports to determine when the bank made Hitachi Rail wages available to a putative class member. Ex. 38 (Devine Dep. 8:11–22, 32:1–33:9). Based on a review of those reports, Citizens concluded it made the funds available on Wednesdays, two days before the "Pay Date." *Id.* at 8:23–9:8, 36:4–20. All this evidence, which Plaintiff omitted, shows that determining when a class member's wages were posted to his/her account, is an individual question, not a common one. With Plaintiff's class claims covering 76 pay periods (Doc. No. 78 at 15) and the putative class banking at 18 different financial institutions, there are no common questions that predominate over this central and individual question of payment timing.

**(b)      Plaintiff's arguments on early pay policies again ignore the record.**

Plaintiff attempts to circumvent the evidence that Citizens made Hitachi Rail wages available to a putative class member on Wednesdays, by incorrectly arguing (i) Hitachi Rail still violated the Wage Act as to this class member and (ii) putative class members who received wages at banks with early pay policies could be carved out. (Doc. No. 78 at 16–18.) As an initial matter, Plaintiff's argument on early pay is a red herring. Schwab had no early pay policy (Ex. 24 (Haller Dep. 23:22–23)), yet it still paid Plaintiff within six days. *See supra* Section II.C. That means even if a class member's financial institution did not have early pay, discovery from that institution would still be needed to determine when the class member received funds under the Wage Act.

17

This reality, again, ignored by Plaintiff, moots its arguments on early pay.  Also, Plaintiff's argument that early pay members could be carved out through class-member affidavits is incorrect. Again, discovery from Schwab and Citizens proves that asking class members when they got paid is insufficient to determine when they received their wages.  Both banks testified that internal bank documents are needed to determine payment, and that reliance on bank statements would be insufficient.  Ex. 24 (Haller Dep. 32:16–20, 37:6–21); Ex. 38 (Devine Dep. 8:11–22, 32:1–33:9).

> **(c)      Plaintiff relies on inapposite case law.**

Plaintiff argues under the UCC payments were only provisional and therefore even though a putative class member received his money on Wednesdays, he was actually paid on Friday.  This alone defies common sense, but even more when considered in conjunction with Citizens' testimony that nothing happened with the customer's account on Friday in connection with his wages.  Ex. 38 (Devine Dep. 37:18–38:15).  The truth is much simpler than Plaintiff's tortured explanation: Citizens paid the class member by Wednesday.  Further, none of the cases Plaintiff cites justifying his argument are relevant to this case or otherwise discuss early pay policies.  *See Gossels v. Fleet Nat'l Bank*, 453 Mass. 366 (2009) (involving allegations defendant mishandled a reparations check presented for collections and claims for negligent misrepresentation, conversion, and violation of the UCC's exchange rate requirement and consumer protection laws); *In re Frigitemp Corp.*, 34 B.R. 1000, 1015–16 (S.D.N.Y. 1983) (bankruptcy proceeding involving preferential liability); *Boston Police Patrolmen's Ass'n, Inc. v. City of Boston*, 1999 WL 1260164, at *1, *5–*6 (Mass. Super. Ct. 1999) (holding deferred compensation deductions made under an authorized plan do not constitute wages); *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484, 485 (2011) (holding an employer may not use a system of customer accounts receivable financing to pay its employee when the customer pays the employer for the employer's work and that an employer may not deduct insurance costs from an employee's earned wages); *Fraelick v.*

*PerkettPR, Inc.*, 989 N.E.2d 517, 524 (Mass. App. Ct. 2013) (involving allegations the employer regularly failed to reimburse the employee for business expenses and "required the employee . . . to advance, indefinitely, expenses for the employer's benefit").

**2.      A class action is not superior.**

Plaintiff has failed to show "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." First, managing this case as a class action would be extraordinarily difficult. *See, e.g.*, *In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, 299 F. Supp. 3d 430, 546 (S.D.N.Y. 2018) ("A finding of non-predominance is easily paired with a finding that a class action is unmanageable and hence not a superior form of litigation."); *accord Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 67 (1st Cir. 2010) (observing superiority is "addressed by many of the considerations that inform a trial court's judgment call about how clearly predominant the common issues must be"). As discussed above, Plaintiff's class claim covers 43 putative class members over 76 pay periods (Doc. No. 78 at 15), and the putative class banked at 18 different financial institutions. Gathering evidence from each of these institutions would be painstakingly difficult. Indeed, it took months to get internal evidence and testimony from Schwab and Citizens, and each produced evidence of payment timing for just one class member. Kundu Decl. ¶¶ 21–22.

Second, putative class members have interests in controlling their own prosecution of separate actions. *See* Fed. R. Civ. P. 23(b)(3)(A). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)); *see also Gintis*, 596 F.3d at 67–68 (explaining "the very reason for Rule 23(b)(3)" is "to make room for claims that plaintiffs could never afford to press one by one"). But that concern is not present here, where Plaintiff asks the

Court to treble each putative class member's annual salary.  For example, Plaintiff earned a $175,000 annual salary and despite timely payments under the Wage Act, he seeks to recover over a quarter-of-a-million dollars ($350,000).  Courts routinely find plaintiffs fail to establish a class action is superior where plaintiffs seek substantial damages (e.g., over six figures per person), emphasizing the putative class members are adequately incentivized to pursue legal action on an individual basis in such circumstances.  *See, e.g.*, *Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 76–77 (D. Mass. 2019) (concluding Plaintiffs "failed to demonstrate the superiority of a class action lawsuit as a method of resolving this dispute" "where the injury for each plaintiff exceed[ed] $150,000"); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 222 (E.D. Pa. 2000) (holding "[i]ndividual claims would certainly be large enough to make individual suits feasible and therefore, a class action lawsuit is not the superior method of adjudicating this dispute" where plaintiff sought "damages exceeding $100,000 per person").  The same analysis applies with equal force here.

**V.**
**CONCLUSION**

For the reasons set forth above, Hitachi Rail respectfully requests the Court deny Plaintiff's motion for class certification.

20

Dated:  June 26, 2026                          Respectfully submitted,


                                              /s/ Sudip Kundu
                                              Sudip Kundu *(admitted pro hac vice)*
                                              Grace E. Schmidt *(admitted pro hac vice)*
                                              **DTO LAW**
                                              307 5th Avenue, 12th Floor
                                              New York, New York 10016
                                              Telephone: (646) 995-5400
                                              Facsimile:  (213) 335-7802
                                              Email: skundu@dtolaw.com
                                              Email: gschmidt@dtolaw.com

                                              Christopher A. Callanan (BBO# 630649)
                                              **CALLANAN LAW LLP**
                                              6 Liberty Square #2812
                                              Boston, MA 02109
                                              (617) 330-7575
                                              E-mail: ccallanan@callanan-law.com

                                              Attorneys for Defendant
                                              HITACHI RAIL STS USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on June 26, 2026.


                                              /s/ Sudip Kundu
                                              Sudip Kundu