# EXHIBIT 38

**REDACTED**

Bramanti & Lyons

Court Reporting, Inc.

*Realtime all the Time*

www.bramanti-lyons.com

92 State St., 8th Floor • Boston, Massachusetts 02109

Phone: 617.723.7321

VOLUME: I
PAGES: 1 - 62
EXHIBITS: 1 - 4

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 1:24-cv-10660-AK

- - - - - - - - - - - - - - - - - - - - - x
VOLKAN TURGUT, et. al,

Plaintiff,

vs.

HITACHI RAIL STS USA, Inc.,

Defendant.
- - - - - - - - - - - - - - - - - - - - - x

DEPOSITION OF STEPHEN DEVINE, a witness called on behalf of the Plaintiff, taken pursuant to notice before Marina Hefner, Registered Professional Reporter, MO Certified Court Reporter #1556, Notary Public in and for the Commonwealth of Massachusetts, at the offices of Bennett and Belfort, P.C., 24 Thorndike, Suite 300, Cambridge, Massachusetts, on May 6, 2026, commencing at 10:56 a.m.

__________

BRAMANTI & LYONS COURT REPORTING, INC.
REGISTERED PROFESSIONAL REPORTERS
92 STATE ST., 8TH FLOOR, BOSTON, MA. 02109
TEL: 617.723.7321 / FAX: 617.723.7322
www.bramanti-lyons.com

APPEARANCES:

ERIC LEBLANC, ESQ.
Bennett and Belfort, P.C.
24 Thorndike, Suite 300
Cambridge, Massachusetts 02141
Email: Eleblanc@bennettandbelfort.com
Tel: 617-577-8800
Attorney for the Plaintiff

SUDIP KUNDU, ESQ.
DTO Law
307 5th Avenue, 12th Floor
New York, New York 10016
Email: Skundu@dtolaw.com
Tel: 646-403-9901
Attorney for the Defendant

GEOFFREY W. MILLSOM, ESQ.
Adler, Pollock, & Sheehan, P.C.
175 Federal Street, 10th Floor
Boston, Massachusetts 02110
Email: Gmillsom@apslaw.com
Tel: 617-804-1360
Attorney for the Witness

# I N D E X


| Deposition of: | Page |
|---|---|
| STEPHEN DEVINE | |
| Examination by Mr. LeBlanc | 4 |
| Examination by Mr. Kundu | 30 |
| Further Examination by Mr. LeBlanc | 48 |


------

# E X H I B I T S


| No. | | Page |
|---|---|---|
| 1 | Subpoena to Testify | 5 |
| 2 | Citizens Bank Personal Deposit Account Agreement | 18 |
| 3 | Citizens Bank Personal Deposit Account Agreement | 26 |
| 4 | May 2022 Sefas Statement Message Request Form | 28 |

P R O C E E D I N G S

STEPHEN DEVINE,

a witness called for examination by counsel for the Plaintiff, having been first satisfactorily identified by his Massachusetts driver's license, was duly sworn, was examined, and testified as follows:

EXAMINATION BY MR. LEBLANC:

Q. Mr. Devine, as you know, we've met before. My name is Eric LeBlanc. I represent Volkan Turgut in an ongoing piece of litigation.
If you could please state your name and spell your last name for the record.
A. Stephen with a P-H, Devine, D-e-vi-n-e.
Q. Mr. Devine, what is your current address?
A. 91 Sheffield Road, with two Fs, Melrose, Massachusetts, 02176.
Q. Are you currently employed?
A. Yeah.
Q. By whom?
A. Citizens Bank.
Q. What do you do at Citizens Bank?

Q. (By Mr. LeBlanc) Mr. Devine, I know you have done this before, but I want to go through ground rules again so we're playing from the same playbook.

Please try and keep your answers verbal, which is a yes or no versus a shake or nod of the head or something like mm-hmm or hm-mm. That can't be taken down accurately. Okay?

A. All right.

Q. Also, do your best to allow me to finish my question before starting your answer. Likewise, I'll do the same because, again, the court reporter can't take two of us speaking at the same time.

A. Understood.

Q. If at any time you need a break, no problem at all. Let me know for whatever reason, whatsoever. All I ask is that, if there's a question pending to you, answer that question. Then we can give you a break after you answer it.

A. Sure.

Q. Finally, if you don't understand a question that I ask of you, just tell me. If you answer it,

I'm going to presume you understood it. Okay?
A. Yes.
Q. How many times have you been deposed before?
A. Once.
Q. That was a deposition with me in a separate case, correct?
A. Yes.
Q. That case was William Depippo v. Alexandria Real Estate; is that right?
A. Yes.
Q. What did you do to prepare for today's deposition?
A. I looked at the transactions in question, the statements that were produced. I looked at the posting of those transactions to the account holder.
And I asked our ACH operations folks to pull up a report that would inform me, when I looked at one transaction, when that was received into the bank, and that it qualified for early pay or paid early, as we would call it.
Q. So Citizens has a program called paid early; is that correct?

A. Yes.
Q. Can you describe what that program is, generally?
A. If a consumer receives an incoming ACH credit transaction to their account, we will post it two days or one day prior to the effective date as assigned by the sender as a customer benefit, basically.
Q. When you say, "One or two days prior to the effective date as assigned by the sender," is the effective date selected by the sender the day of settlement?
A. Yes.
Q. So that's the day the funds actually arrive to the bank from the sender?
A. Yes, via our Federal Reserve account.
Q. And again, I understand you received the funds via your Federal Reserve account, but the funds are actually received by the bank on the effective date as defined by the sender, correct?
A. Correct.
Q. So when funds are being credited or put on a consumer statement prior to the effective date,

that is Citizens essentially fronting the money to that individual, correct?

A. Yes.

Q. Because the funds have not been received from the employer at that time --

A. Correct.

Q. -- or from the sender at that time, I should say.

A. You should say originator, if you want to be technical. It's basically the same thing, sender and originator.

Q. In the case of a direct deposit of wages, that sender or originator would be the employer, correct?

A. Correct.

Q. When you reference effective date, can you explain to me what that is?

A. There's a field within an ACH format, an ACH transaction, that actually has a field called effective entry date.

And the whole ACH network in the U.S. kind of keys off of that field to determine when items should be introduced into the network and how they should be settled, when they should be

message, we'll start printing, is May 9, 2022. And then date and message will print through June 7, 2022.

Do you see those dates?

A. I do.

Q. What do those dates mean?

A. This seems to be an internal document on how and when to communicate. So I'm not sure that these dates were actually implemented.

I believe that the 2023 date was based on looking at some transactions that seemed to not be paid early. So I'm basing it on that. So I'm not exactly sure of the 2023 date, but I believe, based on what I've looked at, that that, in fact, is the date. So this may have been the intent on establishing the program.

Q. I see.

A. But that may not have actually transpired.

Q. And then the Citizens paid early program, that applied to customers in Massachusetts?

A. All states that I'm aware of. All Citizens consumer customers.

Q. Across the United States?

A. Yes.

Q. So I believe you testified earlier that you had reviewed some transactions.

Were they Hitachi Rail direct deposits to a Citizens Bank customer?

A. Yes.

Q. What were you trying to understand in connection with these transactions?

A. I just wanted to look at the account and make sure they, you know, looked like payroll items. And then I pulled up an ACH system report that told me the date the bank received the item and the effective date that was assigned to the item.

And to validate that the date we received the item was in fact the date we posted it. So it was paid early and earlier than the effective date assigned by, I guess, Hitachi in this case.

Q. And that report that you looked at, is that an internal record that Citizens Bank keeps?

A. Yes.

Q. Is there any way to understand, without reviewing those reports, whether a direct deposit was funded in accordance with the paid early program?

A. Well, you would have to look at two different reports. The bank statements will say paid early. There's a notation that we place on the client's statement that informs them that this item was, in fact, paid early.

And then I compared that paid early date to the internal ACH report showing that we, in fact, received the item on that day, and that the effective date was two days in the future.

Q. Okay. You mentioned the word, "Item," in some of your previous responses. What's the item?

A. So we receive a million or so ACH transactions into the bank every day. We refer to them as an item. Each individual ACH transaction, a lot of times we call it just an item.

Q. What information is in the ACH transaction?

A. There's quite a bit. The key elements are the company name of the sender, so what will appear on the consumer's statement.

So if it's Hitachi or Hitachi Rail, that is in the company-named field. There is an entry description that is also passed to the bank statement that would be, you know, direct dep. It's ten characters, I believe, and I

believe that's what Hitachi uses.

It could say salary. It could say payroll, but that will appear on the consumer statement as well. There's the dollar amount. There's the effective entry date.

Those are the key fields. Obviously, the account number and then the ABA number of the bank, which, you know, gets the item to the correct account.

Q. It's based on receipt of the ACH transaction that you then determine whether to fund the account through the paid early program?

A. Correct.

Q. Why is it that when you receive the ACH transaction that you then make a decision to fund an account early?

MR. LEBLANC: Objection.

A. So I believe it was competitive pressures. Other banks started offering similar programs so the consumer side of the bank wanted to basically match competitor banks or offerings. So we're not the only bank doing this.

Q. Do you know if credit unions have paid early programs?

A. I'm sure they do. Credit unions also -- this will get a little technical -- but typically when an item comes into the bank on the effective date, the bigger banks have the capability to memo post the item.

So to inform our branches, our ATM systems, telephone systems, that, in fact, the money is now in the customer's account. Credit unions have struggled with it. This may not be as much of an issue these days.

But credit unions, when they receive the item, the instruction, because they couldn't memo post enter day on the pay date, they would simply hard post the item to the customer account in advance. So that been happening in small SNLs. That's been happening for years.

It was more of an inability to do the enter day, updating of their systems. So when they get the item, let's just put it in their account and then it's there and we know our systems will then be able to inform the customer come payday morning that the money is, in fact, there.

Q. So fair to say that Citizens Bank is not unique

in this paid early program?

MR. LEBLANC: Objection.

A. Correct.

Q. Now, is it also fair to say that when you get an ACH transaction you're going to post?

MR. LEBLANC: Objection.

A. If it is a valid account, valid and open account, yes.

Q. Now, for the transactions you reviewed, Hitachi Rail direct deposits to a customer, you reviewed transactions where the settlement date was a Friday and Citizens Bank had funded that customer's account on Wednesday?

A. Correct. I believe that was the example I looked at.

Q. To be clear, the Wednesday before that Friday?

A. Correct, yes.

Q. Was that same Wednesday the day you received the ACH transaction?

A. Yes.

Q. Is there a time of day you need to receive the ACH transaction before you decide to fund an account?

A. There are a variety of different delivery

windows, if you will, in the national ACH network. So there are cut-offs. But, if we receive the item any time during the day up until, you know, 10:00 at night or so, 10:30 at night, we will have time and we will post the item that night.

So it kind of depends on, in this case Bank of America, when did they deliver the item into the ACH network. That drives when we receive it. If we have time, we will post it that day. So in this case, we received it on Wednesday in time to post it Wednesday night.

Q. So by Post, you mean that the Hitachi Rail wages were in the customer's account on Wednesday?

A. Available to the customer, yes.

Q. Available to withdraw?

A. Yes.

Q. On the settlement date on that following Friday, did anything happen with that customer's account in connection with the Hitachi Rail wages?

MR. LEBLANC: Objection.

A. No.

Q. So on Friday, Citizens Bank didn't withdraw any money and put more money in that came from --

A. No, no. The only accounting entry is that the Federal Reserve puts the money in our giant central Federal Reserve account.

Q. I want a clean question on that. So on Friday, what happens?

A. On Friday, the payroll entry is done. Nothing happens with that payroll entry. But we receive the funds, if you will, in our Fed account, opening of business on Friday. And it's not item by item.

Again, we receive a million items a day so the Fed doesn't hit us with a million items. It basically says, your net position for the day, including this transaction, is going to be put in our Federal Reserve account.

Q. So let's say on a given day, there's settlements you get and the summation could be a debit or credit?

A. We'll get both, a summary debit and a summary credit for all of our activity because we have both transactions coming in.

So let's say the only ACH transaction that happened in that day, we would receive that exact amount as a credit to our Fed account, the

opening of business on Friday.
Q. The Citizens Bank Fed account, that's a bank account with the Federal Reserve?
A. It is, yes.
Q. And all banks that use the ACH network have a Federal Reserve bank account?
A. Either a Federal Reserve account themselves, or they use a larger bank, like a JP Morgan might, you know, offer clearing services for smaller bank.
Q. Oh, I see.
A. But generally, yes.
Q. Just to close up that line. As far as the customer, in this case on the transactions you reviewed, when they got their account funded on Wednesday, there was nothing that happened on Friday in terms of their account?
A. Correct.
Q. In the transactions you reviewed did funds from Hitachi Rail --
MR. KUNDU: Strike that.
Q. In the transactions you reviewed, did funds from Hitachi Rail direct deposit ever not arrive?
MR. LEBLANC: Objection.

A. I wouldn't know.
Q. Why do you say that?
A. I see the item, the transaction itself, and we post it. I don't get Hitachi funds delivered to us.
Again, it's kind of Bank of America processing Hitachi's payroll. Bank of America will take the money from Hitachi knowing that it's going to be delivered through the ACH network.
So, again, I'm just going to get a bulk settlement from the Fed that contains hundreds of thousands of different employers' funds, if you will. So I don't see is it discretely that, oh, Hitachi has delivered the money to Citizens. I see the transaction. It's kind of Bank of America's problem, if you will, that Hitachi funded the payroll account.
So I don't really see it. The ACH network really doesn't work that way. But it should -- if all is working effectively, there is Hitachi funds that resulted in us getting our Fed settlement to agree to all the transactions we had posted for that day.

country. Hitachi is not going to reach out to Citizens and we wouldn't comply with any request that came from Hitachi.

Hitachi might go to Bank of America and Bank of America may -- and they may ask Bank of America to reverse a payroll that was paid erroneously. So that's just referred to as a reversal transaction. And we will attempt to post that transaction if we get it.

So if the employer instructs the ODFI, it's called Bank of America, that a payroll item needs to be reversed, they will send through a debit through the ACH network. We'll just receive it as a transaction. We will post it to the account as the whole network assumes that every item is authorized.

I didn't see any of those, but I didn't look at every transaction that's ever been paid to this customer.

Q. So at least in the transactions you reviewed, you didn't see any kind of reversal?

A. Correct.

Q. So I'm going to jump around here, I apologize.

A. It's okay.

Q. You mentioned earlier, we talked about other banks, credit unions, having early pay.

Do you know if early pay policies vary depending on the banking institution?

MR. LEBLANC: Objection.

A. I don't know whether they do.

Q. Do you know if they're all the same?

MR. LEBLANC: Objection.

A. I don't know that they're all the same.

Q. What would you do to figure that out?

MR. LEBLANC: Objection.

A. It wouldn't be easy.

Q. Why do you say that?

A. Probably, you would have to call a bank and simply say, do you have some type of early pay process? And then how does it work? You know, I think generally the idea is you're going to pay an item.

One thing that might help is ACH credits can only be delivered into the ACH network two days. On the high end, it can only be delivered into the ACH network two days in advance. So a bank that is providing an early pay service is either going to give them the funds two days

early, or some banks may say that's too much float. We'll give them the money one day before the effective date. So it's still a benefit, but we don't want to give them two days.

So I wouldn't be shocked if some banks say, we'll give it to you the day we receive, which is max two days before effective date. And some other banks may say, we'll give it to you one day before. But literally you would have to go to banks and ask them how they operate and whether they would share it with another bank. You know, that's the question.

Q. So when Citizens Bank funds an account early, is the bank using its Federal Reserve funds to do that?

A. Effectively, yes.

Q. How do you know that?

A. Well, if you take a non-early pay transaction, the fund's movement is directly between our Federal Reserve accounts on effective entry date. And we will make a counter entry and then we will give the customer the money.

So the source of funds is our Federal Reserve account. So if we are paying the

customer before we have received credit, effectively we are providing them funds from our Federal Reserve account. It's not as if we have some type of wash account that we're pulling money down from and then backing it out on Friday.

Q. So I want to ask a few questions about, you know, before the paid early program.

So if we are talking about Citizens Bank before the early pay program was instituted, is it correct that you would receive the ACH transaction as you normally would --

A. Yes.

Q. -- it's just that no money would go into the customer's account until Friday?

A. Correct.

Q. Do you know if for direct deposits from large companies like Hitachi whether a bank has any sort of concern that the money is not going to be there?

MR. LEBLANC: Objection.

A. No. We received our money directly from Bank of America. So if Hitachi went bankrupt, it's a loss on the ODFI side. It's a loss on the Bank

A. Correct. Credits only.
Q. There couldn't be a debit early program, right?
A. No, absolutely not.
Q. That's to protect the consumer, correct?
A. Correct.
Q. Now, you say you looked at transactions. How many transactions did you look at?
A. I looked at a bank statement, which seemed to have every two weeks a recurring direct deposit. I looked at, I don't know, 20 weeks -- or let's say, 10 weeks' worth.
Q. Did you look at for --
A. Actually, more than that. Sorry. I probably saw 20 transactions.
Q. For a single person?
A. Yeah. I was given this particular account number.
Q. Do you know the account number you were given?
A. [redacted].
Q. Do you know the name of that account holder?
A. [redacted].
Q. Was that the only individual you looked at?
A. That was the only account that a person within Citizens told me this applied to.

Q. It was only one Citizens account that had Hitachi Rail deposits coming in, direct deposits?
A. Well, I don't know that to be true. It's the only account that was apparently involved in this situation that I'm aware of.
Q. The transactions you looked at showed that the effective date was on the Friday, correct?
A. Yes. I only -- just to be 100 percent honest -- the pay was happening every two weeks on a Wednesday. I pulled up one of those transactions and validated that Friday was the effective date and we had paid that item on Wednesday.
I didn't ask for that system report for every one of the items, but they would have gone through the same flow, same logic.
Q. What period of time were you looking at?
A. It was in that June 2023, you know, through probably year end.
Q. For the transactions that you looked at, to your knowledge, for every transaction you looked at, the direct deposit effective date was on a Friday?

A. Correct.
Q. So essentially Citizens was floating its own money to cover Hitachi's wage obligations for two days?
A. Correct.
MR. LEBLANC: I have no further questions, again, pending any further cross.
MR. KUNDU: Nothing further. I'd like a rushed copy by Friday, please. Thank you.
(Witness excused.)
* * * * *
(The deposition was concluded at 12:14 p.m.)

(Signature Reserved.)