UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

VOLKAN TURGUT,
*on behalf of himself and all others similarly situated,*

    *Plaintiffs,*

v.

HITACHI RAIL STS USA, INC.,

    *Defendant*

C.A. No. 1:24-cv-10660-AK

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**

Respectfully Submitted,
Plaintiffs, Volkan Turgut, individually, and
on behalf others similarly situated,

By his attorneys,

*/s/ Eric LeBlanc*
Eric R. LeBlanc BBO No. 666786
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800
eleblanc@bennettandbelfort.com

*/s/ Ilir Kavaja*
Ilir Kavaja, BBO No. 682574
Kavaja Law, P.C.
92 State Street, 8th Floor
Boston, MA 02109
(617) 515-5545
ilir@kavajalaw.com

1

Hitachi does not dispute that it used a uniform payroll system, uniform biweekly pay periods, and a uniform Friday pay date. Hitachi maintained a single ADP company code, used uniform biweekly pay periods, and identified 43 Massachusetts employees across 76 regular biweekly pay periods. That common payroll practice supplies the common answer to commonality, predominance, typicality, and superiority.

I.      **Hitachi's Legally Required Records Are Binding Admissions of Its Uniform Seventh-Day Pay Practice.**

Hitachi's payroll records cannot be ignored; Hitachi is legally required to maintain them under Massachusetts law, and they explicitly document the uniform seventh-day pay practice across the entire class. Massachusetts law mandates that every employer "shall keep a true and accurate record of the name, address and occupation of each employee, of the amount paid each pay period to each employee, of the hours worked each day and each week by each employee, and such other information as the commissioner or the attorney general in their discretion shall deem material and necessary." M.G.L. c. 151, § 15; *see also* 454 C.M.R. 27.07 (same).

Hitachi maintained a single ADP company code (6JC) for all employees and used uniform biweekly pay periods with a Friday pay date seven days after the close of each period. Hitachi's 2021–2024 Pay Summaries, Class Period Pay Summary, and ADP Statistical Summary identify 43 Massachusetts employees, 76 regular biweekly pay periods, and 1,667 separate employee-pay-period violations, all tied to the seventh-day Friday pay date. *See* Exhibits 6–10, 15. Every Turgut pay stub and corresponding ADP record lists the "Pay Date" as the Friday seven days after the pay period ended. *See* Exhibit 11; Morales Depo. 22:22–24:13. Hitachi's witnesses confirmed that all Massachusetts employees were processed identically and treated "exactly the same." Aurin-Davies Depo. 84:22–85:3; Morales Depo. 80:7–18.

Because these records were created and maintained pursuant to Hitachi's affirmative legal duty under M.G.L. c. 151, § 15, Hitachi's payroll records are not anecdotal evidence. They are

employer-created records maintained under a legal duty, and they supply common proof of Hitachi's uniform pay-date practice. This record-keeping requirement directly bolsters commonality and predominance: the uniform practice is not merely alleged, but rather it is documented in the very records Hitachi was legally obligated to keep accurately. No individualized inquiry is needed as the records speak for themselves across all 43 class members and 76 pay periods. This conclusion is reinforced by the Attorney General's paystub mandate, which requires every paystub to display "the date of payment (month, day and year)."[1] Hitachi complied with that requirement 1,667 times. Having told the Commonwealth that Friday was "the date of payment," Hitachi cannot now tell this Court that the real date of payment is buried in the records of 18 banks.

## II.    Schwab's Witness Confirmed Funds Are Never Credited Before the Originator's Instruction.

Hitachi's "early payment" theory rests on batch-rollover artifacts.[2] Schwab's witness testified that ACH deposits are "credited to the client on the settlement date of the entry," that Schwab has no early pay policy, and that funds received before the effective date are not made available early. Haller Depo. 12:5-6; 14:9-11; 15:16-22. The late-evening posting Hitachi relies on was a routine batch-rollover timestamp, not early payment. The governing principle is that the transactions are posted on the days that the originator intended. Haller Depo. 38:5-9. Hitachi, the originator, instructed Friday, seven days after the payroll period ended.

## III.    The "Tapes" Are Routing Instructions, Not Funds.[3]

---

[1] https://www.mass.gov/guides/pay-and-recordkeeping#-records-  (last visited July 1, 2026).
[2] Notably, all of the Schwab records Hitachi relies on postdate the class period, which closed with Hitachi's March 7, 2024 change to a compliant Thursday practice. Plaintiff objected on that basis, Haller Depo. 30:1-4, and Hitachi has not provided any evidence that any class-period payment posted before the pay date, see Haller Depo. 33:2-16.
[3] Even if Hitachi is right about bank posting mechanics, which it is not, that issue is common. The question is whether ACH "tapes," bank advances, or settlement-date deposits constitute payment under the Wage Act. That answer applies to every class member.

Hitachi argues it discharged its Wage Act obligations when employee banks received ADP's "tapes." A routing instruction is not payment. No employee could withdraw a dollar of wages on the Wednesday or Thursday the tapes were sent. A bank's advance of its own funds is not wages until the employee controls Hitachi's payment. *See Clermont v. Monster Worldwide, Inc.*, 102 F. Supp. 3d 353, 356 (D. Mass. 2015); *see also Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484, 497 n.22 (2011). Control passed on Friday, when settlement completed per Hitachi's own instruction. *Tranfaglia* is inapposite; it involved actual settled funds, not routing instructions carrying a future settlement date. *Tranfaglia v. City*, 2025 WL 1147513, *3 (Mass. Super. Ct. Mar. 10, 2025). Hitachi instructed ADP that its funds would be made available on Fridays and never instructed ADP to release Hitachi's funds any earlier; that a bank chose to front its own money sooner is the bank's act, not Hitachi's payment. <u>Morales Depo.</u> 22:12-24:18, 92:13-93:10.

## IV.    The Putative Class Satisfies Numerosity.

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985), Hitachi's sole First Circuit authority, is not instructive. *Andrews* involved 49 current employees at a single active project site. *See id*. The class here is categorically different: it spans more than three years, and consists of some former employees, including Turgut, who must be individually located, served, and persuaded to step forward as named plaintiffs.

Hitachi admits that the putative class consists of 43 members. Those 43 members undoubtedly satisfy the numerosity requirement. *See Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 554 (D. Mass. 2017) ("Classes of forty of more have been found to be sufficiently numerous for purposes of Rule 23(a)(1)")); *see also Garcia-Rubiera* v. *Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.")

Even for classes smaller than 43, numerosity can be satisfied. In *Torrezani v. VIP Auto Detailing, Inc.*, this Court certified a class of only thirty members, because avoiding multiple suits favored class treatment, particularly where workers had limited resources and difficulty pursuing individual claims. 318 F.R.D. 548 (D. Mass. 2017).[4]

Beyond the number of individuals in a putative class, the structural realities of employment litigation independently render joinder impracticable. Courts give weight to the "assertion that in the employment context, individuals decline to bring suit because of the fear of retaliation." *Vargas v. Spirit Delivery & Distrib. Servs., Inc.*, 245 F. Supp. 3d 268, 289 (D. Mass. 2017). Employment cases also present practical barriers to joinder, including reluctance by current or former workers to bring individual wage claims against an employer or industry participant.

 The class action, prosecuted by a plaintiff who alone is assuming that risk, eliminates that barrier for every other class member.

Hitachi's implicit suggestion that treble damages eliminate the need for class adjudication is foreclosed by *Constantine*. *Constantine v. Nat'l Grid USA Serv. Co.*, 2026 WL 478181 at *2, 2026 U.S. Dist. LEXIS 35004 at *4-5 (D. Mass. Feb 20, 2026) (Kelley, D.J.) (holding that "class actions are regularly permitted under the Wage Act, even though treble damages are available.") Moreover, *Constantine* recognized that where some class members worked for the defendant for only a limited period, individual recovery may be minimal, making class adjudication superior even if other class members could theoretically litigate alone. *Id* at *14.

### V.      Plaintiff Satisfies Typicality and Adequacy.

---

[4] Other federal district courts have also certified classes with close to forty class members. *See Millan v. Cascade Water Servs.*, 310 F.R.D. 593 (E.D. Cal. 2015) (certifying a class of 44 employees); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667 (C.D. Ill. 1996) (38 employees); *see Town of New Castle v. Yonkers Contr. Co.*, 131 F.R.D. 38 (S.D.N.Y. 1990) (36 members); *see Atzin v. Anthem, Inc.*, No. 2:17-cv-06816-ODW (PLAx), 2020 U.S. Dist. LEXIS 79991 (C.D. Cal. May 6, 2020) (38 or 44 class members); *Alvarado Partners, L.P. v. Mehta*, 130 F.R.D. 673 (D. Colo. 1990) (33 members).

Hitachi's typicality and adequacy arguments depend on the same flawed premise as its predominance argument: that this case turns on individualized bank-by-bank inquiries rather than Hitachi's uniform payroll practice. It does not. Whether Schwab's or Citizens' timing constitutes payment under the Wage Act is a merits question common to the entire class, and cannot be resolved against the class on a certification motion; that the parties dispute the answer is the definition of a common question, not a bar to certification. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013). Mr. Turgut challenges the same payroll practice as every class member: Hitachi's use of a uniform Friday pay date seven days after the close of each pay period. His claim arises from the same course of conduct, is supported by the same payroll records, and seeks the same statutory relief. That is typicality.

Hitachi's adequacy attack also fails. Rule 23(a)(4) does not require a class representative to recite legal theories at deposition or possess lawyer-like knowledge. Adequacy requires that the representative's interests not conflict with the class and that class counsel be qualified, experienced, and able to vigorously conduct the litigation. *Andrews*, 780 F.2d at 130. Courts in this District repeatedly reject adequacy challenges based on a representative's lack of detailed legal or factual knowledge. *See Adair v. Sorenson*, 134 F.R.D. 13, 19 (D. Mass. 1991) ("a representative need not have personal knowledge of all the relevant facts to be an adequate representative"); *Otte v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 56 (D. Mass. 2011) ("all that is required of her is a general knowledge of the contours of the litigation and personal participation in discovery events"); *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) ("The mere fact that Steingold was not familiar with the specifics of the Complaint should not defeat his representative status."). Mr. Turgut shares the class's interest in proving the same Wage Act violation. He has no conflict with the class. He sat for deposition, participated in discovery, and continues to pursue the same claim on behalf of himself and the class. His counsel have demonstrated their adequacy throughout this litigation. Rule 23(a)(4) requires no more.

Respectfully Submitted,

Plaintiffs, Volkan Turgut, individually, and
on behalf of himself, and others similarly situated,

By his attorneys,

*/s/ Eric R. LeBlanc*
Eric R. LeBlanc BBO# 666786
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800
eleblanc@bennettandbelfort.com


*/s/ Ilir Kavaja*
Ilir Kavaja, BBO No. 682574
Kavaja Law, P.C.
92 State Street, 8th Floor
Boston, MA 02109
(617) 515-5545
ilir@kavajalaw.com


## CERTIFICATE OF SERVICE

I, Ilir Kavaja, hereby certify that on this 2nd day of July 2026, the foregoing document was filed electronically through the ECF system, is available for viewing, and downloading from the ECF system and will be sent electronically to all counsel of record as registered participants identified on the Notice of Electronic Filing.


*/s/ Ilir Kavaja*
Ilir Kavaja